# HellerEhrman LLP

September 2, 2008

Michael K. Plimack
Michael.Plimack@hellerehrman.com
Direct +1 (415) 772-6821
Direct Fax +1 (415) 772-2021
Main +1 (415) 772-6000
Fax +1 (415) 772-6268

03656.0003

Honorable Susan Illston
United States District Court
450 Golden Gate Ave.
San Francisco, CA 94102

Re:  *Advanced Micro Devices, et al. v. Samsung Electronics Co., Ltd., et al.*, No. CV-08-0986-SI

Dear Judge Illston:

We write in response to the letter of August 25, 2008 from Plaintiffs and Counterdefendants (collectively, "AMD"), requesting a further case management conference.

Defendants and Counterclaimants (collectively, "Samsung") do not believe an additional case management conference is necessary at this time. The Court has already held a case management conference and has issued a case management order, including a case schedule. The parties are now engaged in discovery.

Moreover, we do not understand this to be the proper way for AMD to attempt to resolve discovery disputes under the Court's standing order.[1] Nonetheless, we respond below to several of the arguments made by AMD in its letter.

---

[1] The Court's Standing Order provides, "Counsel seeking the court's intervention in a discovery dispute shall, after full compliance with Civil L.R. 37-1, file and serve a letter brief, 5 pages or less, explaining the dispute and relief sought. Opposing counsel shall respond by letter brief, 5 pages or less, within one week. The Court will deem the matter submitted unless the Court determines that the issue requires oral argument, in which case a conference will be arranged." We do not believe AMD has complied with Civil L.R. 37-1 in that the parties have not finished meeting and conferring on several of the issues AMD addresses, as described in this letter.

Heller Ehrman LLP  333 Bush Street  San Francisco, CA 94104-2878  www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Shanghai   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

### A. Production of Samsung's Layout Database

The parties agreed to a stipulated protective order which was adopted by the Court on June 19, 2008. (Dkt. 69). The only issue upon which the parties have not reached agreement is the manner of production of certain of Samsung's highly sensitive information—specifically, Samsung's chip layout database, which contains schematics and diagrams for manufacturing Samsung's proprietary semiconductor chips.

Samsung has offered to produce to AMD PDF copies of the circuit schematics for the accused products, or for representative accused products. These PDF's will be searchable and will provide AMD with all of the information it requires. However, in the event AMD, for whatever reason, does not find the PDF's sufficient, Samsung has also offered to provide AMD with access to its layout database at the offices of its counsel, Heller Ehrman. Accordingly, the sole issue of contention between the parties is whether Samsung will make the layout database available for inspection at Heller Ehrman's offices or at the offices of AMD's counsel. We note that this dispute is not yet ripe, as AMD has not yet inspected the PDF's and therefore cannot know if it needs additional access to the database.

Moreover, Samsung has compelling reasons for declining to produce its layout database outside of the offices of its counsel. The layout database provides the final layouts used to manufacture Samsung's proprietary circuits and is the blueprint used for manufacturing Samsung semiconductor chips. The database is a cornucopia of Samsung trade secrets, which Samsung has invested vast sums both to develop and to maintain in secrecy. The database contains more than simply the finished schematics for Samsung's chips; it contains modeling tools and software that allow a person to experiment with, modify, and actually manufacture Samsung proprietary circuits. This database contains the crown jewels of Samsung's semiconductor business, and losing control over it would threaten to destroy Samsung's business.

It would be unprecedented and needlessly prejudicial for Samsung to release this database beyond Samsung's direct control. In prior cases involving the discovery of this exact database, Samsung's adversaries agreed to precisely the arrangement for production that Samsung is proposing here: the production of PDF schematics of particular accused chips in conjunction with access to the database at the offices of Samsung's counsel.[2]

On the other side of the balance, the burden on AMD in receiving production of the database in the manner Samsung proposes does not outweigh the potential harm to Samsung discussed above. As noted above, the PDF production of Samsung's finished schematics will

---

[2] *See, e.g., On Semiconductor Corp. et al. v. Samsung Electronics Co., Ltd. et al.*, C.A. No. 07-449 (D. Del.).

HellerEhrman LLP

Honorable Susan Illston
September 2, 2008
Page 3

likely provide AMD with all of the information it requires to prosecute this case. To the extent AMD or its experts require access to the schematics as maintained in the database, they may inspect them at the offices of Heller Ehrman. Heller Ehrman's offices are within walking distance of AMD's local counsel, Reed Smith.[3] Contrary to AMD's assertions, it is highly unlikely that AMD will be required to inspect the database for all 15,000 products that it has chosen to accuse in this litigation, both because Samsung is in the process of responding to AMD's request that it identify representative products, as described below, and because Samsung is confident that all of the information AMD requires will be in the PDF schematics that Samsung has offered to produce.

