William H. Manning (*pro hac vice*)
E-mail:  WHManning@rkmc.com
Brad P. Engdahl (*pro hac vice*)
E-mail:  BPEngdahl@rkmc.com
Andrew M. Kepper (*pro hac vice*)
Email: AMKepper@rkmc.com
**Robins, Kaplan, Miller & Ciresi L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone:     612-349-8500
Facsimile:     612-339-4181

John P. Bovich (SBN 150688)
Email: JBovich@reedsmith.com
**Reed Smith L.L.P.**
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111
Telephone:     415-543-8700
Facsimile:     415-391-8269

Attorneys for Plaintiffs:
Advanced Micro Devices, Inc., and
ATI Technologies, ULC

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., et al., | Case No. CV-08-0986-SI |
| Plaintiffs, | **AMD'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT RELATING TO U.S. PATENT NO. 5,559,990; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | DECLARATIONS OF LARRY S. NIXON AND ANDREW M. KEPPER [FILED CONCURRENTLY HEREWITH] |
| | [PROPOSED] ORDER [FILED CONCURRENTLY HEREWITH] |
| | Date: February 5, 2010 Time: 9:00 a.m. Location: 19th Floor, Courtroom 10 Judge: Hon. Susan Y. Illston |

1

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

2       TO SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG SEMICONDUCTOR,

3   INC.; SAMSUNG AUSTIN SEMICONDUCTOR, LLC; SAMSUNG ELECTRONICS

4   AMERICA, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC; and

5   SAMSUNG DIGITAL IMAGING CO., LTD. (collectively referred to as "Samsung" or

6   "Defendants"), AND THEIR COUNSEL OF RECORD:

7       PLEASE TAKE NOTICE that on February 5, 2010 at 9:00 a.m., or as soon

8   thereafter as the matter may be heard before the Honorable Judge Illston, United States

9   Court House, San Francisco, California, Plaintiffs ADVANCED MICRO DEVICES, INC.

10  and ATI TECHNOLOGIES, ULC (collectively "AMD") will move and hereby do move

11  pursuant to Federal Rule of Civil Procedure 56 for an order granting summary judgment

12  on the inequitable conduct defenses and claims asserted by Samsung as to U.S. Patent No.

13  5,559,990 ("Cheng '990 patent"). This motion is brought on the grounds that Samsung

14  cannot establish that the applicants for the Cheng '990 patent withheld material

15  information from the United States Patent and Trademark Office during prosecution,

16  and/or cannot establish the Cheng '990 patent applicants' specific intent to deceive the

17  PTO, as required to prevail on an inequitable conduct claim.

18      This motion is based upon this Notice of Motion and Motion, the attached

19  Memorandum of Points and Authorities, on the Declarations of Larry S. Nixon and

20  Andrew M. Kepper and the exhibits thereto filed contemporaneously herewith, the papers

21  and pleadings on file in this action, and such other and further evidence as may

22  subsequently be presented to the Court.

23

24

25

26

27

28

AMD'S MOTION FOR SUMMARY JUDGMENT OF NO
INEQUITABLE CONDUCT RELATING TO U.S.
PATENT NO. 5,559,990

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES............................... 2

I.      INTRODUCTION............................................................................ 2

II.     STATEMENT OF FACTS ............................................................. 3

        A.     Cheng '990 Patent Prosecution History .............................. 3

        B.     Current Litigation ............................................................... 6

III.    STATEMENT OF APPLICABLE LAW ...................................... 7

        A.     Summary Judgment............................................................. 7

        B.     Inequitable Conduct ........................................................... 8

IV.     ARGUMENT ................................................................................... 9

        A.     Overview ............................................................................. 9

        B.     Attorney Shenker Satisfied His Duty Of Disclosure And Did
               Not Fail To Disclose Material Information To The PTO ............... 10

               1.     Attorney Shenker Properly Disclosed The Young '899
                      Application To The PTO.......................................... 10

               2.     The Young '421 Patent Examiner Considered The
                      Young '421 Patent To Be Cumulative To The Young
                      '899 Application....................................................... 12

               3.     If Any Portion Of The Young '421 Patent Is Not
                      Cumulative, That Portion Does Not Qualify As Prior
                      Art And Was Not Required To Be Disclosed During
                      Prosecution Of The Cheng '990 Patent.................... 13

        C.     Attorney Shenker Was Unaware Of The Issuance Of The
               Young '421 Patent And Did Not Act With Specific Intent To
               Deceive The PTO .............................................................. 16

               1.     Attorney Shenker Was Not Aware Of The Young '421
                      Patent .................................................................... 17

               2.     Attorney Shenker Did Not Act With Specific Intent To
                      Deceive The PTO .................................................. 18

V.      CONCLUSION ............................................................................ 19

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1

2
# TABLE OF AUTHORITIES

3
**Page**

4
**Cases**

5

6
*Abbott Laboratories v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008) ................................................................. 16

7
*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................... 7

8
*Application of Klesper*,
    397 F.2d 882 (C.C.P.A. 1968) ........................................................ 14, 15

9

10
*Astrazeneca Pharmaceuticals LP v. Teva Pharmaceuticals USA, Inc.*,
    583 F.3d 766 (Fed. Cir. 2009) .......................................................... 8

11
*Augustine Medical v. Gaymar Industries, Inc.*,
    181 F.3d 1291 (Fed. Cir. 1999) ....................................................... 14

12

13
*Burlington Indus., Inc. v. Dayco Corp.*,
    849 F.2d 1418 (Fed. Cir. 1988) ........................................................ 2

14
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................. 7, 8

15

16
*Covad Communications Co. v. Bell Atlantic Corp.*,
    398 F.3d 666 (D.C. Cir. 2005) ......................................................... 9

