IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MICRO DEVICES (AMD), et al., | No. C 08-00986 SI |
| Plaintiffs, | **ORDER GRANTING SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT RE: CHENG '990 PATENT AND GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS RE: IACOPONI '594 PATENT.** |
| v. | |
| SAMSUNG ELECTRONICS CO., et al., | |
| Defendants. | |

**BACKGROUND**

The procedural background of this litigation is as follows. Plaintiffs Advanced Micro Devices, Inc. and ATI Technologies, ULC (collectively, "AMD") brought suit against defendants Samsung Electronics Co., Ltd.; Samsung Semiconductor, Inc.; Samsung Austin Semiconductor, LLC; Samsung Electronics America, Inc.; Samsung Telecommunications America, LLC; Samsung Techwin Co., Ltd.; and Samsung Opto-Electronics America, Inc. (collectively, "Samsung"), alleging infringement of seven AMD patents, including United States Patents Nos. 5,559,990 to Cheng ("Cheng '990 Patent") and 5,545,592 to Iacoponi ("Iacoponi '592 Patent"). On May 18, 2009 this Court granted Samsung leave to amend its answer to include counterclaims of inequitable conduct.[1] Samsung's amended counterclaim now alleges that the Cheng '990 Patent applicants engaged in inequitable conduct by failing to disclose U.S. Patent No. 5,285,421 to the United States Patent and Trademark Office ("PTO") and that the Iacoponi '592 Patent applicants engaged in inequitable conduct by failing to disclose certain prior art

---
[1]Doc. No. 234.

1 references. Before the Court are AMD's motion for summary judgment of no inequitable conduct
2 relating to the Cheng '990 Patent, and motion for judgment on the pleadings of no inequitable conduct
3 relating to the Iacaponi '592 Patent. Samsung opposes the summary judgment motion,[2] and opposes
4 the motion for judgment on the pleadings,[3] alternatively requesting leave to amend its complaint. The
5 separate facts and issues underlying each motion are set forth in turn below.

**DISCUSSION**

**I.     Motion For Summary Judgment on Cheng '990 Patent.**

    **A.     Factual Background**

The underlying inequitable conduct claim with respect to the Cheng '990 Patent arises from allegations that the prosecuting attorney, Michael Shenker ("Shenker"), intended to deceive the PTO when he failed to disclose to the PTO the fact that the previously cited Young '899 application had issued as the Young '421 Patent. Shenker never disclosed the Young '421 Patent itself. The undisputed facts are as follows:

On February 14, 1992, Shenker, an attorney with the law firm Skjerven, Morril, MacPherson, Franklin & Friel, filed U.S. Patent Application No. 07/836,667 naming as inventors AMD employees Pearl Cheng, Michael Briner and James Yu. A continuation application (Application No. 08/328,337) was filed on October 24, 1994, and on September 24, 1996, the Cheng '990 Patent issued, for the invention "Memories with Burst Mode Access." This patent was assigned to AMD.

At the time the application leading to the Cheng '990 Patent was filed, two other patent applications related to high speed memory design were pending with the PTO. One was Patent Application No. 07/588,033 ("Young '033 Application") and the other was Application No. 07/557,899 ("Young '899 Application"). Both applications were filed on July 25, 1990 by attorneys at Skjerven, Morril, MacPherson, Franklin & Friel; but Shenker was not himself involved in the prosecution of those applications. Elvan Young, an AMD employee at the time, was the named inventor for both

---

[2]Doc. No. 287.

[3]Doc. No. 284.

applications and both were also assigned to AMD. On January 18, 1994 the Young '033 Application issued as U.S. Patent No. 5,280,594 ("Young '594 Patent"). On March 31, 1992, the Young '899 Application was replaced by a continuation application (Application No. 07/865,812), and it ultimately issued as U.S. Patent No. 5,285,421 ("Young '421 Patent") on February 8, 1994.

On April 17, 1992, during the prosecution of the Cheng '990 patent, Shenker filed an Information Disclosure Statement (IDS) with the PTO that cited additional references for the examiner to consider. Among the references listed were the Young '899 Application and the Young '033 Application. Declaration of Andrew M. Kepper in Support of Plaints' Mot. for Sum J. ("Kepper Decl.") Exh. 1. at 1544-1546. In response to this filing, the examiner at the PTO issued an office action, dated October 19, 1993, informing Shenker of the following:

> 16. Applications for Patents cannot be cited on form PTO-1449. However, they may be referenced in the 'Background of the Invention' portion of the disclosure. Therefore, applications 07/558,033 and 07/557,899 were not considered by the examiner.

