ROBERT T. HASLAM (Bar No. 71134)
RHaslam@cov.com
MICHAEL K. PLIMACK (Bar No. 133869)
MPlimack@cov.com
CHRISTINE SAUNDERS HASKETT (Bar No. 188053)
CHaskett@cov.com
SAMUEL F. ERNST (Bar No. 223963)
SErnst@cov.com
COVINGTON & BURLING LLP
1 Front Street, 35th Floor
San Francisco, California 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

ALAN H. BLANKENHEIMER (Bar No. 218713)
ABlankenheimer@cov.com
LAURA E. MUSCHAMP (Bar No. 228717)
LMuschamp@cov.com
JO DALE CAROTHERS (Bar No. 228703)
JCarothers@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, 6th Floor
San Diego, California 92122
Telephone: (858) 678-1800
Facsimile: (850) 678-1600
Attorneys for Defendants and Counterclaimants
SAMSUNG ELECTRONICS CO., LTD., et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., et al., <br><br> Plaintiffs and Counterdefendants, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., et al., <br><br> Defendants and Counterclaimants. | Case No. 3:08-CV-0986-SI <br> **DEFENDANTS AND COUNTERCLAIMANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> DATE: May 7, 2010 <br> TIME:  9 a.m. <br> COURTROOM:  10, 19th Floor <br> JUDGE:  The Honorable Susan Illston |

**PUBLIC/REDACTED VERSION**

### TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................ 4

III. ARGUMENT ...................................................................................................... 7

    A. The Accused Products Do Not Meet the "Control Panel" Limitation
    of All Asserted Claims. .................................................................................. 7

        1. Because the accused products are not "computers," they do
        not meet the "control panel" limitation literally. ............................... 7

        2. The accused products do not meet the "control panel"
        limitation under the doctrine of equivalents. ..................................... 11

            a. The specific exclusion principle bars AMD from arguing
            equivalent infringement as a matter of law........................... 11

            b. No reasonable finder of fact would find that the accused
            products are equivalent to computers. .................................... 13

    B. The Accused Products Do Not Meet the "Application . . . In Focus"
    Limitation of All Asserted Claims. ............................................................ 15

        1. The accused telephones, cameras, and camcorders do not
        meet the "application . . . in focus" limitation. ............................... 15

        2. Many of the accused mobile phones do not display a battery
        meter during camera preview mode. ................................................ 21

        3. The accused televisions do not meet the "application . . . in
        focus" limitation. ........................................................................... 22

    C. The Accused Telephones and Cameras Do Not Meet the "Live
    Video" Limitation of All Asserted Claims. ............................................... 24

IV. CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

CASES

Page(s)

*Affymetrix, Inc. v. Multilyte Ltd.,*
   No. C 03-03779 WHA, 2005 WL 1513147 (N.D.Cal. June 23, 2005) ............................ 11, 12

*Athletic Alternatives Inv. v. Prince Mfg., Inc.,*
   73 F.3d 1573 (Fed. Cir. 1996) ......................................................................... 12, 13

*Cardinal Chem. Co. v. Morton Int'l, Inc.,*
   508 U.S. 83 (1983) ......................................................................................... 15

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG,*
   224 F.3d 1308 (Fed. Cir. 2000) ........................................................................ 18

*CVI/Beta Ventures, Inc. v. Tura LP,*
   112 F.3d 1146 (Fed. Cir. 1997) .......................................................................... 9

*Datascope Corp. v. SMEC, Inc.*
   776 F.2d 320 (Fed. Cir. 1985) ....................................................................... 13, 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki,*
   344 F.3d 1359 (Fed. Cir. 2003) ........................................................................ 21

*Kinzenbaw v. Deere & Co.,*
   741 F.2d 383 (Fed. Cir. 1984) ......................................................................... 14

*Novartis Pharmaceuticals Corp. v. Abbott Labs.,*
   375 F.3d 1328 (Fed. Cir. 2004) ........................................................................ 12

*Omega Eng'g, Inc. v. Raytek Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003) ........................................................................ 24

*Rambus Inc. v. Hynix Semiconductor Inc.,*
   No. C-05-00334 RMW, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008) ....................... 20

*Senmed, Inc. v. Richard-Allan Med. Indus., Inc.,*
   888 F.2d 815 (Fed. Cir. 1989) ......................................................................... 15

STATUTES

35 U.S.C. § 103(a) ........................................................................................... 23

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
6,784,879
Case No. 3:08-CV-0986-SI

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 7, 2010 at 9am, or as soon thereafter as the matter may be heard before the Honorable Judge Illston, United States Court House, San Francisco, California, Defendants and Counterclaimants SAMSUNG ELECTRONICS CO., LTD., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, LLC, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, and SAMSUNG DIGITAL IMAGING CO., LTD., (collectively, "Samsung") will move and hereby do move for an order granting summary judgment under Rule 56 of the Federal Rules of Civil Procedure that some or all of the products Plaintiffs and Counterdefendants ADVANCED MICRO DEVICES, INC. and ATI TECHNOLOGIES, INC. (collectively, "AMD") accuse of infringing U.S. Patent No. 6,784,879 ("the '879 patent") do not infringe any of the asserted claims of that patent as a matter of law.

This motion is made on the following three separate and independent grounds: First, none of the accused products satisfy the "control panel" limitation of all asserted claims. Second, none of the accused products satisfy the "application . . . in focus" limitation of all asserted claims. Third, none of the accused telephones or cameras satisfy the "live video" limitation of all asserted claims.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying declarations of Seunhun Yoo, Jack Grimes, and Christine Saunders Haskett and evidence attached thereto; the pleadings and papers on file in this case; and any argument or evidence the Court may receive at the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As the Court recently noted, the '879 patent claims a method for allowing a computer user who has multiple applications open on her desktop to adjust the attributes of a video playing in the background (e.g., change the volumne, pause, fast forward, or rewind) without interrupting her

1    work in another application, for example a word-processing file. Dkt. 403 at 1-2. In the words of

2    the patent, in the prior art, a computer user who wanted to adjust such attributes had to bring the

3    live video into focus (a defined claim term) and thereby cause the application that the user was

4    working on to go out of focus, i.e., into the background. This phenomenon was uniquely associated

5    with windows based computers of that time, and the invention was therefore uniquely directed to

6    computer applications and displays.

7        Numerous claim terms define the invention as being limited to computers and computer

8    displays. The Court has already construed "control panel" to mean "[a]n area of the computer

9    display containing control functions," rejecting AMD's attempt to include TV's, cellphones,

10   cameras and camcorders as the relevant displays. Likewise, the parties have agreed that the term

11   "in focus" means "actively being displayed and/or worked upon." As a person of skill recognizes,

12   one *actively* displays or works upon applications (another term of art referring to computers), such

13   as word-processing, on a computer; one watches TV or takes pictures with a camera, but does not

14   work upon the TV show or picture.