In short, Samsung has proposed a reasonable compromise for the production of its layout database that accommodates the needs and concerns of both parties.

**B.     Samsung's Document Production and Representative Products**

It is unclear why AMD is raising the issue of Samsung's document production at this time, as there appears to be currently no dispute between the parties on this issue. The parties agreed that they would respond to each other's discovery on October 15, 2008. AMD served discovery requests demanding documents and information on over 15,000 Samsung products. Subsequently, AMD proposed to Samsung that Samsung identify representative products, which may alleviate both parties' burdens in handling discovery and AMD's burden in litigating infringement. Samsung is working diligently to respond to AMD's proposal.[4] Needless to say, this work is time-consuming due to the sheer number of products AMD has

---

[3] AMD's concern that it will be "impossible" for its experts, consultants, and attorneys to discuss the layout database if they must inspect it at Heller Ehrman is ill-founded, in light of the fact that AMD's local counsel's offices are only several blocks away from Heller Ehrman. In any event, Heller Ehrman will provide a private room including telephones to engage in conferences, is willing to provide AMD with access to the database at any reasonable time, and will negotiate with AMD over the hours of access to the database. AMD's contention that Samsung will monitor the time that AMD spends inspecting the layout database and that this will somehow give Samsung a window into AMD's litigation strategy is specious. For security purposes, Heller Ehrman will of course record what times AMD's experts and attorneys enter and leave the building, as it does with all visitors, but this will not allow Samsung or Heller Ehrman to know what portions of the database AMD's experts review.

[4] Indeed, counsel for Samsung spoke with counsel for AMD as recently as the end of July, and informed AMD that Samsung was working on a response to AMD's proposal.

HellerEhrman LLP

chosen to accuse. Given that Samsung is working to respond to AMD's proposal, it is unclear to Samsung that there is currently any dispute between the parties on this issue.

### C.    AMD's Document Production

AMD contends that Samsung's document requests are vague and overbroad and threatens not to meet the October 15 document production deadline to which the parties agreed. However, the meet and confer on the scope of Samsung's document requests is ongoing. AMD has neglected to attach to its letter Samsung's last meet and confer letter on this issue, which was dated August 22, 2008 (enclosed). In that letter, Samsung offered to narrow considerably the document requests AMD viewed as overbroad. While Samsung believes the document requests it has propounded are appropriate in scope, Samsung has nonetheless invited AMD to identify additional document requests about which it would like to meet and confer in an attempt to resolve any issues without having to ask for the Court's assistance. It is unclear why AMD has brought this issue to the Court's attention when the parties are still in the process of meeting and conferring.

### D.    AMD's Proposal for a Technology Tutorial

AMD suggests that the parties discuss the technology involved in this case at a status conference next month. Samsung does not believe this is appropriate. The Case Management Order in this case provides for a technology tutorial at a time to be determined by the Court. Typically, such technology tutorials occur in connection with or near the time of the claim construction hearing, and for good reasons. This allows the parties to first take discovery and to clarify and perhaps even narrow the issues in dispute prior to presenting technology tutorials to the Court. The parties have asserted patents covering a wide array of technologies in this case: from semiconductor fabrication to the design of control icons on a video screen. It could be that one or more of these patents is no longer at issue by the time of the claim construction proceedings, and the technology tutorials will be narrower in scope than they would be now. Samsung respectfully submits that holding a technology tutorial at this early stage of the proceedings will result in the waste of the Court's and the parties' time and resources.

Respectfully submitted,

Michael K. Plimack

Enclosure

cc:    Counsel for Plaintiffs and Counterdefendants

# HellerEhrman LLP

August 22, 2008

*Via U.S. Mail & E-Mail*

Samuel F. Ernst
Sam.Ernst@HellerEhrman.com
Direct +1 (415) 772-6964
Direct Fax +1 (415) 772-1759
Main +1 (415) 772-6000
Fax +1 (415) 772-6268

03656.0003

Cole M. Fauver
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Ave.
Minneapolis, MN 55402-2015

Re:  *Advanced Micro Devices, Inc. et al. v. Samsung Electronics Co., Ltd. et al.*, No. 3:08-CV-0986

Dear Cole:

This is in response to your letter of July 30, 2008.