17
*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ................................................. 7, 9, 18

18

19
*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000) ....................................................... 12

20
*Larson Mfg. Co. of South Dakota, Inc. v. Aluminart Products Ltd.*,
    559 F.3d 1317 (Fed. Cir. 2009) ............................................... 8, 16, 19

21

22
*Nordberg, Inc. v. Telsmith, Inc.*,
    82 F.3d 394 (Fed. Cir. 1996) ......................................................... 17

23
*Praxair, Inc. v. ATMI, Inc.*,
    543 F.3d 1306 (Fed. Cir. 2008) ........................................................ 8

24

25
*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009) ....................................................... 12

26
*Schering Corp. v. Amgen Inc.*,
    222 F.3d 1347 (Fed. Cir. 2000) ....................................................... 13

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

AMD'S MOTION FOR SUMMARY JUDGMENT OF NO
INEQUITABLE CONDUCT RELATING TO U.S.
PATENT NO. 5,559,990

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008) ..........................................2, 8, 12, 13, 16, 18

*Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005) ................................................... 16

**Statutes and Other Authority**

35 U.S.C. § 102(e) ........................................................................ 15

35 U.S.C. §120 ............................................................................. 3

37 C.F.R. § 1.121(f) ..................................................................... 13

37 C.F.R. § 1.56 ....................................................................... 5, 11

37 C.F.R. § 1.56(a) ...................................................................... 10

37 C.F.R. § 1.97 ....................................................................... 5, 11

37 C.F.R. § 1.97(b) ...................................................................... 10

37 C.F.R. § 1.97(b)(1) ................................................................... 6

37 C.F.R. § 1.97(c) ...................................................................... 10

37 C.F.R. § 1.97(d) ...................................................................... 10

37 C.F.R. § 1.98 .................................................................. 5, 10, 11

37 C.F.R. § 1.98(a)(3) ................................................................... 6

Fed. R. Civ. P. 56(c) ..................................................................... 7

MPEP § 2001.05 ......................................................................... 13

MPEP § 201.08 ........................................................................... 14

MPEP § 608.04 ........................................................................... 13

MPEP § 609 ................................................................................. 6

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

### STATEMENT OF THE ISSUES

Has Samsung provided sufficient admissible evidence for a reasonable fact finder to conclude by clear and convincing evidence that Michael Shenker, the prosecuting attorney for U.S. Patent No. 5,559,990 ("Cheng '990 patent"), engaged in inequitable conduct by failing to disclose a material reference (U.S. Patent No. 5,285,421) ("Young '421 patent") with intent to deceive the United States Patent and Trademark Office ("PTO")?  Specifically--

**Materiality**

1.    Did Attorney Shenker properly disclose U.S. Patent Application No. 07/557,899 ("Young '899 application") to the PTO;

2.    Did the Young '421 patent examiner determine that there were no material, non-cumulative differences between the Young '899 application disclosed to the PTO and the Young '421 patent; and

3.    If the Young '421 patent is non-cumulative to the Young '899 application, can the non-cumulative portions of the Young '421 patent qualify as prior art to the Cheng '990 patent?

**Intent**

4.    Was Attorney Shenker aware of the issuance of the Young '421 patent and knew of the withheld material information contained in the patent; and

5.    Did Attorney Shenker act with specific intent to deceive the PTO?

If the Young '899 application was properly disclosed to the PTO, Samsung must provide sufficient admissible evidence from which a reasonable fact finder could answer "No" to *all* of the remaining questions 2-5.  If not, AMD's motion for summary judgment must be granted.

Assuming the Young '899 application was *not* properly disclosed to the PTO, Samsung must still provide sufficient admissible evidence from which a reasonable fact finder could answer "No" to *both* questions 4 and 5.  If not, AMD's motion for summary judgment must be granted.

- 1 -                    AMD'S MOTION FOR SUMMARY JUDGMENT OF NO
INEQUITABLE CONDUCT RELATING TO  U.S.
PATENT NO. 5,559,990

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        Courts have long recognized that unsupported inequitable conduct allegations are

4   a "plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir.

5   1988).  Samsung has contributed to this plague by asserting a wholly unsupported claim

6   of inequitable conduct as to the Cheng '990 patent.  Samsung claims that Michael

7   Shenker, the prosecuting attorney for the Cheng '990 patent, committed inequitable

8   conduct by failing to disclose the Young '421 patent to the PTO, even though (1) he was

9   unaware that the Young '421 patent had issued, (2) he disclosed that patent's application

10  to the PTO, (3) the patent was merely cumulative to that application, (4) he expressly

11  denies under oath any intent to deceive the PTO, and (5) his course of conduct during

12  prosecution is utterly consistent with that denial.  Incredibly, the very attorney Samsung

13  accuses of unethical conduct is used by Samsung as its prosecution counsel and Attorney

14  Shenker is currently prosecuting a number of patent applications for Samsung.  Shenker

15  Depo Tr. at 35:22-36:12 (Kepper Decl. Ex. 6).

16       To establish its claim of inequitable conduct, Samsung must prove by clear and

17  convincing evidence that the prosecuting attorney for the Cheng '990 patent *both* failed to

18  disclose "material information" and did so with the "specific intent to deceive the PTO."

19  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

20  Samsung cannot satisfy either element.  The Young '421 patent was not "material

21  information" because it was cumulative to the patent's application that was properly

22  disclosed to the PTO.  Accordingly, the prosecuting attorney discharged his duty of

23  disclosure by submitting the application that became the Young '421 patent.