*Id.* at 1677.

On March 21, 1994, Shenker responded to the office action with the following language:

> On April 17, 1992, Applicants filed an Information Disclosure Statement listing, among other things, U.S. patent applications 07/558,033 and 07/557,899. Per the Office Action, paragraph 16, the Examiner did not consider these patent applications apparently on the grounds that the patent applications were not referenced in the Applicants' "Background of the Invention". However, 37 C.F.R. §§ 1.56, 1.97 and 1.98 that govern filing of information disclosure statements do not require that patent applications cited in such statements be referenced in the Background of the Invention. Therefore, Applicants respectfully request consideration of patent applications 07/558,033 and 07/557,899.

*Id.* at 1732-33. That same day, Shenker also filed another IDS calling the examiner's attention to "U.S. Patent 5,280,594 to Young et al., issued January 18, 1994."[4] *Id.* at 1760. No similar IDS was filed concerning the Young '421 Patent that issued on February 8, 1994.

The examiner responded on June 23, 1994 and stated:

> 11. As to the Applicant's comments concerning the Information Disclosure Statement listing U.S. patent applications 07/558,033 and 07/557,899, application 07/558,033 is now Patent Number 5,280,594 which has been considered by the Examiner per PTO Form 1449 received 3-24-94. A copy of this PTO Form 1449 is included with this office action. As for application 07/557,899, this is not a printed document at this time and should not be listed on a PTO Form 1449 as a U.S. Patent Document. The application

---

[4]Both Shenker's response to the office action and the IDS were dated March 21, 1994 but apparently received March 24, 1994. *See* Kepper Decl. at 1717, 1760.

3

can be listed as "Other Art" along with providing a statement of relevance to the present invention if the Applicant still wishes this application to be considered as 'Prior Art' in the current application.

12. Applicant's arguments filed March 24, 1994 have been fully considered but they are not deemed to be persuasive.

*Id.* at 1777.

Finally, on September 23, 1994, Shenker again responded to the examiner's rejection by stating:

Regarding paragraph 11 of the Office Action, Applicants thank the Examiner for considering the U.S. Patent No. 5,280,594 under Rule 56, and the undersigned attorney apologizes for inadvertently listing the U.S. patent application 07/557,899 as a "U.S. Patent Document" in the PTO 1449 form filed April 17, 1992. However, it is respectfully submitted that the 07/557,899 application should be considered under Rule 56. Indeed, contrary to the suggestion in the Office Action, that application need not be listed as "Other Art" on PTO 1449. See MPEP §609, last paragraph. Further, a statement of relevance mentioned in the Office Action need not be provided because the application 07/557,899 is in the English language. See 37 C.F.R. §1.98(a)(3). The information regarding the application 07/557,899 was timely submitted under 37 C.F.R. § 1.97(b)(1) within three months of the filing date of the present application. Consideration of application 07/557,899 is therefore respectfully requested.

*Id.* at 1822. There is nothing more in the evidence suggesting the examiner considered the Young '899 Application or responded with another objection to its submission.

### B.     Applicable Law

#### 1.     Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."

4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id*. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### 2. Inequitable Conduct

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a). A breach of the duty of candor may lead to a finding of inequitable conduct rendering the entire patent unenforceable. *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,* 488 F.3d 982, 999-1000 (Fed. Cir. 2007). "To hold a patent unenforceable due to inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]. . . ." *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1363 (Fed. Cir. 2007). Both the materiality and intent elements are fact-driven, *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,* 487 F.3d 897, 902 (Fed. Cir. 2007), and it is the accused infringer that bears the burden of proving a threshold level of these elements, *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1365 (Fed. Cir. 2008). Moreover, while "[a] determination of inequitable conduct is committed to a district court's discretion," *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1255 (Fed. Cir. 1997), it is only after the threshold levels of both materiality and intent are established that a court may exercise its discretion in balancing the substance of the elements to make an inequitable

5

conduct determination, *Star Scientific,* 537 F.3d at 1367. A greater showing of materiality allows a lesser showing of intent and vice versa. *McKesson,* 487 F.3d at 913. Because of the severe penalty for finding inequitable conduct, courts are to "strictly enforce the burden of proof and elevated standard of proof" and "courts must be vigilant in not permitting the defense to be applied too lightly." *Star Scientific*, 537 F.3d at 1365-56.