15       Notwithstanding the foregoing, AMD does not accuse any Samsung computers of infringing

16   the '879 patent. Rather, AMD accuses only televisions, cellphones, cameras and camcorders of

17   infringing. As a result, Samsung is entitled to summary judgment, or in the alternative summary

18   adjudication, that it does not infringe the asserted claims either literally or under the doctrine of

19   equivalents. There are three separate limitations that support such a finding.

20       First, the Court ruled in its Claim Construction Order that the "control panel" limitation of

21   all asserted claims means, "[a]n area of the computer display containing control functions." Dkt

22   No. 255 at 33. This ruling is dispositive of non-infringement in this case. Try as it might, AMD

23   cannot convert Samsung telephones, cameras, camcorders, or televisions into computer displays.

24   AMD contends that the accused Samsung devices are, in fact, "computers," but the definition of

25   computer found in the '879 patent belies this interpretation.

26       Second, AMD has pointed to nothing in the accused products that meets the "application . . .

27   in focus" limitation of all asserted claims.   The parties' agreed construction for "in focus" means

28

2

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
6,784,879
Case No. 3:08-CV-0986-SI

an application that is"actively being displayed and/or being worked upon." The proper construction of "application," addressed herein, supports finding that the "application . . .in focus" limitation refers to a computer program that the user can interact and work with. But AMD does not point to any application or computer program as the "application . . . in focus" in the accused products.

With respect to cameras, camcorders, and cellphones, AMD points to battery meter icons and to time counters in Samsung products as meeting the "application . . .in focus" limitation. But the accused battery meters and time counters merely display information, and are not actively displayed applications that can receive user input and be worked upon. Indeed, during prosecution, the inventor himself characterized battery meters as merely general icons that provide alerts to the user. Accordingly, there can be no finding that Samsung's cellphones,cameras, and camcorders meet this claim limitation. Even if AMD were correct that battery meters can meet the "application . . . in focus limitation," many of the accused mobile phones do not meet this limitation on the additional basis that they do not display a battery meter during camera preview mode.

Likewise, the picture-in-picture windows in Samsung televisions that AMD accuses of infringing this limitation do not meet the "application . . . in focus" limitation for two reasons. First, the two windows display live video, not an application as that term is used in the patent. Second, even if the specification and claim language did not dispositively establish that a picture-in-picture environment displays two live videos, and not an application and live video, the patentee unequivocally disclaimed a foreground video window as his claimed "application" during prosecution of the '879 patent in order to overcome the prior art.

Third, AMD points to nothing in the accused telephones and cameras that can meet the "live video" limitation of all asserted claims. The patent specification explains that "live video" refers to images such as are received from a television broadcast, a video cassette player, cable television, or DVD players. The inventor of the '879 patent confirmed this understanding of "live video" at his deposition. But AMD has pointed to nothing more than the images a user frames in his camera prior to snapping a photograph as meeting the "live video" limitation. Because no reasonable trier

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

1    of fact could conclude that these images constitute "live video," Samsung is entitled to summary

2    judgment on this alternative basis.[1]

3    **II.     BACKGROUND**

4           The '879 patent claims "[a] method and apparatus for controlling background video on a

5    computer display." '879 patent, Abstract. Specifically, the patent addresses an alleged problem in

6    the prior art occurring when "the live video is acting as the desktop pattern" of the computer screen,

7    something the specification and claims also refer to as "the background mode" or "live video that is

8    being presented as a background on a display." *Id. at* 1:34-35, claim 11. When the live video is in

9    background mode, a user may wish to work on another application, such as a word processing

10   document—something the specification and claims refer to as "applications that were in focus (i.e.,

11   actively being displayed and/or being worked upon)." *Id.* at 1:41-43.

12          The problem the '879 patent identifies in the prior art is that when the user wishes to adjust

13   an attribute of the live video—for example, change the channel or adjust the volume— "the

14   background video must be brought forward, or brought into focus." *Id.* at 1:34-36. "Once the live

15   video has been brought forward, such attributes [as changing the channel, volume adjust, or muting]

16   may be changed through any graphical user interface." *Id.* at 1:39-41. The problem is that bringing

17   the live video into focus interrupts the user's work on the "applications that were in focus." This is

18   because "[w]hen an attribute of the live video is to be changed, other applications that were in focus

19   (i.e., actively being displayed and/or being worked upon) must go into a background mode (i.e.,

20   taken out of focus)." *Id.* at 1:41-44. "As such," explains the specification, "the adjusting of

21   attributes of the live video consume the activity of the computer until such attributes have been

22   changed and the live video is returned to the background mode. *Id.* at 1:45-48. The "invention" is

23   then described as follows:

24          This may be accomplished by providing a video control icon, which is visible on the
            display. The video control icon relates to the live video being displayed as the

25

─────────────────────────────

26   [1] In its claim construction order, the Court construed the "control panel" limitation.
     Samsung respectfully requests that the Court construe the "application . . . in focus" and "live
27   video" limitations in ruling on this summary judgment motion, as set forth in this motion.

28
     SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
     6,784,879
     Case No. 3:08-CV-0986-SI

background. Once selection of the video control icon has been detected, the computer displays a control panel for the live video *while the live video remains in the background*. . . . The user then makes an adjustment via the control panel to the live video and once such an adjustment is made, the control panel is removed from the screen. All this is done while the live video remains in the background, thus other applications that were in focus remain in focus.

*Id.* at 2:4-18 (emphasis added).

Figure 1 of the patent "illustrates a graphical illustration of a computer screen **10** which has a live video background **12**, a tile bar **14**, a video control icon **16**, and a plurality of icons **18-26**." *Id.* at 2:20-23. In other words, the figure depicts the claimed "live video" playing in the "background," the claimed "control panel," and the claimed "video control icon.":



*Id.*, excerpt of Fig. 1.

All of the asserted claims of the '879 patent[2] therefore contain the following limitations:

- "**live video** that is being presented as the background on the display";

- "a video control icon" that "relates to **live video** that is being presented as background on the display";

- "a **control panel**" to control attributes of the **live video; and**

- "an **application** that was **in focus** [that] remains **in focus** when the video control icon has been selected."

---

[2] AMD has asserted claims 11 through 24. *See* Declaration of Christine Suanders Haskett in Support of Defendants and Counterclaimants' Motion for Summary Judgment ("Haskett Decl."), Ex. 1 at Exhibit A (AMD's Final Infringement Contentions).

'879 patent, claims 11-24 (emphases indicate claim limitations at issue in this motion).