***The sufficiency of SEC's and AMD's infringement claims under FRCP 8.***

We disagree with AMD's assertion that the infringement counterclaims of Samsung Electronics Company, Ltd. ("SEC") fail to comply with the liberal pleading standards of FRCP 8. The Federal Circuit has made clear that in order to state a claim for patent infringement, the patentee must include in its claim:

> 1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; 4) a statement that the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages.

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007) (citing Fed.R.Civ.P. Form 16 (2006)). SEC has complied with this standard and has put AMD and ATI on notice of its claims.

As the Federal Circuit recognized in *McZeal*, at the pleading stage, the patentee largely has access only to public information regarding the accused products. 501 F.3d at 1358. "[T]he specifics of how [the] purportedly infringing device works is something to be determined through discovery." *Id.* Further, under the Patent Local Rules, the time for SEC to identify its detailed contentions regarding how specific patent claims read on particular

Heller Ehrman LLP   333 Bush Street   San Francisco, CA 94104-2878   www.hellerehrman.com

Beijing   Hong Kong   London   Los Angeles   Madison, WI   New York   San Diego   San Francisco   Seattle/Anchorage   Shanghai   Silicon Valley   Singapore   Washington, D.C.

HellerEhrman LLP

Cole M. Fauver
August 22, 2008
Page 2

products is at the time SEC serves its preliminary infringement contentions. *See* Patent L.R. 3-1. We note that AMD's First Amended Complaint does not disclose the particular accused Samsung products, instead including such broad and unlimited statements as, "[t]he infringing products include but are not limited to, for example, Samsung's DRAM, SRAM and NAND Flash memory chips, as well as any and all products that incorporate such memory chips or any other memory chips practicing or embodying the claimed inventions."

*Document requests*

In your July 30 letter, you ask that we narrow the focus of SEC's document requests 75-77 and 79, which generally ask for product literature, technical documents, specifications, advertising, and marketing materials regarding the AMD accused products. You contend that these requests are not limited to the patent technology disclosed and claimed by the SEC patents.

As an initial matter, we note that AMD's document requests are similarly broad:

- AMD Request No. 30 asks for "All Technical Documents that relate to any Accused Consumer Product."

- AMD Request No. 31 asks for "All Technical Documents that relate to any Accused Memory."

- AMD Request No. 32 asks for "All Technical Documents that relate to any Accused Processor."

- AMD Request No. 33 asks for "All documents that relate to ARM Cores."

- AMD Request No. 28 asks for "All documents that relate to the testing, evaluation, use, purpose or function of each accused product."

These requests similarly do not focus on documents related to the particular technology disclosed and claimed in the AMD patents. Accordingly, we believe it would be in both parties' interests to narrow the document requests to the areas of technology covered by the patents.

With regard to SEC's document requests 75-77 and 79, we will offer to narrow our requests as follows:

- For each process used by AMD and ATI to manufacture each of the products contained in SEC's definition of "AMD Accused Product," all documents in the categories covered by SEC's document requests nos. 75-77 that describe the feedback and feedforward of process metrology data to the fabrication process; all software requirements specifications that describe the function of in-house or third-party software used to accomplish such feedback or feedforward of

HellerEhrman LLP

Cole M. Fauver
August 22, 2008
Page 3

    process metrology data; and documents sufficient to describe each control system using process metrology data.

- Documents in the categories covered by SEC's document requests nos. 75-77 related to AMD's and ATI's silicon on insulator ("SOI") devices and processes for fabricating such devices.

- Documents in the categories covered by SEC's document requests 75-77 sufficient to describe all of ATI's methods for forming and filling vias and channels in semiconductor devices.

- Documents in the categories covered by SEC's document requests 75-77 related to AMD's and ATI's microprocessors' fetching, decoding, and execution of instructions in their respective instruction sets, for each of AMD's and ATI's accused microprocessors listed in SEC's definition of "AMD Accused Product."

- We require documents called for by SEC's document request 79 related to advertising and marketing for each of the products listed in SEC's definition of "AMD Accused Product."

    In making this offer, we do not waive our rights to reassert the requests in their original form at a later date. Further, in exchange for this proposal, we ask that AMD offer a proposal for narrowing its document requests 28 and 30-33 to the technology claimed by the AMD patents in this litigation.

    Finally, if there are additional discovery requests in the sets served by SEC about which you would like to meet and confer, please let us know.

Best regards,

Sam Ernst

cc:    William H. Manning
        Andrew M. Kepper
        Brad P. Engdahl
        Samuel L. Walling