24       Samsung also cannot establish that the prosecuting attorney for the Cheng '990

25  patent acted with specific intent to deceive the PTO.  His undisputed testimony is that he

26  was unaware of the issuance of the Young '421 patent, and he explicitly denies acting

27  with any intent to deceive the PTO.  As there is no genuine issue of material fact as to the

28  two issues of materiality and intent, AMD respectfully requests that the Court grant

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

- 2 -                    AMD'S MOTION FOR SUMMARY JUDGMENT OF NO
INEQUITABLE CONDUCT RELATING TO U.S.
PATENT NO. 5,559,990

1   summary judgment dismissing Samsung's Cheng '990 patent defenses and counterclaims

2   relating to inequitable conduct.

3   **II.   STATEMENT OF FACTS**

4      **A.   Cheng '990 Patent Prosecution History**

5      On February 14, 1992, U.S. Patent Application No 07/836,667 ("Cheng '667

6   application") was filed, naming AMD employees Pearl Cheng, Michael Briner and James

7   Yu as inventors.  Cheng '990 File History at AMDFH000001248 (Kepper Decl. Ex. 1).

8   The sole prosecuting attorney on the Cheng '667 application was Michael Shenker from

9   the law firm of Skjerven, Morrill, MacPherson, Franklin & Friel.  *Id.*; Shenker Depo Tr. at

10  59:2-15 (Kepper Decl. Ex. 6).  A continuation of the Cheng '667 application, U.S. Patent

11  Application No. 08/328,337 ("Cheng '337 application"), was filed by Attorney Shenker

12  on October 24, 1994.  Cheng '990 File History at AMDFH000001248 (Kepper Decl.

13  Ex. 1).  The Cheng '337 application was based on application papers that were identical to

14  the parent Cheng '667 application.  *Id.*  The Cheng '337 application issued as the Cheng

15  '990 patent on September 24, 1996.  Cheng '990 patent at SAMAMD0532933 (Kepper

16  Decl. Ex. 2).  All claims of the Cheng '990 patent are entitled to the domestic priority

17  benefit of the February 14, 1992 filing date for the Cheng '667 application.  35 U.S.C.

18  §120; Nixon Decl. at ¶58.

19     Two other AMD patent applications were before the PTO at the same time as the

20  Cheng patent prosecution.  Attorney Shenker had no involvement in the prosecution of

21  either of these applications.  Nixon Decl. at ¶¶24, 26; Shenker Depo Tr. At 54:11-15,

22  57:17-58:2 (Kepper Decl. Ex. 6).  The named inventors on both these applications were

23  Elvan Young and Philip Craine.  One of the applications, U.S. Patent Application No.

24  07/558,033 ("Young '033 application"), became U.S. Patent No. 5,280,594 ("Young '594

25  patent") on January 18, 1994.  Young '594 patent at SAMAMD0247335 (Kepper Decl.

26  Ex. 3).  The second application, U.S. Patent Application No. 07/557,899 ("Young '899

27  application") was replaced by a file wrapper continuation, U.S. Patent Application No.

28  07/865,812 ("Young '812 application") filed on March 31, 1992 and became U.S. Patent

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

No. 5,285,421 ("Young '421 patent") on February 8, 1994.  Young '421 Patent at SAMAMD0274554 (Kepper Decl. Ex. 4).  A chart tracking the Young and Cheng applications as they matured into patents is included below:



On April 17, 1992, Attorney Shenker satisfied his duty of disclosure by submitting an Information Disclosure Statement ("IDS") to the PTO that disclosed 14 references, including the Young '899 application and Young '033 application.  Cheng '990 File History at AMDFH000001544-1546 (Kepper Decl. Ex. 1).

On October 19, 1993, the PTO issued a first office action.  *Id.* at AMDFH000001673.  Although the applications were properly submitted, the Examiner refused to consider the Young '033 and Young '899 applications, incorrectly noting that the Cheng '990 applicants should reference the patent applications in the "Background of the Invention" section of their application.  *Id.* at AMDFH000001677; Nixon Decl. at ¶¶49-52.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1   On March 21, 1994, Attorney Shenker responded to the Examiner's refusal to
2   consider the Young '033 and Young '899 applications by advising the Examiner of her
3   error and again requesting consideration of the applications:

> On April 17, 1992, Applicants filed an Information Disclosure Statement
> listing among other things, U.S. patent applications 07/558,033 and
> 07/557,899. Per the Office Action, paragraph 16, the Examiner did not
> consider these patent applications apparently on the grounds that the patent
> applications were not referenced in Applicants' "Background of the
> Invention." *However, 37 C.F.R. §§ 1.56, 1.97 and 1.98 that govern filing
> of information disclosure statements do not require that patent applications
> cited in such statements be referenced in the Background of Invention.*
> Therefore, Applicants respectfully request consideration of patent
> applications 07/558,033 and 07/557,899.

14   Cheng '990 File History at AMDFH000001732-1733 (Kepper Decl. Ex. 1)(emphasis
15   added). Also on March 21, 1994, Attorney Shenker filed another IDS calling attention to
16   the recently issued Young '594 patent. *Id.* at AMDFH000001760. Attorney Shenker was
17   unaware the Young '421 patent had issued. Shenker Depo Tr. at 57:20-58:2 (Kepper
18   Decl. Ex. 6).

19   On June 23, 1994, the PTO responded to Attorney Shenker's request that the
20   Young '899 application, although disclosed, also be considered:

> 11.   . . . . As for application 07/557,899, this is not a printed document at
> this time and should not be listed on a PTO Form 1449 as a U.S. Patent
> Document. The application can be listed as "Other Art" along with
> providing a statement of relevance to the present invention if the Applicant
> still wishes this application to be considered as 'Prior Art' in the current
> application.