"Although the premises of inequitable conduct require findings based on all the evidence, a procedure that may preclude summary determination, a motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant can not prevail." *Astrazeneca Pharms. LP v. Teva Pharms. U.S., Inc.,* 583 F.3d 766, 770 (Fed. Cir. 2009) (citing *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 547 (Fed. Cir. 1998)). In order to survive summary judgment, the party asserting the inequitable conduct defense must "introduce evidence from which a trier of fact could find materiality and intent by clear and convincing evidence." *Abbott Labs. v. TorPharm, Inc.,* 300 F.3d 1367, 1379 (Fed. Cir. 2002).

**C.    Analysis**

Samsung argues, and AMD denies, that summary judgment is improper since factual determinations as to both questions of materiality and intent require resolution by a fact finder. Although AMD is the moving party for purposes of the summary judgment motion, on the inequitable conduct claim Samsung bears the ultimate burden of proof. Accordingly, to prevail, AMD need only show an absence of evidence in support of Samsung's case. *See Celotex,* 477 U.S. at 325.

**1.    Materiality**

The Federal Circuit has developed and employed several tests for materiality, but has indicated that "there is no reason to be bound by any single standard, as a finding of inequitable conduct requires a balancing of materiality and intent." *Digital Control Inc. v. Charles Mach. Works,* 437 F.3d 1309, 1315 (Fed. Cir. 2006) (internal citation omitted). Nonetheless, the majority of courts start with the "reasonable examiner test" as it is a "broader all-encompassing test." *Id.* at 1316. The test, taken from the pre-1992 version of 37 C.F.R. § 1.56 (Rule 56), states that "information is material when a

6

reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Symantec Corp. v. Computer Assocs. Int'l, Inc.,* 522 F.3d 1279, 1297 (Fed. Cir. 2008). However, as noted in the current version of Rule 56, and recognized by the Federal Circuit, "[i]nformation cumulative of other information already before the Patent Office is not material." *Honeywell Int'l,* 488 F.3d at 1000; 37 C.F.R. § 1.56(b) ("information is material to patentability when it is not cumulative to information already of record or being made of record in the application"); *Star Scientific,* 537 F.3d at 1367 ("information is not material if it is cumulative of other information already *disclosed* to the PTO.") (emphasis added).

AMD argues that the Young '421 Patent was not material to the PTO's consideration of the Cheng '990 Patent application because it is cumulative, that is, it contains no new technical information that was not already disclosed to the PTO in the Young '899 Application. Samsung concedes that no new content was added to the application, but argues this is not the relevant inquiry. Opp. to Mot. Summ. J at 14 n.2. Instead of focusing on the lack of differences in the technical content, Samsung's argument appears to be based on form. That is, Samsung argues the material difference is that the application issued as a patent.

As Samsung argues, the issuance of a patent is a material event because, until a patent issues, it can not be prior art under 35 U.S.C. § 102(e). Opp. to Mot. Summ. J. at 14:21-25.[5] While Samsung correctly states the law, it fails to consider the PTO's provisional rejection practice. The provisional rejection practice, described in Section 706.02(f) of the Manual of Patent Examining Procedure, authorizes examiners to make "provisional" rejections under 35 U.S.C. § 102(e) based on co-pending patent applications. As the Federal Circuit has explained, "examiners may 'provisionally reject claims not patentably distinct from the disclosure in a co-pending application having an earlier U.S. filing date and also having either a common assignee or a common inventor.' The rejection is termed 'provisional' because the application must eventually issue as a patent to be a true § 102(e) reference." *In re Bartfeld,*

---

[5]Samsung additionally relies on an expert in the area of patent prosecution, Gerald J. Mossinghoff, for this proposition. The Court notes AMD's objection to Mr. Mossinghoff's declaration, and does not rely on his testimony to the extent he opines on the ultimate conclusion. However, the fact that Mr. Mossinghoff did not discuss the provisional rejection practice is not objectionable; he is not required to elaborate on every area of PTO procedure.

7

925 F.2d 1450, 1451 (Fed. Cir. 1991) (citation omitted). AMD was the common assignee of the Young '421, Young '594 and Cheng '990 patents and, as such, provisional rejections would have been proper during the Cheng '990 prosecution. AMD's PTO expert, Larry Nixon opines, and Samsung does not dispute, that under the then existing PTO rules Shenker properly disclosed the Young '899 Application as required under 37 C.F.R. § 1.97(b) and thus the examiner should have considered its technical content. Nixon Suppl. Decl. at ¶ 6, Nixon Decl. at ¶ 19.