On September 17, 2009, the Court issued its Claim Construction Order in this matter and held that the claim term "control panel," which is a limitation of all asserted claims, refers to "[a]n area of the computer display containing control functions." Dkt No. 255 at 33.

---

[3] As is widely known, "Windows" refers to Microsoft Windows, an operating system sold by Microsoft Corporation that runs on MS-DOS-based computers.

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

In short, the inventions of the '879 patent were developed and implemented to improve the experience of a user watching live video on his or her computer desktop, and changing some aspect of the live video while working on an application and maintaining it in focus during the changes to the live video. The problem addressed by the '879 patent is moreover a problem unique to computers: the inconvenience of having to interrupt work on an application that was "in focus" in order to adjust attributes of live video playing as the desktop pattern of a personal computer. '879 patent at 1:12-53.

## III.    ARGUMENT

### A.    The Accused Products Do Not Meet the "Control Panel" Limitation of All Asserted Claims.

#### 1.    Because the accused products are not "computers," they do not meet the "control panel" limitation literally.

As Samsung advised the Court in its claim construction briefing, "[t]he central dispute between the parties is whether the claims of the '879 patent are limited to methods and devices for use with a computer system, as Samsung contends, or encompass methods and devices that can be used on anything imaginable, as AMD contends." Dkt. No. 162 at 1. That dispute was resolved by the Court in Samsung's favor in its Claim Construction Order. The Court held that "[t]he specification of the '879 patent unequivocally limits this invention to computers." Dkt No. 255 at 30. The Court rejected AMD's argument "that [the] invention taught in the '879 patent also encompasses user interfaces in devices such as digital cameras, camcorders, and cell phones," reasoning that "[n]one of the intrinsic evidence cited by AMD supports this conclusion." *Id.* at 32. The Court held that "[c]ontrary to AMD's contention, the reference to channel controls in some claims does not establish that the control panel can be displayed on a television *without a computer*." *Id.* (emphasis added). And the Court concluded by construing the "control panel" limitation of all asserted claims to mean "[a]n area of the *computer display* containing control functions." *Id.* at 33 (emphasis added).

Nonetheless, AMD continues to assert that Samsung telephones, cameras, camcorders, and televisions infringe the '879 patent. AMD makes this argument in its Final Infringement Contentions by stating, in effect, that any device that contains a processor, memory, and

7

programming instructions is a computer. For example, with respect to the Samsung LNT4065F television, AMD contends the following: "The LNT4065F includes a computer. The LNT4065F contains a programmable processor, program memory, data memory, and a display." Haskett Decl., Ex. 1 at Ex. CC, page 25 of 169.

AMD's argument that Samsung telephones, cameras, camcorders, and televisions constitute "computers" as that term is understood in the context of the '879 patent simply because they contain processors, memory, and program instructions, must be rejected as a matter of law.

First, one of ordinary skill in the art would understand the term "computer" to have a much more specific meaning in the context of the '879 patent. The patent specification defines the term "computer" as follows:

> Computers are known to include a central processing unit, cache memory, hard drive memory, floppy disk drive memory, CD ROM drive, audio processing circuitry, and video processing circuitry. The computer further includes a computer monitor which provides visual representations of the data being manipulated. Such visual representations are originated from, for example, a word processing algorithm, a drawing algorithm, and, more recently, the displaying of video images.

'879 patent at 1:11-17. To one of ordinary skill in the art, this description of a computer refers to a specific type of end-user product that was available on the market at the time of the '879 patent: a general purpose computer that can be used for a variety of applications, most commonly word processing, spreadsheets, databases, web browsers, e-mail, games, and other software programs. Declaration of Jack Grimes in Support of Samsung's Motion for Summary Judgment ("Grimes Decl.") ¶¶ 10-11. This is because these are the types of devices that have such features as "floppy disk drive memory," "CD ROM drive[s]," and "word processing algorithm[s]." Grimes Decl. ¶ 11. The specification goes on to distinguish "[c]omputers" from other types of end-user products, including televisions, by stating that video images on a computer "may be *received from* a live television broadcast, video cassette player, satellite television, cable television, or DVD players." '879 patent at 1:20-22 (emphasis added).

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

Second, the problem in the prior art that the '879 patent addresses is a problem unique to general purpose computers operating in windows-based environments.[4] The patent specification explains that when a user watches live video on a "computer monitor" with "the live video acting as the desktop pattern," it is inconvenient to interrupt work on an "application in focus" in order to adjust attributes of the desktop video. *Id.* at 1:33-50. To one of ordinary skill in the art, this describes a problem inherent in general purpose computers operating in windows-based environments — the inability to adjust attributes of a window without bringing it into focus. Grimes Decl. ¶ 13. This problem occurs because in a windows-based environment, there is typically an "active window," which is "the window currently in use, the one in which the user is typing, drawing, or making menu choices." Haskett Decl., Ex. 5 at 9; Grimes Decl. ¶ 13. The problem is that "[t]here can only be one active window at a time." Haskett Decl., Ex. 5 at 9; Grimes Decl. ¶ 13. This is why, according to the '879 specification, "[w]hen an attribute of the live video is to be changed, other applications that were in focus (i.e., actively being displayed and/or being worked upon) must go into background mode (i.e. taken out of focus)." '879 patent at 1:41-44. This problem is entirely foreign to the televisions, cameras, camcorders, and telephones AMD accuses, however, because a user simply does not "work[ ] upon" the user interface features AMD has identified as the alleged "application . . . in focus" in these products—battery meters, picture-in-picture windows, and time counters. Grimes Decl. ¶ 14. Moreover, the problem is entirely foreign to what the inventor believed he had invented. Haskett Decl., Ex. 2 at 29:12-30:7.

Based on the consistent description of the invention in the specification, the description of the problem to be solved in the prior art, and the circumstances surrounding the conception of the '879 patent, the term "computer" as used in the patent refers to a general purpose computer operating in a windows-based environment, and not to any device in the world that contains a processor, memory, and programming instructions, as AMD contends.

---

[4] "In construing claims, the problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997).

There can be no material dispute of fact that the accused televisions, telephones, camcorders, and cameras do not meet this definition of "computer." The accused products are not general purpose computers operating in windows-based environments. Grimes Decl. ¶ 12. For example, the accused mobile phones do not have the ability to run multiple applications simultaneously, as a computer does operating in a windows-based environment. Grimes Decl. ¶ 12. Nor do the accused products have "floppy disk drive memory" or the other attributes of the type of computer described in the '879 patent. '879 patent at 1:11-17; Grimes Decl. ¶ 12.