27   Cheng '990 File History at AMDFH000001777 (Kepper Decl. Ex. 1).

28   On September 23, 1994, Attorney Shenker provided a responsive amendment and

1    remarks, which correctly stated the law:

2         Regarding paragraph 11 of the Office Action, . . . . it is respectfully

3         submitted that the [Young '899] application should be considered under

4         Rule 56.   Indeed, contrary to the suggestion in the Office Action, that

5         application need not be listed as "Other Art" on PTO 1449.   See MPEP §

6         609, last paragraph.   Further, a statement of relevance mentioned in the

7         Office Action need not be provided because the application 07/557,899 is

8         in the English language.   See 37 C.F.R. §1.98(a)(3).   The information

9         regarding the application 07/557,899 was timely submitted under 37 C.F.R.

10        § 1.97(b)(1) within three months of the filing date of the present

11        application.    Consideration of application 07/557,899 is therefore

12        respectfully requested.

13   *Id.* at AMDFH000001822; Nixon Dec. at ¶20.   The PTO Examiner never responded to

14   Attorney Shenker's remarks and Attorney Shenker reasonably presumed the Examiner

15   considered the application.   Shenker Depo Tr. at 107:24-108:1 (Kepper Decl. Ex. 6).

16        **B.    Current Litigation**

17        On March 11, 2009, Samsung sought leave to amend its Answers and

18   Counterclaims to include allegations that the prosecuting attorney for the Cheng '990

19   patent, Michael Shenker, acted with deceptive intent in failing to disclose the Young '421

20   patent to the PTO.   (Dkt. #120).   AMD opposed Samsung's proposed amendment as

21   being futile because the application for the Young '421 patent was properly disclosed to

22   the PTO and the application was substantively identical to the issued Young '421 patent.

23   (Dkt. #201 at 1; Dkt. #214 at 2).   AMD also argued that Samsung had failed to plead the

24   materiality and intent elements of inequitable conduct with sufficient particularity.   (*Id.*).

25        Under the liberal standard then in effect for leave to amend to add inequitable

26   conduct allegations, the Court granted Samsung's motion.   (Dkt. # 234).   The Court

27   determined that an issue remained as to "whether the differences between the '899

28   application and the '421 patent are material" and it could not find that the amendments

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

were immaterial as a matter of law "at this stage in the litigation." (*Id.* at 7).  As to the issue of intent, the Court found that Samsung's allegations were pled with sufficient particularity under the standards then in effect and that, based on its pleadings, Samsung "may eventually be able to show that an inference of intent to deceive is warranted." (*Id.*).[1]

This litigation has progressed to the next stage.  Samsung has had ample opportunity to gather evidence to support its inequitable conduct allegations through discovery, including taking the depositions of Attorney Shenker and inventors Pearl Cheng and Michael Briner.  It has come up empty.  Accordingly, AMD's summary judgment motion is ripe for resolution.

## III.   STATEMENT OF APPLICABLE LAW

### A.   Summary Judgment

Summary judgment shall be granted where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine" issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The procedural burden of demonstrating the absence of a genuine issue of material fact rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where, as here, the nonmovant bears the burden of proof, the movant may discharge its procedural burden merely by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The burden then shifts to Samsung to make a "showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden

---

[1] The Federal Circuit has since issued its opinion in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).  *Exergen* established a "heightened pleading requirement" substantially increasing the level of particularity required to plead inequitable conduct.  *Id.* at 1316.  Samsung's pleadings do not meet this heightened requirement.

- 7 -

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1   of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Accordingly,

2   Samsung must establish that a reasonable fact finder could find that it has proven, by clear

3   and convincing evidence, both the materiality and intent elements of inequitable conduct.

4   It has failed to establish either.

5   **B.   Inequitable Conduct**

6   An otherwise valid patent may be rendered unenforceable by virtue of inequitable

7   conduct committed during the prosecution of the patent application.  *Larson Mfg. Co. of*

8   *South Dakota, Inc. v. Aluminart Products Ltd.*, 559 F.3d 1317, 1326 (Fed. Cir. 2009).  To

9   prove that a patent is unenforceable due to inequitable conduct, the alleged infringer must

10  prove by clear and convincing evidence that the patent applicant "(1) either made an

11  affirmative misrepresentation of material fact, failed to disclose material information, or

12  submitted false material information, and (2) intended to deceive the U.S. Patent and

13  Trademark Office."   *Id.*   Each element must be independently proven by clear and

14  convincing evidence.  *Astrazeneca Pharmaceuticals LP v. Teva Pharmaceuticals USA,*

15  *Inc.*, 583 F.3d 766, 770 (Fed. Cir. 2009) ("[B]oth materiality and deceptive intent must be

16  established by clear and convincing evidence.").

17  Information is "material" when "a reasonable examiner would consider it important

18  in deciding whether to allow the application to issue as a patent."  *Star Scientific*, 537 F.3d

19  at 1367.   "It is well-established, however, that information is not material if it is

20  cumulative of other information already disclosed to the PTO."  *Id.*

21  To establish the intent element, the alleged infringer must prove by clear and

22  convincing evidence that the "material information was withheld with the specific intent

23  to deceive the PTO."  *Id.* at 1366.  The alleged infringer cannot rely solely on materiality

24  to show intent.  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008) ("[A]

25  showing of materiality alone does not give rise to a presumption of intent to deceive.").