Notwithstanding the identical technical content, Samsung maintains that the issuance of the patent itself was material. To support its claim, Samsung cites *Brasseler,* where the Federal Circuit explicitly listed the issuance of a patent as a "possibly material event." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.,* 267 F.3d 1370 (Fed. Cir. 2001)). Though *Brasseler* did not deal with this point directly, the court did list the "issuance of a patent, occurring on or about one year before the application is filed" as being a "possibly material event." *Id.* The Young '421 Patent, however, did not issue one year before the application for the Cheng '990 Patent was filed, in fact, it issued almost two years after. (Cheng '667 Application filed Feb. 14, 1992, Young '421 Patent issued Feb. 8, 1994).

As further support for its claim, Samsung cites to *McKesson,* where the prosecuting attorney's failure to inform one patent examiner about another examiner's allowance of claims in a co-pending application was deemed material because the claim language in both patents was substantially similar and could have conceivably served as a basis for a double patenting rejection. 487 F.3d at 925. In fact, the patents were so similar, the district court found only one notable variation. *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,* No. 02-2669, 2006 U.S. Dist. LEXIS 76517, at *66 (E.D. Cal. June 13, 2006), aff'd, *McKesson*, 487 F.3d 897. The purpose for "[a] double patenting rejection [is to] preclude[] one person from obtaining more than one valid patent for either (a) the 'same invention,' or (b) an 'obvious' modification of the same invention." *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.,* 592 F.3d 1340, 1346 (Fed. Cir. 2010) (quoting *In re Longi,* 759 F.2d 887, 892 (Fed. Cir. 1985)). The co-pending Cheng and Young applications did not have substantially identical claim language, and while the technical content of the Young application may have been relevant, double patenting has not been raised as a conceivable issue. Nonetheless, although *McKesson* found the patent claims to be material based on the substantial similarity of co-pending patent claims, the court noted that substantial

similarity is not necessary for a finding of materiality, "so long as the evidence clearly and convincingly proves materiality in one of the accepted ways." 487 F.3d at 920 (referencing *Digital Control,* 437 F.3d at 1316).

As noted, the broader, "all-encompassing" test for materiality, employed here, is whether a reasonable examiner would have considered the information important in determining patentability. Samsung argues that a reasonable examiner would have found the Young '421 Patent issuance material and points specifically to the examiner's June 23, 1994 response to Shenker's IDS and his disclosure of the Young '594 Patent. In paragraph 11 of that response, the examiner explained that because the Young '594 Patent had issued it would be considered, but the Young '899 Application (not yet a published document) would need to be listed elsewhere. Kepper Decl. at 1777. While Samsung points to this as evidence that this particular examiner would have found issuance of the Young '421 Patent to be material, "[t]he standard to be applied in determining whether a reference is 'material' is not whether the particular examiner of the application at issue considered the reference to be important; rather, it is that of a 'reasonable examiner.'" *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,* 326 F.3d 1226, 1237 (Fed. Cir. 2003).

The issue of materiality is highly fact-specific. The facts show that Shenker fulfilled his obligation to disclose the Young '899 Application, and the Young '421 Patent contained no new information not already disclosed in the Young '899 Application. AMD's PTO expert, Larry Nixon, states that in his opinion, a reasonable examiner would not find the issuance of the Young '421 Patent to be material because he or she would have already considered the technical content of the Young '899 Application under the provisional rejection practice and its contents would be cumulative. Nixon Suppl. Decl. at ¶ 11. Under the circumstances of the present case, however, the particular examiner did not consider the Young '899 Application, and only considered the Young '594 Patent once it had issued. For summary judgment purposes, the court is to draw all reasonable inferences in favor of Samsung, and while the focus is not on the particular examiner's actions, they may be considered in determining what a reasonable examiner would find to be material. Thus, since it appears the Cheng '990 Patent examiner may have thought the issuance of the Young '421 Patent was important, it is possible – although not likely – that a reasonable patent examiner may have found the issuance of the Young '421 Patent to be

9

material to the patentability of the Cheng '990 Patent.