Rather than general purpose computers operating in a windows-based environment, the accused products are end-user products having specific, limited functions. *Id.* ¶ 12. For example, the accused SC-HMX10 camcorder "is capable of recording and playing back both High Definition (HD: 1280x720p) and Standard Definition (SD: 720x480p) image quality." Declaration of Seunhun Yoo ("Yoo Decl."), Ex. 1 at ii. The camcorder has a limited set of features that are preprogrammed for the user. *See id.*, Ex. 1 at iii. The same is true for each of the other products AMD purports to accused of infringing the '879 patent. *See id.*, Exs. 2 at SAMAMD0220909, 3 at SAMAMD0222886, 4 at SAMAMD0213715, 5 at SAMAMD0560438, 6 at SAMAMD0171854, 7 at SAMAMD0554957, 8 at SAMAMD0555766, 9 at SAMAMD0165801-804, 10 at SAMAMD0245719.

Accordingly, the Court was correct to reject AMD's argument that the "invention taught in the '879 patent also encompasses user interfaces in devices such as digital cameras, camcorders, and cell phones." Dkt. No. 255 at 32. Because there can be no dispute of material fact that Samsung digital cameras, camcorders, and cell phones are not "computers" as that term is properly understood in the context of the '879 patent, these products do not literally infringe the "control panel" limitation as a matter of law.

The Court was also correct in concluding that the "control panel" limitation is not satisfied by televisions "without a computer." *Id.*[5] AMD has not accused Samsung televisions of infringing

---

[5] As the Court recognized, claim 5 of the patent "describes embodiments in which other devices (such as televisions) may be connected to a computer and used to display the video." Dkt.

*(Footnote continued)*

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

its patent when used in conjunction with a computer. Haskett Decl., Ex. 1 at Exs. CC-FF. Nor has AMD contended that Samsung televisions somehow indirectly infringe the '879 patent under the theory that it may be possible to use them in conjunction with a computer. *Id.* Because the accused Samsung televisions are not "computers" as that term is properly understood in the context of the '879 patent, they do not literally infringe the "control panel" limitation as a matter of law.

      **2.**     **The accused products do not meet the "control panel" limitation under the doctrine of equivalents.**

      **a.**     **The specific exclusion principle bars AMD from arguing equivalent infringement as a matter of law.**

      AMD is barred as a matter of law from arguing that the accused products meet the "control panel" limitation by equivalents by operation of the specific exclusion principle. The Federal Circuit has held that "the doctrine of equivalents is not a license to ignore or 'erase ... structural and functional limitations of the claim,' limitations 'on which the public is entitled to rely in avoiding infringement.'" *Id.*, 73 F.3d at 1582. "As a corollary to the 'all limitations' rule . . . , we have held that 'the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *Athletic Alternatives*, 73 F.3d at 1582. "A particular structure may be specifically excluded from the scope of the patented invention by the claims either as they are written or as they are construed by the Court." *Affymetrix, Inc. v. Multilyte Ltd.*, No. C 03-03779 WHA , 2005 WL 1513147, *3 (N.D.Cal. June 23, 2005) (citing *Athletic Alternatives*, 73 F.3d at 1382).

      In *Athletic Alternatives*, the court construed the term "varies between" in a claim to a tennis racket as requiring at least three different splay-creating offset distances between the strings of the racket. *Id.* at 1581. The patent-holder argued on claim construction that the phrase encompassed rackets with only two different splay-creating offset distances, but the court specifically rejected rackets with two offset distances from falling within the scope of the claims. *Id.* at 1578. Despite losing the battle at claim construction, the patent-holder attempted to argue that the accused rackets

---

No. 255 at 32. This is the only use of a television set contemplated by the patent and, as the Court ruled, such a use must be in connection with a computer. *Id.*

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

containing two offset distances met the "varies between" limitation under the doctrine of equivalents. *Id.* at 1582-83. The Federal Circuit held that the patent-holder was barred by the specific exclusion principle from arguing equivalent infringement. The Court held that "the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *Id.* at 1582 (internal quotation marks and citation omitted). Because at claim construction, "the two-distance splayed string system was specifically excluded from the scope of the claims," the patent-holder was barred from attempting to recapture that structure via equivalent infringement. *Id.*; *see also Novartis Pharmaceuticals Corp. v. Abbott Labs.*, 375 F.3d 1328, 1339 (Fed. Cir. 2004) (holding that because the term "lipophilic component" was determined at claim construction as not including a surfactant, the specific exclusion principle barred equivalent infringement by a chemical composition composed of surfactants).

Here as in *Athletic Alternatives*, the Court has specifically excluded the accused products from meeting the "control panel" limitation. The Court held in its Claim Construction Order that "[t]he specification of the '879 patent unequivocally limits this invention to computers." Dkt. No. 255 at 30. The Court noted that "AMD argues that the invention taught in the '879 patent also encompasses user interfaces in devices such as digital cameras, camcorders, and cell phones." *Id.* at 32. The Court then specifically excluded these products from the scope of the '879 patent claims, holding that "[n]one of the intrinsic evidence cited by AMD supports this conclusion." *Id.*

Similarly, the Court specifically excluded televisions from the scope of the '879 patent claims if they were not merely displaying the output of a computer. The Court held that "[c]ontrary to AMD's contention, the reference to channel controls in some claims does not establish that the control panel can be displayed on a television without a computer." *Id.* As noted above, AMD has not accused Samsung televisions of contributing to the infringement of its patent if combined with a computer and has not otherwise identified an infringement theory whereby Samsung televisions are displaying the output of a computer. Haskett Decl., Ex. 1 at Exs. CC, DD, EE, and FF.

Allowing AMD to argue that telephones, camcorders, cameras, and televisions infringe its patent limited to computers would vitiate the "control panel" limitation. In light of the extensive

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

intrinsic record establishing that the '879 patent is directed at computers, including the repeated references to computers throughout the specification and the Technical Field of the Invention "relat[ing] generally to computer displays," (*see* Dkt. No. 255 at 30-32; '879 patent at 1:6-7), the public is entitled to rely on the "computer" limitation of the patent to avoid infringement. *Athletic Alternatives*, 73 F.3d at 1582 ("[T]he doctrine of equivalents is not a license to ignore or 'erase … structural and functional limitations of the claim,' limitations 'on which the public is entitled to rely in avoiding infringement.'")  AMD is barred as a matter of law from using its patent to ensnare televisions, telephones, camcorders and cameras.

               **b.**    **No reasonable finder of fact would find that the accused products are equivalent to computers.**

In order to prove that the accused products meet the "control panel" limitation by equivalents, AMD will be required to prove that the accused products "perform[] substantially the same function in substantially the same way to obtain substantially the same result as the claimed invention." *Datascope Corp. v. SMEC, Inc.* 776 F.2d 320, 325 (Fed. Cir. 1985).  Samsung is entitled to summary judgment that the accused products do not meet the "control panel" limitation under the doctrine of equivalents on the alternative basis that no reasonable finder of fact could find that substituting the accused telephones, televisions, camcorders or cameras for the claimed "computer" achieves the same result as the claims of the '879 patent.  Rather, such substitutions result in entirely different systems from those claimed in the '879 patent.  Grimes Decl. ¶ 15.