26  Only after the "threshold findings of materiality and intent are established, the trial court

27  must weigh them to determine whether the equities warrant a conclusion that inequitable

28  conduct occurred."  *Id.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

## IV.   ARGUMENT

### A.   Overview

Samsung has pled generally that Attorney Shenker withheld the Young '421 patent from the Cheng '990 patent Examiner with an intent to deceive. (*See* Dkt. #237 at ¶¶62-76, 107-122).  In response to AMD's discovery requests, Samsung has not provided additional information regarding the factual and legal basis for its inequitable conduct contentions as to the Cheng '990 patent.  Accordingly, Samsung's pleading defines and limits the scope of its inequitable conduct claims.

Samsung fails to even meet the standard for properly pleading inequitable conduct as recently set forth in *Exergen Corp. v. Wal-Mart Stores*, much less provide sufficient evidence to survive summary judgment.  575 F.3d 1312, 1325-31 (Fed. Cir. 2009).  As required by *Exergen*, Samsung has failed to identify both at the pleading stage and through discovery:

(1) What claims and claim limitations from the Cheng '990 patent the Young '421 patent is relevant to;

(2) where the allegedly material information that was withheld from the PTO is located in the Young '421 patent;

(3) the claim limitations, or combination of claim limitations from the Cheng '990 patent, that are disclosed in the Young '421 patent, but are missing from the art of record for the Cheng '990 patent; and

(4) the "underlying facts" from which a court may reasonably infer that Attorney Shenker knew of the withheld material information contained in the Young '421 patent and withheld this information with a specific intent to deceive the PTO.

*Exergen* requires that this information be pled.  575 F.3d at 1328-30.  This motion tests the proof.  *Covad Communications Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 676 (D.C. Cir. 2005) (motion for summary judgment "tests the sufficiency of the non-moving party's evidence").  Samsung has neither pled nor provided proof as to any of these requisite

1   facts.

2          Samsung cannot demonstrate that the Young '421 patent is non-cumulative to the

3   Young '899 application disclosed to the Examiner because the patent teaches no more than

4   was already taught in the Young '899 application.  As to intent, the undisputed evidence

5   affirmatively establishes that Attorney Shenker was not aware of the issuance of the

6   Young '421 patent, and did not act with an intent to deceive by withholding that patent

7   from the PTO.

8          **B.     Attorney Shenker Satisfied His Duty Of Disclosure And Did Not Fail To**

9               **Disclose Material Information To The PTO.**

10             **1.     Attorney Shenker Properly Disclosed The Young '899**

11                  **Application To The PTO.**

12         Attorney Shenker disclosed the Young '899 application to the PTO Examiner in

13   full compliance with applicable PTO rules.  Nixon Decl. at ¶¶3, 20, 45, 72(b), 73(f).[2]

14   Under the PTO rules existing at the time, the duty of disclosure was satisfied if "all

15   information known to be material to patentability…[was] submitted to the Office in the

16   manner prescribed by §§1.97(b)-(d) and 1.98."  37 C.F.R. §1.56(a) (1992)(Kepper Decl.

17   Ex. 7).

18         Section 1.97(b) provides that an IDS can be submitted:

19         (1)  Within three months of the filing date of a national application;…or

20         (3)  Before the mailing date of a first office action on the merits,

21         whichever occurs last.

22         37 C.F.R. § 1.97(b) (1992)(Kepper Decl. Ex. 8); Nixon Decl. at ¶19.  The Cheng

23   '667 application was filed on February 14, 1992.   Cheng '990 File History at

24   AMDFH000001248 (Kepper Decl. Ex. 1); Nixon Decl. at ¶42.  Less than three months

25   ────────────────────────
[2] Larry S. Nixon is a patent attorney who, in nearly 40 years of practice, has prosecuted
26   thousands of patent applications through the PTO.  He also serves as an expert on PTO
procedure and has appeared in that capacity in approximately 100 patent enforcement
27   litigations.  *See* Nixon Decl. at ¶¶2-3.  Mr. Nixon has analyzed the prosecution histories
for the Cheng '990, Young '421 and Young '594 patents and has reviewed the deposition
28   testimony of prosecuting attorney Michael Shenker and inventors Pearl Cheng and
Michael Briner.  *Id.* at ¶75.

Robins, Kaplan, Miller & Ciresi L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

later, on April 17, 1992, Attorney Shenker submitted the first IDS disclosing the Young '899 application. Cheng '990 File History at AMDFH000001544-1546 (Kepper Decl. Ex. 1); Nixon Decl. at ¶45. The first office action was not issued until October 19, 1993. *Id.* at ¶49; *see also* Cheng '990 File History at AMDFH000001673 (Kepper Decl. Ex. 1).

Section 1.98(a) requires that the IDS include a "list of all patents, publications or other information," such as patent applications, submitted to the PTO. 37 C.F.R. § 1.98 (1992)(Kepper Decl. Ex. 9). Attorney Shenker's first IDS submitted to the PTO on April 17, 1992 included such a list and the examiner's attention was explicitly directed to the Young '899 application. Nixon Decl. at ¶45. Attorney Shenker correctly testified that the Young '899 application was properly disclosed to the Examiner. Shenker Depo Tr. at 104:18-21 (Kepper Decl. Ex. 6). PTO expert Larry Nixon agrees that the Young '899 application was "properly disclosed to the [Cheng] '990 patent examiner in full compliance with 37 C.F.R. §§ 1.97-98, thus discharging the duty of disclosure." Nixon Decl. at ¶¶3, 20, 45, 72(b), 73(f).