### 2. Intent

A finding of materiality alone is insufficient for a successful inequitable conduct claim. The accused infringer must also show deceptive intent. Direct evidence of intent to deceive is rarely available, however, and courts frequently must rely on circumstantial evidence to infer intent. *Critikon,* 120 F.3d at 1256. Additionally, inferences of deceptive intent must "be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific,* 537 F.3d at 1365 (citing *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.,* 528 F.3d 1365, 1376 (Fed. Cir. 2008)). "Evidence of mistake or negligence, even gross negligence, is not sufficient to support inequitable conduct in patent prosecution." *Astrazeneca Pharms.,* 583 F.3d at 776 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc)).

AMD argues that, even if the issuance of the Young '421 Patent was material, Samsung cannot meet the intent element because, during the relevant time, Shenker did not know of its issuance. Rule 56 imposes on a prosecuting attorney a duty to disclose material references only of which the attorney is aware. 37 C.F.R. § 1.56(a). Samsung responds that in light of the issuance of the companion Young '594 Patent, Shenker had a duty to investigate whether the Young '421 Patent had also issued. In *Brasseler*, the Federal Circuit noted that generally there is no duty to investigate "where there is no notice of the existence of material information." 267 F.3d at 1382. By contrast, if the attorney is on notice that "specific, relevant, material information exists," he has a duty to inquire. *Id.* at 1383. An attorney may not cultivate ignorance to avoid this duty, however, and notice may be inferred in certain scenarios: "notice of a possibly material event – a sale, public use, publication, issuance of a patent, occurring on or about one year before the application is filed – arises when information of which the attorney is aware suggests the existence of specific information that may be material." *Id.* Samsung asserts that *Brasseler* establishes that the issuance of a patent is a material event that gives rise to a duty to investigate. For summary judgment purposes, assessing the evidence in the light most favorable to the non-moving party, the Court determines that a jury could find that in light of the issuance of the Young '594 Patent, Shenker had a duty to investigate whether the Young '421 Patent had also issued.

Even if notice of the Young '421 Patent, or a duty to investigate its status, could be inferred, however, there must be evidence that Shenker intended to deceive the PTO. For this, Samsung relies primarily on the fact that Shenker has not offered a credible, good faith explanation for why he did not disclose the Young '421 Patent. An absence of a good faith explanation alone, however, "does not constitute clear and convincing evidence warranting an inference of intent." *Star Scientific,* 537 F.3d at 1368 (quoting *M. EaglesTool Warehouse, Inc. v. Fisher Tooling Co.,* 439 F.3d 1335, 1341 (Fed. Cir. 2006)). In fact, "a patentee need not offer any good faith explanation unless the accused infringer first carried his burden to prove a threshold level of intent to deceive by clear and convincing evidence." *Id.* at 1368 (internal citation omitted). Thus, to show evidence sufficient to meet the threshold level of intent, Samsung needs to offer more than the absence of a good faith explanation on Shenker's part.

In an attempt to persuade the Court that summary judgment is inappropriate, Samsung also attacks Shenker's credibility. Samsung has failed, however, to offer specific facts that call Shenker's credibility into question. "Summary judgment should not be denied simply because the opposing party asserts that the movant's witnesses are not to be believed. However, summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses." *Typeright Keyboard Corp. v. Microsoft Corp.,* 374 F.3d 1151, 1158 (Fed. Cir. 2004). Samsung relies on Shenker's inability to remember certain events as evidence that he is not credible, but this alone is insufficient. Samsung initially sought to postpone this ruling to depose Anne Killingsworth and Elvan Young in order to ascertain facts which it believed would support its credibility assertion. Mr. Young was the named inventor on the Young '594 and '421 patents. Ms. Killingsworth was a former in-house paralegal for AMD who was involved in the prosecution of the Cheng '990, Young '594 and Young '421 patents. Shenker testified that Killingsworth was his primary contact on the prosecution of the Cheng '990 Patent. At this point, Samsung has taken both Mr. Young's and Ms. Killingsworth's depositions; however, neither witness's testimony appears to lend additional support to Samsung's claim that Shenker is not credible.[6]

---

[6] To the extent that Mr. Young's testimony may support an inequitable conduct claim based on AMD's failure to name Young as a co-inventor on the '990 patent, such facts are not relevant to Shenker's credibility and are outside the bounds of the pleadings in their current form.