The Court has construed "control panel" to mean "[a]n area of a computer display containing control functions." Dkt. No. 255 at 33.  A general purpose computer such as is described in the '879 patent specification is something a user "work[s] upon," as the patent specification explains. '879 patent at 1:43.  Accordingly, in order to avoid interrupting the user's work upon computer applications by "consum[ing] the activity of the computer," the patent states that "a need exists for a method and apparatus for providing control of background video while the video remains in the background." *Id.* at 46, 51-53.  Substituting a television, telephone, camcorder, and camera for the claimed "computer" of the control panel limitation achieves an

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

1    entirely different result—not a system that one "works upon," but rather an end-user product with a

2    limited number of specific functions.  *See* Secion A.1, *supra*.

3           Nor can AMD argue that the application of the '879 patent to televisions, telephones,

4    cameras, and camcorders constitutes "'an embellishment' made possible by technological

5    advances," (*Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 326 (Fed. Cir. 1985)), or an

6    "unanticipated equivalent[ ]," (*Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 389 (Fed. Cir. 1984))

7    such that AMD may sweep in these products under the doctrine of equivalents.  It is beyond dispute

8    that televisions, telephones, camcorders, and cameras existed in February 1997, when AMD alleges

9    the '879 patent was conceived.  Grimes Decl. ¶ 16.  Moreover, the particular user interface

10   disclosed in the '879 patent existed in these types of products years before the conception of the

11   '879 patent.

12          For example, the RCA ProScan Television, available for sale in the United States in

13   September, 1995, had a picture-in-picture window playing over background video, and a video

14   control icon allowing the user to bring up a menu to control the background video, all while the

15   picture-in-picture window remained "in focus"—precisely the same user interface AMD accuses of

16   infringing its patent.  Grimes Decl. ¶ 17 & Exhibit 1; *compare with* Haskett Decl., Ex. 1 at Ex. CC.

17   Another prior art television, the Sony Trinitron, available in 1996, had these same features.  Grimes

18   Decl. ¶ 17 & Exhibit 2.

19          Moreover, there were numerous cameras and camcorders available at the time of the '879

20   patent that displayed a battery meter or a time code superimposed over video images.  Grimes Decl.

21   ¶¶ 18-20.  For example, the Casio QV-300 digital camera was available as of November 20, 1996

22   and displayed a low battery indicator "whenever remaining battery power drops below a certain

23   level."  *Id.* ¶ 18, Ex. 3 at E-27.  Similarly, the Nikon CoolPix 300 Digital Camera was available on

24   April 1, 1997, several months before Mr. Orr filed his application for the '879 patent.  *Id.* ¶ 19, Ex.

25   4 at 102.  In this camera, "[w]hen the camera is in recording mode, battery level is shown iconically

26   in the status bar of the touch panel display."  *Id.*, Ex. 4 at 21.  The Sony Video8 Handycam

27

28
                                              14

1  camcorder was available in 1996 and displayed a time code and a battery meter in the viewfinder

2  when the camcorder was in camera mode. *Id.* ¶ 20, Ex. 5 at 1, 54.

3      Accordingly, AMD cannot argue that the application of this type of user interface to

4  Samsung end-user products was an "unanticipated equivalent"—it had already been done.[6]  If Mr.

5  Orr wished to attempt to claim his invention as applied to these products, there was nothing to

6  prevent him from advising the public of this in his patent.

**B.    The Accused Products Do Not Meet the "Application . . . In Focus" Limitation
7         of All Asserted Claims.**

8      None of the "applications" AMD contends meet the "application . . . in focus" limitation

9  meet the definition of an application as it would have been understood at the time of the invention

10  or as defined by the inventor.  During prosecution, for example, the inventor specifically

11  distinguished prior art on the basis that it disclosed "a general icon relating to any type of icon

12  found on a normal computer display, *such as a trash can or battery symbol.*"  Haskett Decl., Ex. 6

13  at AMDFH000000201 (emphasis added).  An icon is not an application.  Likewise, a picture-in-

14  picture window simply displays two live videos, not a video and an application.

**1.    The accused telephones, cameras, and camcorders do not meet the
15         "application . . . in focus" limitation.**

16

17      Samsung is entitled to summary judgment of non-infringement on the alternative grounds

18  that the accused products do not meet the "application . . . in focus" limitation of all asserted

19  claims.  AMD contends that the following features of the accused products meet the

20  "application . . . in focus" limitation of the '879 patent:

21

22

23  ────────────────────────
[6] For the same reason, AMD is barred from using the doctrine of equivalents to extend the
24  scope of its patent to the Samsung products it has accused by the doctrine of "ensnarement," under
    which "[i]t is well established that limitations in a claim cannot be given a range of equivalents so
25  wide as to cause the claim to encompass anything in the prior art."  *Senmed, Inc. v. Richard-Allan
    Med. Indus., Inc.*, 888 F.2d 815, 821 (Fed. Cir. 1989), *disapproved on other grounds by Cardinal
26  Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1983).

27

28

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
6,784,879
Case No. 3:08-CV-0986-SI

- In accused telephones and cameras, AMD accuses a battery meter that merely indicates to the user how much battery life remains in the devices. *See, e.g.*, Haskett Decl., Ex. 1 at Ex. GG, page 9 of 32 (telephone), Ex. JJ, page 14 of 45 (camera).

- In accused camcorders, AMD points to a battery meter and to a "time code," which merely indicates to the user how much time has expired during playback. *See, e.g., id.*, Ex. 1 at Ex. KK, page 9 of 68.

- In accused televisions, AMD accuses a picture-in-picture window, which merely displays video. *See, e.g.*, Ex. 1 at Ex. CC, page 17 of 169.

These features do not meet the "application" limitation as that term would be understood to one of ordinary skill in the art. At the time of the '879 patent, the term "application" referred to a computer program that a user performed work upon, and was distinguished from "utilities" and "operating systems," which were used to manage the computer itself. For example, the *Microsoft Computer Dictionary* defined "application" as follows:

> **application** A computer program designed to help people perform a certain type of work. An application thus differs from an operating system (which runs a computer), a utility (which performs maintenance or general-purpose chores), and a language (with which computer programs are created). Depending on the work for which it was designed, an application can manipulate text, numbers, graphics, or a combination of these elements. Some application packages offer considerable computing power by focusing on a single task, such as word processing; others, called integrated software, offer somewhat less power but include several applications, such as a word processor, a spreadsheet, and a database program.