Attempting to muddy this clearly proper disclosure of the Young '899 application, Samsung has previously, and incorrectly, argued that the Young '899 application was not properly *disclosed* because the Examiner initially did not *consider* the submitted Young '899 application. (*See* Dkt. #213 at 6) (Samsung's Reply in Support of Motion for Leave to Amend Answers and Counterclaims). Samsung erroneously equates disclosure with consideration. 37 C.F.R. § 1.56 imposes a duty of *disclosure* to the PTO, not a duty to ensure the PTO considers references disclosed to it. Nixon Decl. at ¶21. The duty of disclosure is satisfied when the reference is submitted to the examiner in the manner prescribed by §§1.97 and 1.98. 37 C.F.R. § 1.56 (1992)(Kepper Decl. Ex. 7); Nixon Decl. at ¶¶20-21. "There is no additional requirement for an applicant to ensure that the information submitted to the PTO is actually considered by the examiner." Nixon Decl. at ¶21.

The Federal Circuit has expressly rejected Samsung's argument that, to satisfy the duty of disclosure, a reference must be considered. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221

F.3d 1318 (Fed. Cir. 2000). In *Fiskars*, the defendants alleged that plaintiffs engaged in inequitable conduct by withholding a prior art product brochure. *Id.* at 1327. The plaintiffs cited the brochure to the PTO on their list of references. The defendants did not dispute that the patent applicant had *submitted* the brochure to the examiner during prosecution, but argued that the duty of disclosure had not been discharged because the examiner did not *consider* the brochure, pointing to a line drawn by the examiner through the list's reference to the brochure. *Id.* The Federal Circuit held that when a reference was submitted to the patent examiner it cannot be deemed to have been withheld. *Id.* ("An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."). Here, as in *Fiskars*, Attorney Shenker discharged any duty of disclosure by submitting the Young '899 application to the PTO.

### 2. The Young '421 Patent Examiner Considered The Young '421 Patent To Be Cumulative To The Young '899 Application.

Attorney Shenker properly submitted the Young '899 application to the Examiner and he had no duty to disclose the Young '421 patent because the Young '421 patent is merely cumulative to the Young '899 application. An applicant has no duty to disclose a reference if it is cumulative. *Rothman v. Target Corp.*, 556 F.3d 1310 (Fed. Cir. 2009). "[I]nformation is not material if it is cumulative of other information already disclosed to the PTO." *Star Scientific*, 537 F.3d at 1367.

The Young '421 patent is cumulative because it contains no substantive teaching not already inherently contained in the Young '899 application. The primary differences between the Young '421 patent and the Young '899 application are a few diagrams and related text requested by the Examiner. The Examiner asked the applicants to include these amendments only to facilitate understanding of the invention and *explicitly cautioned them not to add new matter*. Young '421 File History at SAMAMD0276963 (Kepper Decl. Ex. 5) ("Applicant is reminded to avoid adding new matter."). "New matter" is any substantive teaching added by amendment that is not already "inherently

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1  contained in the original application." *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347,

2  1352 (Fed. Cir. 2000). PTO rules prohibit the addition of new matter to an application

3  during prosecution. 37 C.F.R. § 1.121(f) ("No amendment may introduce new matter

4  into the disclosure of an application."); MPEP § 608.04. Thus, by rule, the Young '421

5  patent can contain no substantive teaching not inherently contained in the '899

6  application. Nixon Decl. at ¶¶3, 11.

7      When the Young '421 patent applicants added the requested amendments, they

8  explicitly represented to the PTO that no new matter was added. Young '421 File History

9  at SAMAMD0276974 (Kepper Decl. Ex. 5) (As to Figure 7 and the associated text

10  changes to the Specification, "no new matter is introduced."); *see also* Nixon Decl. at ¶34.

11      The Examiner reviewed the amendments and determined that no new matter was

12  added. Young '421 File History at SAMAMD0276983 (Kepper Decl. Ex. 5); Nixon Decl.

13  at ¶35. The Examiner's allowance of the amendments confirms that the diagrams and

14  related description were inherently contained in the Young '899 application. Nixon Decl.

15  at ¶35; 37 C.F.R. § 1.121(f).

16      Because the amendments were inherently present in the Young '899 application,

17  the Young '421 patent is merely cumulative to the Young '899 application and is,

18  therefore, not material. *Star Scientific*, 537 F.3d at 1367; Nixon Decl. at ¶72(a), (b) and

19  (c). Attorney Shenker simply had no duty to disclose the Young '421 patent. *Id.*; MPEP

20  § 2001.05 ("If the information is not material, there is no duty to disclose it to the

21  Office.").

22      **3.     If Any Portion Of The Young '421 Patent Is Not Cumulative,**

23      **That Portion Does Not Qualify As Prior Art And Was Not**

24      **Required To Be Disclosed During Prosecution Of The Cheng**

25      **'990 Patent.**

26      Samsung's inequitable conduct claim fails even if it could somehow establish that

27  the Young '421 is not cumulative to the Young '899 application. Only those portions of

28  the Young '421 patent that disclose new matter not present in the Young '899 application

can be non-cumulative and therefore material.  Nixon Decl. at ¶72(a), (d) and (e).

However, if the Young '421 patent contains new matter, that new matter does *not* qualify

as prior art to the Cheng '990 patent because it cannot have an effective "prior art" date

earlier than when the new matter was first submitted to the PTO.  *Id.* at ¶72(d).  Attorney

Shenker had no duty to disclose information that does not qualify as prior art.  *Id.*

The Young '421 patent issued from the Young '812 application, which was a

continuation of the Young '899 application.  Young '421 patent at SAMAMD0274554

(Kepper Decl. Ex. 4).  The '812 application as initially filed was identical to the '899

application that Attorney Shenker disclosed.  Nixon Decl. at ¶32.  Thus, the only

opportunity to add new matter to the Young '421 patent was by amendment during

prosecution of the Young '812 application.  If new matter was added by amendment to the

Young '812 application, the application would then be treated as a continuation-in-part

application as of its amendment date because it would then contain both new matter and

continuing matter that was already disclosed in the Young '899 and original Young '812

applications.  MPEP § 201.08 ("A continuation-in-part is an application filed during the

lifetime of an earlier nonprovisional application, repeating some substantial portion or all

of the earlier nonprovisional application and adding matter not disclosed in the said earlier

nonprovisional application.").