11

In addition to Ms. Killingsworth's involvement, Samsung relies on evidence that the same law firm prosecuted the three patents at issue and similar prior art references were cited in all three patents. Samsung argues the "only logical inference" is that Shenker or someone involved in the coordinated prosecution was tracking each application and knew when the patents issued and the "only" explanation is they intended to keep the Young '421 Patent from the PTO to avoid a rejection. Opp. to Mot. Summ J. at 19. The Court disagrees that this conclusion is the only explanation for Shenker's failure to disclose the patent, nor is it "the single most reasonable inference" to be drawn from the evidence. *See Star Scientific,* 537 F.3d at 1365. The Court must take into account all evidence of intent, including evidence of good faith on the part of the prosecuting attorney, and failure to do so may constitute reversible error. *See Akron Polymer Container Corp. v. Exxel Container,* 148 F.3d 1380, 1384 (Fed. Cir. 1998) (reversing the district court's finding of deceptive intent as clearly erroneous where the court failed to consider that disclosure of a co-pending application inferred good faith; also noting the applicant "hardly could be seeking to deceive the PTO as to the existence of copending applications when it actually disclosed the fact of copendency to the [PTO] examiner."). This is not a scenario where an applicant made a material misrepresentation or even failed to disclose a relevant reference altogether. The undisputed evidence shows Shenker repeatedly requested the PTO examiner to consider the Young '899 Application and its technical specifications in determining patentabilty of the Cheng '990 Patent. While the Court declines to speculate why Shenker did not simply follow the examiner's recommendation and list the reference elsewhere, the rules of the PTO at the time and the expert testimony of Larry Nixon indicate that his disclosure of the application was proper. At most, Shenker's conduct amounts to negligence in failing to investigate and failing to update the PTO.

After considering all the circumstantial evidence before the Court and drawing all inferences in favor of Samsung, the Court concludes that the factual inferences do not give rise to a conspiracy theory of intent to deceive the PTO. Samsung has not raised a triable issue as to whether Shenker's failure to inform the PTO examiner of the issuance of the Young '421 Patent was done with the specific intent to deceive the PTO.

In sum, evidence of materiality is equivocal, evidence of knowledge is lacking, evidence of a

duty to investigate is circumstantial, specific evidence of intent to deceive the PTO is lacking and inferential proof of intent to deceive the PTO requires choosing the least reasonable, rather than the most reasonable, inference to be drawn from the evidence. Under these circumstances, Samsung cannot meet the threshold levels of materiality and intent required for proof of inequitable conduct, and the Court need not engage in the balancing of elements suggested by *Star Scientific*, 537 F.3d at 1367. Accordingly, AMD's motion for summary judgment of no inequitable conduct as to the Cheng '990 Patent is GRANTED.

## II. Motion for Judgment on the Pleadings

### A. Factual Background

On May 18, 2009 the Court granted Samsung leave to amend its answer to include, among other things, an affirmative defense of unenforceability of the Iacoponi '592 Patent due to inequitable conduct. In the defense, Samsung alleges that inventor John Iacoponi withheld a number of material references from the PTO, including a paper authored by Mr. Iacoponi himself. Over AMD's objections, the Court accepted the amended answer and counterclaim. Subsequently, the Federal Circuit issued a decision setting forth the particularity requirements for pleading inequitable conduct in a patent case. AMD brings the present Motion for Judgment on the Pleadings of No Inequitable Conduct Relating to U.S. Patent No. 5,545,592 on the ground that Samsung's amended answer and counterclaim does not conform to the new pleading standard. Samsung asserts that its pleadings are sufficient under governing case law and requests, in the alternative, that it be given leave to amend.

### B. Applicable Law

#### 1. Judgment on the Pleadings

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12©). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard*

1 *Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989). "For purposes of the motion, the allegations of the
2 non-moving party must be accepted as true, while the allegations of the moving party which have been
3 denied are assumed to be false." *Id.*

4 Although Rule 12©) neither specifically authorizes nor prohibits motions for judgment on the
5 pleadings "directed to less than the entire complaint or answer . . . [i]t is the practice of many judges to
6 permit 'partial' judgment on the pleadings (e.g., on the first claim for relief, or the third affirmative
7 defense)." *See William W. Schwarzer, et al., Federal Civil Procedure Before Trial,* 9:340 (2001).
8 "[C]ourts have discretion to grant a Rule 12©) motion with leave to amend." *Id.* 9:341.