Haskett Decl., Ex. 8 at 23-24. Other dictionaries are in accordance with this definition of "application":

> **application program** a computer program that performs useful work not related to the computer itself. Examples include word processors, spreadsheets, accounting systems, and engineering programs. *Contrast* UTILITY; OPERATING SYSTEM.

*Id.*, Ex. 8 at 25. This dictionary moreover defines "applications programmer" as "a person who writes programs that use the computer as a tool to solve particular problems, rather than just to manage the computer itself." *Id.*

The '879 patent supports this construction of "application" as a computer program that a user "works upon," rather than a utility that merely manages the computer. The central purpose of the '879 patent is to provide a means for a user to adjust attributes of background video without interrupting the user's work on an application. *See, e.g.*, '879 patent at 1:41-50.

16

1    The battery meters and time codes AMD accuses would not be considered "applications" to

2    one of ordinary skill in the art, because they are not software programs that a user "works upon."

3    Grimes Decl. ¶¶ 14-15.  They are, rather, mere utilities that manage the operation of the devices.

4    *Id.* ¶ 14.  The battery meters AMD accuses in Samsung telephones, cameras, and camcorders do

5    nothing more than "indicate[ ] the battery level."  *See, e.g.*, Yoo Decl., Ex. 6 at 4 (SCH-u940

6    Telephone Manual).  "Four bars indicate a full charge, while an empty battery indicates an almost

7    empty battery.  Two to three minutes before the battery becomes too low to operate, a blinking

8    battery icon appears and a tone sounds."  *Id.*[7]  The time code merely indicates to the user the

9    "elapsed time/ recorded time."  *Id.*, Ex. 1 at 19.  Moreover, these are not separate "applications";

10    they are, rather images that are part of the camera user interface programs in accused mobile

11    phones, cameras, and camcorders.  *Id.* ¶ 18.

12    Moreover, the patentee explained during prosecution that such things as battery symbols are

13    mere "icons," and the claims, specification, and prosecution history draw a clear distinction

14    between "applications," and "icons."  Several claims of the '879 patent application were initially

15    rejected by the examiner as anticipated by U.S. Patent No. 5,668,571 to Pai ("Pai").  Haskett Decl.,

16    Ex. 6 at AMDFH000000194.  Pai discloses "[a]n apparatus and a method for generating hardware

17    icons and cursors to be used as graphical computer command and control."  Haskett Decl., Ex. 10,

18    Abstract.  In arguing against the examiner's rejection based on Pai, the '879 applicant argued that

19    such things as a trash can or a battery symbol were merely "general icons.":

20        Pai discloses, *inter alia*, a method and apparatus for generating hardware icons and
         cursors.  More specifically, *inter alia*, the use of a display priority order in which
21        hardware cursors have the highest priority followed by hardware icons and then
         finally graphic displays. . . . Applicant respectfully submits that Pai fails to disclose,
22        among other things, the video control icon relating to the live video that is being
         presented as a background on the display.  More specifically, Pai directly discloses

23

24    ────────────────
      [7] *See also* Yoo Decl., Ex. 1 at 19 (SCH-MX10 Camcorder Manual) (the battery meter
25    indicates "[r]emaining battery level/time"); Ex. 7 at 11 (SCH-i910 telephone manual) ("The battery
      indicator in the upper-right corner of the display indicates battery level."); Ex. 8 at 5 (SCH-r800
26    Telephone Manual) ("The battery indicator in the upper-right corner of the display indicates battery
      level."); Ex. 9 at 12 (S860 Camera Manual) ("There are 4 indicators for battery condition that are
27    displayed on the LCD monitor."); Ex. 10 at 16 (SC-D382 Camcorder Manual) ("The battery level
      display indicates the amount of power remaining in the battery pack.")

28
                                          17
      SAMSUNG'S  MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
      6,784,879
      Case No. 3:08-CV-0986-SI

the hardware icon being a general icon relating to any type of icon found on a normal computer display, *such as a trash can or battery symbol.*

Haskett Decl., Ex. 6 at AMDFH000000201 (emphasis added).

Because battery meters are "icons," they cannot meet the "application" limitation. This is because "icon" is a separate limitation from the "application" limitation of the '879 patent claims. For example, claim 11 contains the limitation "application . . . in focus" in addition to the limitations "volume adjust icon, mute icon, channel up icon, [and] channel down icon." '879 patent, cl. 11.[8] "In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). The specification is consistent with the claims in drawing this distinction between "icons" and "applications." The specification states that "displayed elements m[a]y [sic] be another icon *or* an open application." '879 patent at 3:26-27 (emphasis added); *see also id.* at 2:42-46 (stating that the control panel will defocus "when another icon *or* application is selected") (emphasis added). It is therefore not possible for "battery meters," which the applicant admitted during prosecution were nothing more than "general icons," to also be the claimed "application . . . in focus," as AMD contends.

Nor can any of these features meet the "in focus" limitation of all asserted claims. The parties have agreed that the term "in focus" has the meaning ascribed to that term in the patent specification: "actively being displayed and/or worked upon." Dkt. No. 92 at 2; *see* '879 patent at 1:42-43. The claim language itself, by the term "actively being," clearly differentiates between something merely being displayed and something "actively being displayed." Indeed, to a person of ordinary skill in the art, "actively being displayed" is a term of art referring to the window in a windows-based environment that is capable of receiving cursor movements, commands, and text entry. Grimes Decl. ¶ 13. The *Microsoft Press Computer Dictionary* defined "active" as follows:

---

8

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

**18**
SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

> An adjective describing the program, document, device, or portion of the screen that is currently operational; for example, an active file is open for input or editing, an active program accepts commands, an active communications line can be used for transmission, and the active cell in a spreadsheet receives the next data, formula, or command entered. Usually the cursor or highlight shows the active element on the display screen.

Haskett Decl., Ex. 3 at 9. This dictionary defines "active window" in similar terms:

> In an environment capable of displaying multiple on-screen windows, the window containing the display or document that will be affected by all cursor movements, commands, and text entry until a new window is chosen.

*Id.*[9] The specification of the '879 patent is in harmony with this definition of "actively being displayed." This is because the specification explains that the purpose of the inventions claimed in the '879 patent is to allow a user to adjust desktop video without interrupting work or active display of foreground applications by sending them into "background mode." 879 patent at 1:41-53. Accordingly, the Court should construe "actively being displayed" to refer to the window in a windows-based environment capable of receiving cursor movements, commands, and text entry.

It is undisputed that none of the battery meters that AMD contends are "applications . . . in focus" receive cursor movements or text entry. *See* pg. 17, *supra* & n. 7. Nor is there any evidence that the "time codes" AMD identifies as the "application . . . in focus" in the Samsung SCH-MX10 camcorder is capable of being worked upon or actively displayed. Haskett Decl., Ex. 1 at Ex. KK, pg. 9 of 68. Accordingly, these features are not "actively being displayed and/or worked upon."