In a patent that issued from a continuation-in-part of an earlier application, only the

portions of the patent carried over from the parent application receive the earlier parent

application date as an effective prior art date.  *Application of Klesper*, 397 F.2d 882, 885

(C.C.P.A. 1968) (stating that "the continuation-in-part application is entitled to the filing

date of the parent application as to all subject matter carried over into it from the parent

application"); *see also Augustine Medical v. Gaymar Industries, Inc.*, 181 F.3d 1291, 1302

(Fed. Cir. 1999) ("Subject matter that arises for the first time in the CIP [continuation-in-

part] application does not receive the benefit of the filing date of the parent application.");

Nixon Decl. at ¶72(d).  Accordingly, any new matter that was not present in the Young

'899 application receives the effective prior art date of when the subject matter was first

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1   submitted to the PTO and is not entitled to the earlier prior art date of the Young '899

2   application. *Id.*; *Klesper*, 397 F.2d at 885.

3       Any new matter in the Young '812 application does not qualify as prior art to the

4   Cheng '990 patent because it was submitted to the PTO *after* the effective filing date of

5   the Cheng '990 patent. The effective filing date for all claims of the Cheng '990 patent is

6   February 14, 1992. *Id.* at ¶58. The Young '812 application was filed on March 31, 1992.

7   Young '421 patent at SAMAMD0274554 (Kepper Decl. Ex. 4). It was not amended to

8   include any "new matter" alleged by Samsung until January 13, 1993, which would then

9   be the earliest possible "prior art" date for the new matter. Nixon Decl. at ¶72(d); 35

10  U.S.C. § 102(e) (stating that a patent must issue from an application by another filed

11  before the applicant's date of invention to qualify as prior art). The following chart is

12  included to illustrate why any new matter added to the Young '812 application does not

13  qualify as prior art:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS



14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMD'S MOTION FOR SUMMARY JUDGMENT OF NO
INEQUITABLE CONDUCT RELATING TO U.S.
PATENT NO. 5,559,990

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

The Cheng '990 patent applicants had no duty to disclose subject matter that does not qualify as prior art.  Nixon Decl. at ¶72(d).  Thus, as a matter of law, any new matter reflected in the '421 Young patent as contended by Samsung does not qualify as prior art and Attorney Shenker had no duty to disclose it to the PTO.

### C. Attorney Shenker Was Unaware Of The Issuance Of The Young '421 Patent And Did Not Act With Specific Intent To Deceive The PTO.

In addition to proving that the Young '421 patent is material and non-cumulative to the Young '899 application, Samsung must prove by clear and convincing evidence that Attorney Shenker was aware of the Young '421 patent and of its alleged materiality and, despite this knowledge, acted with a specific deceptive intent in withholding the Young '421 patent from the PTO.  *See Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326, 1342-43 (Fed. Cir. 2005) ("One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO.").

An inference of deceptive intent "must not only be based on sufficient evidence and be reasonable in light of that evidence, but *it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard*." *Star Scientific*, 537 F.3d at 1366 (emphasis added).  A court may not infer specific intent to deceive based on a finding that the patent applicants did not disclose information; "there must be a factual basis for a finding of deceptive intent." *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1355 (Fed. Cir. 2008); *Larson*, 559 F.3d at 1340.

No reasonable fact finder could find by clear and convincing evidence that Attorney Shenker acted with deceptive intent by withholding the Young '421 patent.  Indeed, the record affirmatively demonstrates that Attorney Shenker was unaware of the issuance of the Young '421 patent and acted with complete candor toward the PTO by disclosing and repeatedly requesting that the Examiner consider the application for the

Young '421 patent – an application virtually identical to the issued patent.

### 1.     Attorney Shenker Was Not Aware Of The Young '421 Patent.

Attorney Shenker had no knowledge of the Young '421 patent during prosecution of the Cheng '990 patent. *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed. Cir. 1996) ("[T]he applicant's actual knowledge of the reference's existence must be proved."). Attorney Shenker does not remember ever seeing the Young '421 patent during prosecution of the Cheng '990 patent. Shenker Depo Tr. at 57:20-58:2 (Kepper Decl. Ex. 6) ("Q. But you don't recall ever seeing this patent before? A. No"). Attorney Shenker's practice is to err on the side of submitting "too much information" to the PTO because "it is very well known that a patent is stronger if more references were considered by the patent office" and disclosure will also "reduce accusations that may be made against the patent . . . due to a mistake or overzealousness of the defendant." *Id.* at 70:10-13, 80:4-11; Nixon Decl. at ¶73(g). Given this practice, Attorney Shenker stated: "I suspect that if I had known about [the Young '421] patent, I would have submitted it" regardless of its materiality. Shenker Depo Tr. at 97:6-14 (Kepper Decl. Ex. 6).

The file history for the Cheng '990 patent further confirms that Attorney Shenker was unaware of the Young '421 patent. When Attorney Shenker learned that the Young '594 patent had issued, he ceased his requests to have the Examiner consider the application for that patent and promptly brought the patent to the attention of the Examiner. Cheng '990 File History at AMDFH000001760 (Kepper Decl. Ex. 1); Nixon Decl. at ¶¶53, 73(k). By contrast, even after the Young '421 patent had issued, Attorney Shenker continued to bring the Young '899 application to the attention of the Examiner. Cheng '990 File History at AMDFH000001822 (Kepper Decl. Ex. 1). Attorney Shenker would not have continued his repeated attempts to have the Examiner consider the Young '899 application if he had known that the patent on that application had issued. Instead, he would have simply cited the Young '421 patent to the Examiner as he had done when he learned of the issuance of the Young '594 patent. Attorney Shenker's treatment of these two similarly situated patents is consistent with his testimony that he was unaware

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

AMD'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT RELATING TO U.S. PATENT NO. 5,559,990

1   of the issuance of the Young '421 patent.  *See* Nixon Decl. at ¶73(k).