9 When considering a motion on the pleadings, courts may consider exhibits submitted or
10 referenced in the complaint and matters that may be judicially noticed pursuant to Federal Rule of
11 Evidence 201. *See, e.g., Burnett v. Twentieth Century Fox Film Corp.,* 491 F. Supp. 2d 962, 966 (C.D.
12 Cal. 2007). Indeed, "documents specifically referred to in a complaint, though not physically attached
13 to the pleading, may be considered where authenticity is unquestioned." *Id.* (citing *Daly v. Viacom, Inc.,*
14 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002) (considering television program referenced in, but not
15 attached to, complaint).

16

17 **2.    Leave to Amend**

18 Federal Rule of Civil Procedure 15 governs amendment of the pleadings. It states that if a
19 responsive pleading has already been filed, the party seeking amendment "may amend its pleading only
20 with the opposing party's written consent or the court's leave. The court should freely give leave when
21 justice so requires." Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should
22 be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371
23 U.S. 178, 181-82 (1962). Accordingly, the Court must be generous in granting leave to amend. *See*
24 *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted
25 with "extreme liberality"); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

26 However, there are several accepted reasons to deny leave to amend, including the presence of
27 bad faith on the part of the pleader, undue delay, prejudice to the opponent, futility of amendment, and
28

**United States District Court**
For the Northern District of California

that the pleader has previously amended. *See Ascon Properties*, 866 F.2d at 1160; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988). Courts do not ordinarily consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, but leave may be denied if the proposed amendment is futile or would be subject to dismissal. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

### C. Analysis

For issues pertaining uniquely to patent law, including the pleading standards for alleging inequitable conduct, Federal Circuit precedent is binding on this Court. *Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). In *Exergen*, the Federal Circuit recently articulated the heightened standard for pleading inequitable conduct:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under [Federal] Rule [of Civil Procedure] 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328-29.

In light of this recent decision, AMD brings a motion for judgment on the pleadings asserting that Samsung has failed to plead inequitable conduct with sufficient particularity. Alternatively, AMD urges the Court to reconsider its previous order granting Samsung leave to amend its answer based on a change in the law. By adopting the Seventh Circuit "who, what, when, where and how" standard from *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990), *Exergen* heightened the pleading standard for inequitable conduct claims. *Id.* at 1327. The decision had no effect, however, on the Ninth Circuit standard for granting leave to amend. Indeed, as noted in *Exergen*, "a motion to amend a pleading under Rule 15(a) is a procedural matter governed by the law of the regional circuit." *Id.* at 1318. Thus, the change in law, contrary to AMD's contention, does not require dismissal of Samsung's counterclaim; rather, in the words of the Ninth Circuit, "[h]aving initiated the present lawsuit without the benefit of

the Court's latest pronouncements on pleadings, [defendants] deserve a chance to supplement their complaint with factual content in the manner that [*Exergen*] require[s]." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 972 (9th Cir. 2009).

Samsung apparently concedes that its pleadings must comply with the law set forth in *Exergen*, but argues its pleadings already meet this standard. Opp. Mot. J on Plead. at 1: 7-11. Samsung argues the pleadings in *Exergen* were found to be deficient based on a *number* of collective deficiencies, and therefore one or two deficiencies should not be fatal. Opp. Mot. J. on Plead. at 4:4-7. While the court in *Exergen* did base its finding on several deficiencies, it explicitly stated that pleadings "must identify the specific who, what, when, where, *and* how of the material misrepresentation or omission." 575 F.3d at 1328 (emphasis added). Thus, Samsung's pleadings must allege who engaged in inequitable conduct, to what claims the omitted references were relevant, where in the references the material information is found, why the information in these references "is material and not cumulative," "and 'how' an examiner would have used this information in assessing the patentability of the claims."[7] *Id.* at 1329-1330. Samsung's First Amended Answer and Counterclaims ("FAAC") does not state what claims the omitted references are relevant to, why the references are material and not cumulative of other references before the examiner or how the examiner would have used the information to assess patentability of the claims. Thus, the Court finds that the pleadings do not meet the requirement for particularized pleading of facts. Having filed these claims without the benefit of *Exergen*'s teachings, however, equity and precedent require Samsung be granted leave to amend its complaint to include more specific facts. *Moss,* 572 F.3d at 972.

Attached to its opposition, Samsung has included a Proposed Second Amended Answer and Counterclaim ("PSAAC") in which it attempts to amend the deficiencies of the FAAC. AMD opposes the Court's adoption of the PSAAC, arguing that the proposed pleading also falls short of *Exergen's* pleading standard. It is not disputed that Samsung's PSAAC satisfies the who and what elements. Samsung clearly alleges inequitable conduct by Mr. Iacoponi and specifically states the references were

---

[7]Though the *Exergen* court states it requires the who, what, when, where and how, they additionally require "why" the withheld information is material and not cumulative." *Id.* at 1329.

relevant to patentability of claims 1 and 4. Further, it appears Samsung has adequately stated the "where" element. Samsung cites to page numbers, and occasionally subsections, of where the allegedly material references are found. Moreover, in oral argument, AMD admitted the PSAAC answers the "where." Hr'g Tr. 11:1, Feb. 24, 2010.

AMD contends, however, that Samsung's PSAAC does not sufficiently plead the "why" and "how." In *Exergen*, the court found the defendant's general pleading that information was "material" and "not cumulative to the information already of record" to be deficient as it did not specify "why" it was not cumulative and "how" the examiner would have used the information. *Id.* at 1329-1330. Applying this standard to Samsung's PSAAC, the Court finds that Samsung must explain more than simply that the references are "highly material and non-cumulative to the art submitted to or by the USPTO." Appendix to PSAAC, at ¶ 9. While paragraph 9 goes beyond this general statement and continues to explain the technical detail of what the references generally disclose, it only discusses these teachings as being non-cumulative over the Nulman, Yamazaki and Ellwanger prior art, and it fails to allege that *none* of the prior art discloses these teachings. Paragraph 8 discusses the particular teachings of the omitted references, properly cites which claims they apply to, and further continues by alleging that "Iacoponi represented to the USPTO that none of the admitted prior art disclosed" these teachings. *Id.* at ¶ 8. This paragraph, while coming closer to stating why the references are non-cumulative of any prior art, stops short of making that allegation and explaining how the examiner would have used the information to assess patentability of claims 1 and 4. The Court agrees the PSAAC also falls short of the pleading requirement. The Court must follow Ninth Circuit precedent, however, and finds that Samsung should have the opportunity to amend its complaint to include particular facts and allegations to cure this deficiency.

AMD argues *Exergen* also heightened the pleading standard for intent and claims Samsung's PSAAC is insufficient on the grounds that it makes no further showing of intent over what was alleged in the FAAC. The Court disagrees. In *Exergen,* the Federal Circuit simply reiterated its prior standard of averring knowledge and intent generally. *Exergen,* 575 F.3d at 1327 ("Although 'knowledge' and 'intent' may be averred generally, *our precedent*, like that of several regional circuits, requires that the

1 pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted 2 with the requisite state of mind.") (emphasis added). Because the intent standard has not changed, 3 Samsung's pleadings remain sufficient in this respect.

4 Finally, AMD contends that permitting Samsung to file an amended answer and counterclaim 5 would prejudice AMD as it "would not have the opportunity to explore the factual bases for those 6 allegations." Reply at 5:22-28 (Doc. No. 294). The Court finds this argument unpersuasive. The Court 7 must presume that to this point AMD has been attempting to defend against Samsung's previously filed 8 and allowed claim of inequitable conduct. Requiring Samsung to amend its counterclaim to include 9 more particularized facts will only narrow the scope of the issues presented and will allow AMD to 10 focus its defense on the specific areas in contention. Because Ninth Circuit precedent so compels, the 11 Court grants Samsung leave to amend its counterclaim by **March 26, 2010**. AMD properly points out, 12 however, that Samsung's PSAAC was filed several months after *Exergen* came down. Thus, it may well 13 be that Samsung cannot amend its counterclaim to conform with *Exergen's* requirements. The Court's 14 order is not intended to encourage Samsung to amend, but merely to give it leave to do so in the event 15 it believes it can meet the new standard.

24 ///

18

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS AMD's Motion for Summary Judgment and GRANTS AMD's Motion for Judgment on the Pleadings. (Docket Nos. 274, 273). Samsung is GRANTED leave to amend its answer and counterclaim to include additional facts necessary to meet the *Exergen* standard of pleading for its inequitable conduct claim relating to the Iacaponi '592 Patent. Samsung's second amended complaint and counterclaim must be filed no later than **March 26, 2010.**

**IT IS SO ORDERED.**

Dated: March 15, 2010

SUSAN ILLSTON
United States District Judge