AMD cannot argue that the accused battery meters, time counters, and picture-in-picture windows meet the "application in focus" limitation under the doctrine of equivalents because AMD did not disclose such an argument in its infringement contentions. Unlike with the "control panel" limitation, for which AMD offered arguments as to why the accused devices meet this limitation under the doctrine of equivalents (*see, e.g.*, Haskett Decl., Ex. 1 at Ex. CC at 30 of 169 to 31 of 169), AMD did not contend that the "application" limitation is infringed under the doctrine of equivalents. *See, e.g. id.*, Ex. 1 at Ex. CC at 17 of 169. Because AMD failed to assert infringement

---

[9] *See also, e.g.*, Haskett Decl., Ex. 5 (*Dictionary of Computer and Internet Terms*) at 9 (**"active window** the window currently in use, the one in which the user is typing, drawing, or making menu choices . . . . There can only be one active window at a time.")

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

of the "application" limitation under the doctrine of equivalents in its infringement contentions, it

cannot do so now. *See Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008

WL 5411564, *3 (N.D. Cal. Dec. 29, 2008) (In order to assert equivalent infringement as to a

particular claim limitation, "[t]he Patent Local Rules require a limitation-by-limitation analysis, not

a boilerplate reservation").

Even if AMD had preserved an argument of equivalent infringement with respect to the

"application" limitation, substituting battery meters and time counters for applications in the

accused devices achieves an entirely different result from the invention claimed in the '879 patent.

One does not work upon the battery meters, picture-in-picture windows, and time meters that AMD

contends correspond to the "applications . . . in focus" in the accused Samsung products. Grimes

Decl. ¶ 14. Accordingly, substituting these utilities for the "application" claimed in the '879 patent

deprives the '879 patent of its central purpose—allowing the user to adjust desktop video while

continuing to work on an application in focus. *Id.* ¶ 15. Because this substitution achieves a

different result than the patented inventions, the doctrine of equivalents does not apply. *Id.* ¶ 15.

Moreover, AMD is barred by prosecution history estoppel from arguing equivalent

infringement with respect to the "application . . . in focus" limitation. The patentee added this

limitation to the claims during prosecution to overcome a rejection by the examiner. The original

application did not claim an "application . . . in focus." Rather, the applicant merely claimed

"providing a control panel while the live video remains in the background." Haskett Decl., Ex. 6 at

AMDFH000000013. The examiner rejected the application. *Id.*, Ex. 6 at AMDFH000000029-31.

In response, the patentee amended his claims to include the limitation in question: "an application

that was in focus remains in focus." *Id.*, Ex. 6 at AMDFH000000105. The applicant then argued

that this limitation overcame the prior art, stating "[t]he claimed invention therefore overcomes the

limitations of prior art systems that required the background to be brought into focus, thus requiring

a currently focused application to be defocused, before attributes of the video could be changed."

*Id.*, Ex. 6 at AMDFH000000108. Because the '879 patentee narrowed his claims by adding the

"application" limitation for reasons of patentability, there is a presumption that prosecution history

estoppel will bar any attempt by AMD to meet that limitation by equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (en banc).

Finally, even if the accused products did contain an "application . . . that was in focus," AMD has adduced no evidence that the picture-in-picture windows, battery meters, and time counters it has accused are ever capable of going out of focus, an implicit requirement of the "in focus" limitation. Accordingly, the Samsung telephones, cameras, and camcorders do not meet the "application . . . in focus" limitation as a matter of law.

> **2.    Many of the accused mobile phones do not display a battery meter during camera preview mode.**

Even if AMD were correct that a battery meter can meet the "application . . . in focus" limitation, it is undisputed that twenty-nine of the accused mobile phones do not display a battery meter during camera preview mode. The asserted claims of the '879 patent require, *inter alia*, "live video that is being presented as background on a display" and "an application that was in focus [that] remains in focus" while "the live video remains in the background." *See, e.g.*, '879 patent, cl. 17. With respect to accused mobile phones, AMD identifies the "camera mode" as corresponding to the "live video that is being presented as background on a display." Haskett Decl., Ex. 1 at Ex. GG, page 6 of 32, Ex. HH, page 7 of 34, Ex. II, page 8 of 40. AMD identifies the "battery meter" in accused telephones as corresponding to the "application that was in focus [that] remains in focus." *Id.*, Ex. 1 at GG, page 9 of 32, Ex. HH, page 10 of 34, Ex. II, page 11 of 40.

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

1  ████████████████████.[10] AMD has no evidence to create a material dispute of fact

2  that these phones display a battery meter during camera preview mode.  Because the battery meter

3  is the only feature of accused Samsung mobile phones that AMD has identified as corresponding to

4  the claimed "application . . . in focus," Samsung is entitled to summary judgment that these twenty-

5  nine phones do not infringe the '879 patent on this separate and independent basis.

6          **3.**    **The accused televisions do not meet the "application . . . in focus" limitation.**

7

8       Finally, AMD identifies the picture-in-picture displays in accused Samsung televisions as

9  corresponding to the "application . . . in focus" limitation.  Haskett Decl., Ex. 1 at Ex. CC, page 17

10  of 169; Ex. DD, page 20 of 186; Ex. EE, page. 9 of 87; Ex. FF, page 10 of 78.  The picture-in-

11  picture display is a small, inset  window in the main television display that displays video.  Yoo

12  Decl., Ex. 3 at 29.  The "application . . . in focus" limitation cannot encompass a picture-in-picture

13  window because the patentee specifically disclaimed video images as constituting the

14  "application . . . in focus" during prosecution.

15       During prosecution, the claims of the '879 patent were initially rejected under 35 U.S.C.

16  § 103(a) as being unpatentable over Pai in light of U.S. Patent No. 5,754,170 to Ranganathan

17  ("Ranganathan").  Haskett Decl., Ex. 6 at AMDFH000000113.  The examiner concluded that Pai

18  "disclose[s] a method for providing control of background video," and that "Ranganathan

19  _____

20  [10]



28
SAMSUNG'S  MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
6,784,879
Case No. 3:08-CV-0986-SI

1    discloses . . . a control panel while the live video remains in the background and an application that

2    was in focus remains in focus." *Id.* (citing Ranganathan at 13:2-23 and Fig. 1, attached to Haskett

3    Decl.as Ex. 7).  Ranganathan discloses, in pertinent part, a "graphics controller for overlaying a

4    movie window over a graphics screen."  Ranganathan, cl. 1 and 13:14-16.

5         The '879 applicant responded to this office action by distinguishing Ranganathan from his

6    invention on the basis that his patent did not claim a video window as the claimed "application":

7         it is clear that Ranganathan teaches a technique for video overlay, i.e., a video
         window in a foreground position with respect to graphics data. *In contrast, the*
8         *present invention has the live video in the background, with an application in a*
         *foreground position.*  As such, Ranganathan teaches the opposite of an aspect of
9         what the present invention is claiming.

10        In addition, Ranganathan does not teach or suggest providing a foreground
         application to be in focus while a control panel is presented for background video.
11        The passage cited by the Examiner (column 13, lines 2-23) discloses alternate
         embodiments of video overlays.  In one embodiment, multiple video windows may
12        be used.  This passage, nor does the rest of the reference, teach having an application
         in a foreground position with the live video being in the background.

13

14   Haskett Decl., Ex. 6 at AMDFH000000173 (emphasis added).  Accordingly, in order to distinguish

15   Ranganathan, the applicant disclaimed a video window as the foreground application and

16   disclaimed coverage of a system with "multiple video windows."

17        Having disclaimed a video window as the foreground application in order to obtain the '879

18   patent, AMD cannot now accuse picture-in-picture video windows of meeting this limitation.  "The

19   doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding

20   patentees from recapturing through claim interpretation specific meanings disclaimed during

21   prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).  Here, the

22   patentee unambiguously disclaimed that the "application" limitation can encompass "a video

23   window in a foreground position."  Because the accused picture-in-picture window is just such a

24   video window in a foreground position, the Samsung televisions do not infringe this limitation.[11]

25   ───────────────
        [11] Moreover, the main video image, which AMD claims is playing "as a background on a
26   display," does not meet that limitation because it is able to receive commands, such as "Play
     Movie" and "Sneak Peeks."  Haskett Decl., Ex. 1 at Ex. CC at 19 of 169.  The claims require that
27   the background video "remains in the background" when the control panel is provided ('879 patent,
     Cl. 11), and the specification makes clear that this is the opposite of being "in focus": "other
28                                                                                    *(Footnote continued)*

                                              23
     SAMSUNG'S  MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
     6,784,879
     Case No. 3:08-CV-0986-SI

C.     **The Accused Telephones and Cameras Do Not Meet the "Live Video" Limitation of All Asserted Claims.**

Samsung is entitled to summary judgment that the accused telephones and cameras do not infringe the '879 patent on the alternative grounds that these products do not meet the "live video" limitation of all asserted claims.  AMD contends that the "live video" limitation of the accused telephones and cameras is satisfied by the image the user sees while framing a photograph prior to taking a picture.  For example, AMD contends that "[t]he SCH-u940 [telephone] is capable of displaying background video on its LCD screen when preparing to take a picture with the camera."  Haskett Decl., Ex. 1 at Ex. GG, page 1 of 32; *see also, e.g., id.,* Ex. 1 at Ex. JJ, page 1 of 45.  This is not "live video" as that term is defined in the '879 patent.  The patent states that "video images may be received from a live television broadcast, video cassette player, satellite television, cable television, or DVD players." '879 patent at 1:20-22.  Moreover, AMD's broad interpretation of "live video" would not make sense in light of the claims of the '879 patent, many of which require the ability to pause, mute, fast-forward, or rewind the live video.  *See, e.g.,* '879 patent, cl. 11.  One cannot fastforward, rewind, pause, or mute the real-life images one sees in a camera viewfinder.  When asked at deposition what the meaning of "live video" was in the context of the '879 patent, the inventor named on the patent, Mr. Orr, testified that "in the case of products that we were working on at the time, video that was being captured off the air, broadcast video, and – and displayed on the PC."  Haskett Decl., Ex. 2 at 33:18-21.  There can be no dispute but that the images appearing in a camera frame prior to snapping a photograph do not constitute "live video," as that term is defined in the '879 patent.  Such images are not "received from a live television broadcast, video cassette player, satellite television, cable television, or DVD player" and cannot be paused, muted, fast-forwarded or rewound.  Because AMD's infringement contentions point to

applications that were in focus (i.e., actively being displayed and/or being worked upon) must go into a background mode (i.e., taken out of focus)." *Id.* at 1:41-44.  What AMD claims is background video in Samsung televisions is actually in focus because it is able to receive commands, and therefore does not meet the background video limitation of all asserted claims.

24

nothing in the accused telephones and cameras that could constitute live video, Samsung is entitled to summary judgment of non-infringement with respect to these products on this alternative basis.

## IV.    CONCLUSION

For the foregoing reasons, Samsung requests that the Court grant its motion for summary judgment of non-infringement of the '879 patent as to all accused products literally and under the doctrine of equivalents on the basis that they do not meet the "control panel" limitation of all asserted claims and/or on the basis that they do not meet the "application . . . in focus" limitation of all asserted claims.

In the alternative, should the court not grant summary judgment of non-infringement of the '879 patent as to all accused products, Samsung requests that the Court determine the following facts or relief are not genuinely at issue pursuant to Rule 56(d)(1):

(a) that the accused products do not literally infringe the '879 patent;

(b) that one or more of the four product groups—Samsung televisions, telephones, camcorders, and/or digital cameras—do not infringe the '879 patent; and/or

(c) that the following mobile phones do not display a battery meter during camera preview mode and therefore do not infringe the '879 patent: SGH-I607; SGH-T739; SGH-T819; SGH-T919; SGH-T929; SCH-R600; SCH-R610; SCH-U706; SPH-A303; SCH-R550;. SGH-A517; SGH-T339; SGH-T439; SGH-T459; SGH-T539; SGH-T619; SGH-T629; SGH-T729; SGH-A707;. SGH-A727; SGH-A737; SGH-A827; SGH-D407; SPH-M800; SGH-A637; SGH-A747; SGH-A767; SGH-A777; and SGH-A837.

SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879
Case No. 3:08-CV-0986-SI

1    DATED:  April 2, 2010                    Respectfully submitted,

2

3                                             COVINGTON & BURLING LLP

4

5                                             /s/Robert T. Haslam
                                              ──────────────────────
6                                             ROBERT T. HASLAM
                                              Attorneys for Defendants and Counterclaimants
7                                             SAMSUNG ELECTRONICS CO., LTD.,
                                              SAMSUNG SEMICONDUCTOR, INC.,
8                                             SAMSUNG AUSTIN SEMICONDUCTOR, LLC,
                                              SAMSUNG ELECTRONICS AMERICA, INC.,
9                                             SAMSUNG TELECOMMUNICATIONS
                                              AMERICA, LLC, and SAMSUNG DIGITAL
10                                            IMAGING CO., LTD.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        26
     SAMSUNG'S  MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO.
     6,784,879
     Case No. 3:08-CV-0986-SI