2         Samsung lacks sufficient facts to support even a pleading that Attorney Shenker

3   was aware of the Young '421 patent or any allegedly material information contained

4   therein.  *Exergen*, 575 F.3d at 1327 (requiring that an inequitable conduct pleading must

5   include "underlying facts from which a court may reasonably infer that a specific

6   individual knew of the withheld material information").

7         **2.    Attorney Shenker Did Not Act With Specific Intent To Deceive**

8              **The PTO.**

9         In order to survive summary judgment, Samsung must put forth sufficient evidence

10  from which a reasonable fact finder could find by clear and convincing evidence that

11  deceptive intent is the "single most reasonable inference able to be drawn."  *Star*

12  *Scientific*, 537 F.3d at 1366.  It cannot do so.

13        Attorney Shenker took his duty of disclosure to the PTO very seriously and

14  discharged that duty.  *See* Shenker Depo Tr. at 23:21-22 (Kepper Decl. Ex. 6) ("[T]he duty

15  of disclosure is very important.").  In discharging that duty, Attorney Shenker filed three

16  separate IDS statements, bringing information to the attention of the PTO.  Cheng '990

17  File    History    at    AMDFH000001372-1373,    AMDFH000001544-1546    and

18  AMDFH000001760  (Kepper Decl. Ex. 1).  Furthermore, even though Attorney Shenker

19  had properly submitted the Young '899 application to the Examiner and thereby

20  discharged his duty of disclosure, he made repeated additional attempts to get the

21  Examiner to go further and consider the Young '899 application.  Shenker Depo. Tr. at

22  70:10-13, 80:4-11 (Kepper Decl. Ex. 6).  Attorney Shenker's efforts in repeatedly insisting

23  that the Examiner consider the Young '899 application is wholly inconsistent with a

24  deceptive intent to conceal the Young '421 patent from the PTO.

25        In addition, Attorney Shenker believed that the Examiner *had* ultimately

26  considered the Young '899 application.  On Attorney Shenker's third attempt to have the

27  Examiner consider the Young '899 application, he explained why the Examiner erred in

28  refusing to consider the application.  Cheng '990 File History at AMDFH000001822

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

(Kepper Decl. Ex. 1).  The Examiner did not respond to this explanation in her subsequent office action.  Attorney Shenker took the Examiner's silence on the issue to mean that his explanation was persuasive and that the Examiner had considered the Young '899 application.  Shenker Depo Tr. at 107:24-108:1 (Kepper Decl. Ex. 6) ("[I]f the examiner had persisted in refusing to consider the reference, I would have expected the examiner to state so.").  *See also id.* at 114:10-12 and errata sheet ("Q. Because you believe that the examiner had considered the '899?   A. Correct.   I believed that the examiner had considered the '899 patent.").

Attorney Shenker unequivocally denied any intent to deceive the PTO during prosecution of the Cheng '990 patent.  *Id.* at 120:18-21("Q. Did you intend to deceive the Patent and Trademark Office at any time during your prosecution of the Cheng '990 patent. A. No.").  He certainly did not make a deliberate decision to withhold the Young '421 patent from the PTO.  *Id.* at 120:14-17 ("Q. Did you make a deliberate decision to withhold the Young '421 patent from the Patent and Trademark Office? A. No.").  Attorney Shenker's repeated disclosure of the Young '899 application, his lack of awareness of the issuance of the Young '421 patent, and his disclosure of the Young '594 patent make Attorney Shenker's good faith and full candor toward the PTO the only reasonable inference that can be drawn from the record.  *See Larson*, 559 F.3d at 1340 (stating that evidence of good faith militates against a finding of deceptive intent).

## V.   CONCLUSION

In requesting leave to amend to assert this inequitable conduct claim, Samsung proclaimed that it "intends to prove through discovery" that "AMD intentionally withheld the '421 patent from the patent examiner, despite knowing that it was a material prior art reference."  (Dkt. #213 at 6).  Samsung has taken three depositions, including that of the prosecuting attorney Michael Shenker, and has been able to establish only that Attorney Shenker was unaware of the Young '421 patent and did not act with intent to deceive the PTO.

1    A reasonable fact finder could not find that Attorney Shenker committed

2 inequitable conduct by withholding the Young '421 patent from the PTO because that

3 patent is cumulative to the properly disclosed Young '899 application. There is also no

4 basis to find that Attorney Shenker acted with specific intent to deceive the PTO.

5 Accordingly, AMD respectfully requests that the Court grant AMD's motion for summary

6 judgment as to Samsung's inequitable conduct claims and defenses relating to the Cheng

7 '990 patent as provided in the Proposed Order accompanying this Motion.

8

9 DATED: December 7, 2009          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

10

11                                By: _____

12                                    William H. Manning
                                     Brad P. Engdahl
                                     Andrew M. Kepper

13

14                                    2800 LaSalle Plaza
                                     800 LaSalle Avenue
15                                    Minneapolis, MN 55402-2015
                                     612-349-8500

16                                    **ATTORNEYS FOR PLAINTIFFS**
                                     **ADVANCED MICRO DEVICES, INC. AND**
17                                    **ATI TECHNOLOGIES, ULC**

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS