William H. Manning (*pro hac vice*)
E-mail: WHManning@rkmc.com
Brad P. Engdahl (*pro hac vice*)
E-mail: BPEngdahl@rkmc.com
Aaron R. Fahrenkrog (*pro hac vice*)
E-mail: ARFahrenkrog@rkmc.com
**Robins, Kaplan, Miller & Ciresi L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181

John P. Bovich (SBN 150688)
E-mail: JBovich@reedsmith.com
**Reed Smith LLP**
101 Second Street
San Francisco, CA 94105
Telephone: 415-543-8700

Attorneys for Plaintiffs Advanced Micro Devices, Inc. and ATI Technologies ULC

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ADVANCED MICRO DEVICES, INC., et al.,

Plaintiffs,

v.

SAMSUNG ELECTRONICS CO., LTD., et al.,

Defendants.

Case No. CV-08-0986-SI

**PLAINTIFFS' OPPOSITION TO SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879**

Date: May 5, 2010
Time: 3:30 p.m.
Courtroom: 10, 19th Floor
Judge: The Honorable Susan Illston

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. The '879 Patent Claims an Apparatus and Method for Controlling Background Video. ..... 2

II. The Court Already Has Construed "Control Panel." ..... 4

III. AMD Has Accused Four Categories of Samsung Products that Each Contain a Processing Unit and Memory Coupled to a Display. ..... 4

ARGUMENT ..... 5

I. Summary Judgment Must Be Denied If a Genuine Issue of Material Fact Exists. ..... 5

II. Infringement Cannot Be Determined Without First Construing the Claims, But Samsung Has Proposed No Constructions. ..... 6

III. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Products Contain a "Computer Display" and Therefore Satisfy the Claim Limitation "Control Panel." ..... 8

A. "Computer Display" in the Court's Construction of "Control Panel" Requires a Processing Unit and Memory Coupled to a Display. ..... 8

1. The Claims and Specification Demonstrate that the "Computer" Described Requires Only a Processing Unit and Memory. ..... 9

2. The Specification Does Not Disclaim Televisions, Phones, Cameras, and Camcorders. ..... 10

3. The Specification Does Not Contain a Definition that Limits "Control Panel" to a Display Connected to a "General Purpose" or "Windows-Based" Computer. ..... 11

a. The Background of the Invention Does Not Expressly Define "Computer." ..... 12

b. The Background of the Invention Does Not Implicitly Define "Computer." ..... 13

4. The "Purpose" of the Invention Cannot Limit the Claims Without a Clear Disclaimer. ..... 14

5. The Court Should Discount Samsung's Expert's Testimony

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

Because It Conflicts with the Intrinsic Record. ........................................ 14

6. The Testimony of the Inventor Cannot Limit the Claims. ......................... 15

7. Samsung's Proposed Limitations Would Exclude Many Devices Considered to Be "Computers" in 1997. .................................................. 15

B. The Accused Products Contain a Display Coupled to a "Processing Unit" and "Memory," and Therefore Contain a "Computer Display" and Literally Satisfy the "Control Panel" Limitation. ............................................................... 15

C. Even if the Court Restricts the Claims to a "General Purpose Computer," the Accused Products Satisfy that Limitation and Literally Satisfy the "Control Panel" Limitation. ........................................................................ 17

D. If the Court Restricts the Claims to a "General Purpose Computer Operating in a Windows-Based Environment," the Accused Products Satisfy the "Control Panel" Limitation Under the Doctrine of Equivalents. ......... 19

1. The Accused Control Panel in Each Accused Samsung Product Is Equivalent to the Claimed "Control Panel." ............................................ 19

2. Samsung's Doctrine of Equivalents Arguments Do Not Follow the Proper Legal Framework. ........................................................................ 20

3. The Specific Exclusion Principle Does Not Exclude Televisions, Phones, Cameras, and Camcorders from the Claimed "Control Panel." ........................................................................................... 21

4. The Scope of Equivalents for the Orr '879 Patent Does Not Encompass the Prior Art. ........................................................................ 23

IV. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Products Display the Claimed "Application . . . In Focus." .......................................................... 24

A. In 1997, One of Ordinary Skill Would Understand "Application" to Mean "Software that Enables a Computer to Accomplish a Task." ............................... 25

1. The Specification Does Not Limit "Application" to Something that Is Capable of Being "Worked Upon." ..................................................... 26

2. "Actively" Being Displayed in the Agreed Construction of "In Focus" Cannot Mean "Capable of Being Worked Upon." ........................ 26

3. The Claim Term "Application" Does Not Exclude an "Icon." .................. 28

a. The Specification Demonstrates that the Claimed "Application" Can Be an Icon. ..................................................... 28

b. The Patentee Did Not Disclaim a Battery Meter or Other

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

"Icon" from the Scope of "Application" During Prosecution........ 28

4. The Patentee Did Not Disclaim a Video Window from the Scope of "Application" During Prosecution. ........................................................ 29

5. Samsung Cannot Now Exclude Products that It Claims Do Not Meet the "Application . . . In Focus" Limitation Because AMD Relied on Samsung's Proposed Exemplar Groupings. ............................ 30

B. The Accused Products Display an "Application . . . In Focus." ........................... 31

V. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Products Display "Live Video."........................................................................................ 33

A. In the Context of the '879 Patent, "Live Video" Means "Video that Is Currently Being Displayed."..................................................................... 33

1. The Specification Does not Define "Live Video" or Disclaim Any Video Source from the Scope of "Live Video." ...................................... 34

2. Inventor Testimony Cannot Limit the Scope of "Live Video."................. 35

B. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Phones and Cameras Display "Live Video." ....................................................... 35

CONCLUSION ..................................................................................................................... 36

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amgen Inc. v. F. Hoffman-LA Roche Ltd.*,
580 F.3d 1340 (Fed. Cir. 2009)....................19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................5, 7

*AquaTex Indus., Inc. v. Techniche Solutions*,
479 F.3d 1320 (Fed. Cir. 2007)....................19, 21

*Arthur A. Collins Inc. v. Northern Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir. 2000)....................6

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*,
73 F.3d 1573 (Fed. Cir. 1996)....................22

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008)....................10

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group*,
262 F.3d 1258 (Fed. Cir. 2001)....................10, 13

*Broadcom v. Qualcomm*,
543 F.3d 683 (Fed. Cir. 2008)....................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................6

*Cohesive Techs., Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008)....................6, 33

*Cordis Corp. v. Medtronic AVE, Inc.*,
511 F.3d 1157 (Fed. Cir. 2008)....................29

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*,
424 F.3d 1293 (Fed. Cir. 2005)....................11

*DeMartini Sports Inc. v. Worth Inc.*,
239 F.3d 1314 (Fed. Cir. 2001)....................5

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
114 F.3d 1547 (Fed. Cir. 1997)....................22

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
149 F.3d 1309 (Fed. Cir. 1998)....................22, 23

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
442 F.3d 1301 (Fed. Cir. 2006)....................6, 7

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008)....................12

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
540 F.3d 1337 (Fed. Cir. 2008)........................................................................ 14, 15, 27, 35

*Hunt v. Cromartie*,
526 U.S. 541 (1999)........................................................................................................ 5

*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009)..................................................................................... 15

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)........................................................................................................ 6

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)......................................................................................... 15

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
579 F.3d 1363 (Fed. Cir. 2009)................................................................................ 14, 26

*Moore, U.S.A., Inc. v. Standard Register Co.*,
229 F.3d 394 (Fed. Cir. 2000)....................................................................................... 22

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)................................................................................ 10, 26

*Scimed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*,
242 F.3d 1337 (Fed. Cir. 2001)................................................................................ 21, 22

*Stryker Corp. v. Davol Inc.*,
234 F.3d 1252 (Fed. Cir. 2000)........................................................................................ 5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)...................................................................................... 10

*Terlep v. Brinkmann Corp.*,
419 F.3d 1379 (Fed.Cir.2005).......................................................................................... 6

*United States v. Diebold*,
369 U.S. 654 (1962)........................................................................................................ 5

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
473 F.3d 1173 (Fed. Cir. 2006)..................................................................................... 12

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997)......................................................................................................... 21

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
904 F.2d 677 (Fed. Cir. 1990).................................................................................. 23, 24

*Yodlee, Inc. v. Cashedge, Inc.*,
2007 WL 2220970 (N.D. Cal. Aug. 1, 2007).................................................................... 5

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

**INTRODUCTION**

Samsung, following the *Markman* hearing in this matter, now makes a second attempt to read limitations into the '879 claims that do not exist anywhere in the intrinsic record. Knowing that the term "computer display" will not suffice to support summary judgment of noninfringement, Samsung requests that the Court re-construe "control panel" to incorporate limitations such as "general purpose" and "windows-based." The specification does not support either of these limitations, which come only from extrinsic evidence.

The specification expressly teaches what components must be connected to a "computer display"—a processing unit and memory. The specification therefore clarifies the meaning of "computer display" consistent with the claims and the Court's prior construction of "control panel." When construed properly in this manner, there is no dispute that the accused products all contain a "computer display."

Samsung also now is dissatisfied with the parties' agreed construction of "in focus," which comes directly from the inventor's definition in the specification. By expanding the claim term at issue to "application . . . in focus," Samsung attempts to avoid the "or" in the construction of "in focus"—"actively being displayed and/<u>or</u> being worked upon." Samsung argues that a necessary characteristic of an "application" is that it can be worked upon. The inventor's definition of "in focus," using "or," expressly contradicts Samsung's interpretation that focuses solely on one clause, "worked upon," and avoids "actively being displayed." Once again, this interpretation comes solely from extrinsic dictionaries and expert testimony.

As an alternative argument to reach the same result, Samsung asks the Court to limit "actively" being displayed to something capable of being worked upon, which would convert the definition of "in focus" to "capable of being worked upon and/or being worked upon." Again Samsung's proposed limitation contradicts the inventor's express definition given in the specification.

Finally, Samsung argues that some accused products do not display "live video." Samsung asks the Court to construe the term solely to exclude the accused devices, which is reversible error. The intrinsic record also does not support Samsung's proposed limitations on

"live video."

Under most of Samsung's proposed limitations, the accused products satisfy the claim elements at issue, and at the very least, genuine issues of material fact exist regarding infringement, both literally and under the doctrine of equivalents. For all of these reasons, AMD requests that Samsung's motion be denied.

## BACKGROUND

### I. The '879 Patent Claims an Apparatus and Method for Controlling Background Video.

The '879 patent teaches a video control icon that, when selected, brings up a control panel for adjusting attributes of background video while foreground applications remain in focus. '879 at Abstract (Ex. 1).[1] The inventions of the '879 patent address the need to control background video without losing the focus on the applications in the foreground. '879 at 2:2-17 (Ex. 1). The patent provides a better viewing experience and an improved user interface for controlling a computer display that can present both background video and applications in the foreground. *Id.*

Figure 1 illustrates one embodiment of the invention including a computer screen 10 which displays live video background 12, a video control icon 16, and a plurality of icons 18-26:

'879 at Fig. 1 (Ex. 1). The live video is in the background and "the tile bar 14, the video control icon 16, and the icons 18-26 are in focus, i.e., overlaying the live background video 12." '879 at

[1] Citations to "Ex. _" refer to Exhibits to the Declaration of Aaron R. Fahrenkrog in Support of Plaintiffs' Opposition to Samsung's Motion for Summary Judgment of Noninfringement, filed with this brief.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

2:22-25 (Ex. 1). When the video control icon 16 is selected, a control panel 30 is presented in focus. '879 at 2:25-29 (Ex. 1). The video control icon can be selected using a mouse, a touch screen, a keyboard, "or any other means for selecting an icon." *Id.* "While the control panel 30 is in focus, the live video remains in the background." *Id.* at 2:31-32. As shown in Figure 1, the other displayed elements, including "icons 18-26," remain in focus.

Figure 2 illustrates a schematic block diagram of a processing system 40 that is "coupled to the computer display 10" to practice the claimed invention. '879 at 2:49-60 (emphasis added) (Ex. 1). That system includes a central processing unit 42, a memory 44, and a video graphics processor 46.

'879 at Fig. 2 (Ex. 1). The specification provides examples of the central processing unit and memory and does not restrict the types of those components that can be used:

> The processing system 40 is operably coupled to the computer display 10. The central processing unit 42 may include a microprocessor, microcontroller, a digital signal processor, a microcomputer, or any other means for processing digital information based on programming instructions. The memory may be cache

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

> memory, hard drive, floppy disk, CD ROM, <u>or any other means for storing digital information</u>.

’879 at 2:49-60 (emphasis added) (Ex. 1). The video graphics processor 46 may be part of the central processing unit. ’879 at 2:61-66 (Ex. 1). The processing unit performs programming instructions stored in the memory in order to perform the operations described in the claims. ’879 at 2:59-60, 2:66 – 3:3 (Ex. 1).

The structural elements in’879 apparatus claims 11-24 correspond to the components described in Figure 2. Claims 11-16 recite the structural components “a processing unit” and “memory that stores programming instructions” that allow the processing unit to perform the described user interface functions. Claims 17-24 recite “a processing unit” and “storage means” which corresponds to the memory in Figure 2. The apparatus claims do not recite any additional structural limitations.

## II. <u>The Court Already Has Construed “Control Panel.”</u>

The Court’s Claim Construction Order construed the disputed claim limitation “control panel” as “[a]n area of the computer display containing control functions.” Dkt. #255 at 33. Samsung argued that a control panel should be limited to “personal computer.” *Id.* at 30. The Court rejected Samsung’s argument, finding that “the intrinsic evidence does not limit the control panel application to use on a ‘personal’ computer.” *Id.* at 32.

The Court used the word “computer display” instead of “computer screen,” because to construe otherwise “could confuse jurors by leading them to believe that a control panel can *only* be displayed on a computer screen.” *Id.* (emphasis in original). The Court noted that “claim 5 discloses that a television could be used for a computer display.” *Id.* The Court did not give a specific definition to the term “computer.”

## III. <u>AMD Has Accused Four Categories of Samsung Products that Each Contain a Processing Unit and Memory Coupled to a Display.</u>

AMD has accused Samsung televisions, phones, cameras, and camcorders of infringing claims 11-24 of the Orr ’879 patent. *See* Haskett Decl. Ex. 1 (Exs. CC, DD, EE, FF, GG, HH, II, JJ, KK, and LL). AMD’s Final Infringement Contentions were based on the exemplar groupings

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

agreed to by the parties in the Stipulation Regarding Exemplar Products for the Purposes of Proving Infringement/Noninfringement (Dkt. #278). Exhibit G to that Stipulation contained the agreed groupings for the '879 patent. Ex. 2. The accused products use the claimed inventions to provide Samsung's customers an improved user interface. Each of the accused products contains a processing unit and memory coupled to a display. Wolfe Decl. ¶¶ 23, 32-47.[2] AMD's expert, Dr. Andrew Wolfe, has reviewed extensive documents describing all of the accused products and also has obtained and tested the products themselves to determine that they infringe under the proper meaning of the claims to one of ordinary skill in the art as of the time of the invention. Wolfe Decl. ¶ 18.

## ARGUMENT

### I. Summary Judgment Must Be Denied If a Genuine Issue of Material Fact Exists.

Summary judgment is not appropriate if there is a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the Court must consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Yodlee, Inc. v. Cashedge, Inc.*, 2007 WL 2220970, *1 (N.D. Cal. Aug. 1, 2007). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue of material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All factual disputes and all inferences must be resolved in favor of AMD. *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Anderson*, 477 U.S. at 255.

Samsung has the burden of production to identify the basis for its motion and to demonstrate that no evidence supports AMD's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

[2] Citations to "Wolfe Decl." refer to the Declaration of Andrew Wolfe, Ph.D. in Support of Opposition to Samsung's Motion for Summary Judgment of Non-infringement of U.S. Patent No. 6,784,879.

(1986); *Arthur A. Collins Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000). In particular, a party moving for summary judgment of noninfringement must "point[] to the specific ways in which accused systems did not meet the claim limitations." *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).

## II. Infringement Cannot Be Determined Without First Construing the Claims, But Samsung Has Proposed No Constructions.

"A determination of infringement [or noninfringement] requires a two-step analysis." *Terlep v. Brinkmann Corp.*, 419 F.3d 1379, 1381 (Fed. Cir. 2005). The first step is to determine the scope of the claim, which is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372-73, (1996). The second step is to compare the claim as properly construed to the accused device or process, which is a question of fact for the jury. *Id.*

Samsung has not properly proposed constructions for the terms it has asked the Court to construe. Without proposed constructions, AMD and the Court cannot determine the scope of the claims that Samsung is proposing, and therefore cannot determine whether the accused products fall within Samsung's proposed scope.

First, Samsung asks the Court to re-construe the term "control panel." Samsung's brief attempts to limit the "computer display" in the Court's construction to "a general purpose computer operating in a windows-based environment," but does not articulate that phrase as a proposed construction. In other places, Samsung's brief suggests that the Court should read in a definition of "computer" from the specification. Dkt. #435 at 8 ("The patent specification defines the term 'computer' as follows . . . .").

Second, Samsung expressly asks the Court to construe "application . . . in focus" and "live video," Dkt. #435 at 4 n.1, but provides no proposed constructions. For each of these terms, Samsung identifies many varied limitations it would like incorporated, but does not propose constructions.

Instead of proposing a definite construction for each term, Samsung asks the Court to construe the terms solely to exclude the accused devices. Construing claim terms as Samsung requests is error. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367-68 (Fed. Cir. 2008)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

("A claim is construed in light of the claim language . . . not in light of the accused device." (quotation omitted)).

Samsung's failure to propose a scope for each claim term means that Samsung has not satisfied its burden of production to "point[] to the specific ways in which accused systems did not meet the claim limitations." *Exigent*, 442 F.3d at 1308-09. Samsung cannot have identified the ways in which the accused products do not meet the claim limitations without explaining what those limitations are. Put another way, the Court cannot determine whether any fact is "material" because materiality is determined based on whether the fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. To determine infringement, part of the "governing law" is the proper construction of the claims.

AMD therefore requests that the Court deny Samsung's motion in its entirety for failure to meet its burden of production sufficient to support a motion for summary judgment. As a practical matter, Samsung's failure to propose constructions leaves AMD to guess at which phrasings of claim limitations Samsung wants the Court to adopt. Samsung's motion in its entirety should be denied solely on this basis.

However, in the event that the Court does not do so, AMD has proposed constructions for the terms "application" and "live video." The Court already construed "control panel," and it needs no additional construction. The parties agreed to the construction of "in focus," and it also needs no additional construction. If the Court does not deny Samsung's motion for failure to meet its burden of production, AMD respectfully requests that the Court adopt AMD's proposed constructions.

Samsung's reply brief should be restricted to a discussion of AMD's proposed constructions. That is, Samsung should not be allowed to propose its own constructions in its reply because AMD will not have the opportunity to respond. If Samsung does propose constructions, its reply brief unquestionably will contain new matter not raised in its opening brief.

Left with no other choice, AMD has attempted to discern Samsung's proposed scope of each claim term from the various statements regarding limitations in Samsung's brief and expert

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

declaration. The intrinsic record not only does not support any of Samsung's proposed limitations, but expressly contradicts Samsung's limitations. As properly construed, the asserted claims cover the accused devices. Therefore, AMD requests that the Court deny Samsung's motion in its entirety.

## III. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Products Contain a "Computer Display" and Therefore Satisfy the Claim Limitation "Control Panel."

### A. "Computer Display" in the Court's Construction of "Control Panel" Requires a Processing Unit and Memory Coupled to a Display.

The Court has construed "control panel" to mean "[a]n area of the computer display containing control functions." Dkt. #255 at 33. The Court also has suggested that to determine whether a device contains a "computer display," one must determine whether the device's display is connected to a "computer." Dkt. #255 at 32 ("Claim 5 merely lists types of devices that can display the patented application when those devices are connected to a computer."); *id.* ("Contrary to AMD's contention, the reference to channel controls in some claims does not establish that the control panel can be displayed on a television without a computer."). Therefore, to establish infringement of the '879 apparatus claims, AMD must demonstrate that the display in each accused device is connected to a "computer." The Court did not limit "computer."

AMD and Samsung dispute what constitutes the "computer" required to make a "display" a "computer display" to satisfy the Court's construction of "control panel." AMD's position is that no additional construction is required because the claims and specification demonstrate that the "computer" required to implement the invention, and connected to the "computer display," contains a processing unit and memory that stores programming instructions. '879 at 2:49-53 (Ex. 1). Samsung, however, now asserts that the "computer" must be "a general purpose computer operating in a windows-based environment, and not . . . any device in the world that contains a processor, memory, and programming instructions, as AMD contends." Dkt. #435 at 9.

Samsung's new definition of "computer" reargues its prior claim construction proposal by substituting "general purpose computer in a windows-based environment" for "personal

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

computer." The Court already decided that the intrinsic record does not support the "personal" limitation. Dkt. #255 at 32. Samsung now asks the Court to substitute different limiting words that effectively mean the same thing as "personal." The intrinsic record does not support Samsung's new limiting words "general purpose" and "windows-based." AMD requests that the Court reject Samsung's attempt to read additional limiting words into "control panel."

The claim term at issue is "control panel," not "computer" or "computer display." Because the Court construed "control panel" to require a "computer display," and Samsung now argues that a "computer display" must be limited to a display connected to "a general purpose computer operating in a windows-based environment," AMD here addresses the intrinsic and extrinsic support for the meaning of "computer" and "computer display" as if those terms themselves appeared in the claims.

1. The Claims and Specification Demonstrate that the "Computer" Described Requires Only a Processing Unit and Memory.

The specification teaches that the "computer display" discussed in the patent and incorporated in the construction of "control panel" must be coupled to a processing unit and memory. The specification explains:

> FIG. 2 illustrates a schematic block diagram of a processing system 40 which includes a central processing unit 42, memory 44, and a video graphics processor 46. The processing system 40 is operably coupled to the computer display 10.

'879 at 2:49-53 (emphasis added) (Ex. 1). This statement identifies three components required to be connected to a "computer display:" a central processing unit, memory, and a video graphics processor.

The specification also teaches that "the video graphics processor may be part of the central processing unit." '879 at 2:64-66 (Ex. 1). Therefore, in a preferred embodiment of the invention, a "computer display" is present when a display is connected to two components: a processing unit and memory. The specification's description of a processing unit and memory coupled to a "computer display" is consistent with how one of ordinary skill in the art would understand the term "computer" in 1997. *See* Wolfe Decl. ¶¶ 24-31, 48-53.

The preferred embodiment corresponds precisely to the asserted apparatus claims, which

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

recite two "computer" components: a processing unit and memory. The claims and specification therefore explicitly teach that to constitute a "computer display," a display must be coupled to a processing unit and memory. The claims on their face read on this embodiment and should not be construed to exclude it. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345-46 (Fed. Cir. 2008). The Court's construction of "control panel" to require a "computer display" is in harmony with the claims and specification and needs no additional construction.

2. The Specification Does Not Disclaim Televisions, Phones, Cameras, and Camcorders.

The specification can limit claim terms in two ways: definition or disclaimer. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005). AMD understands that the Court found that the specification implicitly defined the term "control panel" based on the Court's statement that "[a]s the patentee consistently uses 'control panel' in the specification to denote a mechanism for controlling video on a computer display, this understanding of the term is incorporated into the claim language." Dkt. #255 at 31. The page from *Bell Atlantic* cited by the Court discusses implicit definitions. *Id.* at 31-32; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group*, 262 F.3d 1258, 1271 (Fed. Cir. 2001). AMD does not read the Court's Order as finding that the '879 specification disclaims any particular device. AMD understands that instead, the Court found a definition.

Samsung, on the other hand, misconstrues the Court's statements in order to argue that the claims exclude all products named "television," "phone," "camera," or "camcorder." Dkt. #435 at 7-8, 12. An implicit definition, however, is not the same thing as a disclaimer that excludes particular devices, which requires the inventors to "demonstrate an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The specification does not contain a disavowal of any kind of devices that contain the claimed processing unit and memory. The specification contains nothing that one of ordinary skill would understand as a disavowal of all televisions, phones, cameras, and camcorders even when they include the claimed structures.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

Wolfe Decl. ¶ 31.

AMD does not contend, as Samsung alleges, that every television, phone, camera, and camcorder in existence can infringe the ’879 claims. The question of infringement of an apparatus claim turns not on what a product is named or on its intended use, but instead on whether it includes the claimed structures. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005). Because the intrinsic record does not include a sweeping disclaimer of all televisions, phones, cameras, and camcorders, AMD requests that the Court disregard Samsung’s argument that the Court already has ruled that televisions, phones, cameras, and camcorders cannot infringe regardless of the components they contain.

3. The Specification Does Not Contain a Definition that Limits “Control Panel” to a Display Connected to a “General Purpose” or “Windows-Based” Computer.

The specification does not define the term “computer” as Samsung has alleged. Samsung relies on the specification’s statement from the Background of the Invention:

> Computers are known to include a central processing unit, cache memory, hard drive memory, floppy disk drive memory, CD ROM drive, audio processing circuitry, and video processing circuitry. The computer further includes a computer monitor which provides visual representations of the data being manipulated. Such visual representations are originated from, for example, a word processing algorithm, a drawing algorithm, and, more recently, the displaying of video images.

’879 at 1:11-17 (Ex. 1). Samsung has not made clear what it is asking the Court to read into the claims from this description. At some points in its brief, Samsung seems to request that the Court re-construe “control panel” to incorporate this description verbatim. *See* Dkt. #435 at 8. At other points Samsung suggests that based on the description, the specification implicitly defines the “computer” that must be connected to the “computer display” as a “general purpose computer operating in a windows-based environment.” *See id.* at 9-10. Neither position is supported by the specification. Also, there can be no dispute that the specification does not expressly define “computer display” or “computer” as “general purpose computer operating in a windows-based environment,” because the specification does not use the terms “general purpose” or “windows-based.”

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

a. The Background of the Invention Does Not Expressly Define "Computer."

The Background's description of a "computer" cannot define the term because it does not "clearly express [an] intent" to "assign [the] term a unique definition that is different from its ordinary and customary meaning." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008). Instead, the description says "[c]omputers are known to include" and lists several exemplary components. It does not say "a 'computer' is" a particular set of components, does not say "all computers include" certain components, and does not otherwise reflect a clear intent to give a precise definition to the term. *Id.* This general description contrasts with the inventor's demonstration of clear intent to define the term "in focus," where the specification says "in focus (i.e., actively being displayed and/or being worked upon)." '879 at 1:43-44 (emphasis added) (Ex. 1). Because the inventor clearly indicated an intent to define "in focus," AMD agreed to the definition of that term. The general description of "computers" comes nowhere near this clear intent to define.

Also, the description of a "computer" contains many components, such as a floppy disk drive, that are not necessary to implement the claimed invention. Reading these components into the claims would be improper, because "[w]hen the claim addresses only some of the features disclosed in the specification, it is improper to limit the claim to other, unclaimed features." *Broadcom v. Qualcomm*, 543 F.3d 683, 689 (Fed. Cir. 2008) (quoting *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006)).

The specification makes clear that the invention can be implemented with various types of memory, and does not require "hard drive memory, floppy disk drive memory, [and a] CD ROM drive." '879 at 1:12-15 (Ex. 1). Instead, when discussing the embodiment of the invention, the specification explains "[t]he memory may be cache memory, hard drive, floppy disk, CD ROM, or any other means for storing digital information." '879 at 2:56-58 (Ex. 1).

Incorporating the specification's description of an example "computer" in the construction of "control panel" would lead to the result that a device cannot satisfy the "control panel" limitation without, for example, a floppy disk drive. Such a construction would be completely

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

detached from the claims and specification. The general description of "computers" from the Background of the Invention cannot be read into the claims.

b. The Background of the Invention Does Not Implicitly Define "Computer."

The specification also does not implicitly define the terms "computer" or "computer display" to require a "general purpose computer operating in a windows-based environment." Implicit definition requires "a patentee to use[] a claim term throughout the entire patent specification, in a manner consistent with only a single meaning." *Bell Atl.*, 262 F.3d at 1271. Like Samsung's previous proposed limitation "personal," its new proposed limitations "general purpose" and "windows-based" do not appear in the specification. Reading these made-up limitations into the claims based on the example "computer" components listed in the Background of the Invention conflicts with the description of the preferred embodiment. As described above, the specification uses the term "computer display" to mean a display connected to a central processing unit and memory, without limitation on those components. '879 at Fig. 2, 2:49-60 (Ex. 1). The '879 specification therefore does not use the terms "computer" or "computer display" "throughout the specification, in a manner consistent with only a single meaning" of "general purpose computer operating in a windows-based environment." The specification cannot have defined "computer" or "computer display" by implication.

Through its discussion of suitable central processing units for the invention, the specification makes even more clear that "general purpose computer operating in a window-based environment" cannot be an implicit limitation. The specification states "the central processing unit 42 may include a microprocessor, microcontroller, a digital signal processor, a microcomputer, or any other means for processing digital information based on programming instructions." '879 at 2:53-56 (Ex. 1). One of ordinary skill in 1997 would recognize that a microcontroller or digital signal processor would not be suitable for the central processing unit of a "general purpose computer operating in a window-based environment." Wolfe Decl. ¶ 50. Because the specification contradicts Samsung's proposed implicit limitation, the limitation cannot be adopted.

4. The "Purpose" of the Invention Cannot Limit the Claims Without a Clear Disclaimer.

That the patent describes the invention as useful in a computer that contains components such as a floppy disk drive and CD ROM drive cannot limit the claims. Samsung argues that the "problem" addressed by the invention is another basis for finding an implicit definition of "computer." As demonstrated above, the specification contradicts Samsung's proposed "general purpose" and "windows-based" limitations, so there can be no implicit definition. In addition, the Federal Circuit has explained "we are governed by the principle that absent a clear disclaimer of particular subject matter, the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1383 (Fed. Cir. 2009) (quotation omitted). The '879 patent contains no clear disclaimer of systems outside of the "computer" description provided in the background of the invention. Samsung has not alleged such a disclaimer. "The court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1345 (Fed. Cir. 2008). Samsung's arguments regarding the purpose of the invention, therefore, also cannot establish an implicit definition.

5. The Court Should Discount Samsung's Expert's Testimony Because It Conflicts with the Intrinsic Record.

Dr. Grimes does not discuss the claims. Instead, Dr. Grimes relies on two portions of the intrinsic record to support his analysis—(1) the description of "computers" from the Background of the Invention, discussed above, and (2) the "nature of the problem" addressed by the patent. Grimes Decl. ¶ 10. As explained above, neither of these two sources can overcome the clear teachings of the claims and the specification's description of the implementation of the invention with a "computer display." Dr. Grimes's sole reliance on these two sources makes his declaration inconsequential for understanding the ordinary meaning of the claim terms to one of ordinary skill in the art. "[E]xtrinsic sources like expert testimony cannot overcome more persuasive intrinsic evidence. A court should discount any expert testimony that is clearly at odds with the

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

claim construction mandated by the claims themselves, the written description, and the prosecution history." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

6. The Testimony of the Inventor Cannot Limit the Claims.

"The testimony of an inventor cannot be relied on to change the meaning of the claims." *Howmedica*, 540 F.3d at 1346 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995)). The Federal Circuit has stated explicitly "[w]e hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction." *Howmedica*, 540 F.3d at 1347. Samsung's citations of Mr. Orr's testimony and documents describing the context in which he conceived of the '879 inventions, therefore, are irrelevant to the claim construction issues before the Court.

7. Samsung's Proposed Limitations Would Exclude Many Devices Considered to Be "Computers" in 1997.

Samsung's proposed limitations, in contrast, would exclude many devices that one of ordinary skill would have considered to be "computers" in 1997. Wolfe Decl. ¶ 51, 107. The original IBM PC, for example, did not operate in a windows-based environment. Wolfe Decl. ¶ 51. In addition to the IBM PC, Dr. Wolfe has described others in his declaration that would be excluded by Samsung's proposed limitations. *Id.* Samsung's proposed limitations, therefore, do not constitute ordinary meaning to one of skill in the art at the time of the invention.

**B. The Accused Products Contain a Display Coupled to a "Processing Unit" and "Memory," and Therefore Contain a "Computer Display" and Literally Satisfy the "Control Panel" Limitation.**

Samsung has requested that the Court enter summary judgment of noninfringement for all accused televisions, phones, cameras, and camcorders on the basis that none of these products satisfy the limitation "control panel." Samsung does not allege that the accused products do not contain "an area of the . . . display containing control functions." Samsung has alleged only that the accused products do not contain a "computer display," and therefore do not satisfy the Court's construction.

As discussed above, "control panel" as construed by the Court needs no additional construction, because the "computer display" must be coupled only to a processing unit and

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

memory, as claimed and described in the specification. Samsung does not allege in its motion that any accused product does not contain the claimed processing unit and memory that stores programming instructions. In fact, each of the accused products contains these claimed components which are coupled to a display. Wolfe Decl. ¶¶ 23, 32-47. Therefore, if the Court agrees that the "computer display" must be coupled to only a processing unit and memory, Samsung's motion must be denied with respect to the claim limitation "control panel."

The accused products all contain programmable processing units and memory components. Dr. Wolfe has analyzed documents describing the accused products in detail to identify the processing unit and memory components of each product. Dr. Wolfe's declaration, at ¶¶ 32-47, identifies the specific components in each exemplar product and all of the evidence supporting his analysis. This evidence also is analyzed and discussed in AMD's Final Infringement Contentions for the '879 patent, attached to the Declaration of Christine Haskett as Exhibit 1.

In the accused products, the computer components connected to the display process the video and generate the claimed user interface features. The accused products therefore differ from conventional analog televisions, cameras, and camcorders, in which incoming live-video signals were presented directly to a display device such as a cathode-ray tube without being processed by computer components. Wolfe Decl. ¶ 47. In some conventional products, for example, a simple microcontroller could generate other signals representing text or lines and combine these with the incoming video signal in the analog domain. *Id.* The accused products do not work this way. *Id.* In the accused devices, the live video is processed by the computer components which then generate a digital image for display. *Id.* The computer components also generate the graphical elements claimed in the '879 patent, such as the video control icon and the control panel, as well as graphics or video for other applications in the foreground. *Id.* That the accused products <u>also</u> perform tasks traditionally associated with televisions, mobile phones, cameras, and camcorders does not impact the infringement analysis. Samsung's motion should be denied.

**C. Even if the Court Restricts the Claims to a "General Purpose Computer," the Accused Products Satisfy that Limitation and Literally Satisfy the "Control Panel" Limitation.**

AMD requests that the Court deny Samsung's motion even if the Court adopts Samsung's proposed limitation that to constitute a "computer display," a display must be connected to a "general purpose computer." The accused products contain components found in "general purpose" computers and perform functions typically associated with "general purpose" computers. Wolfe Decl. ¶¶ 54-64. Based on the evidence AMD has submitted with this motion, a reasonable jury could find that each accused product satisfies the "control panel" limitation. AMD therefore requests that the Court deny Samsung's motion.

As discussed above, AMD agrees that not all televisions, phones, cameras, and camcorders in the world are "computers," and certainly not "general purpose" computers. This is true, for example, of conventional consumer electronic devices that do not process programming instructions such as analog televisions, non-digital telephones, film cameras, and analog camcorders. Wolfe Decl. ¶ 47.

The accused products perform many tasks traditionally associated with "general purpose" computers. Wolfe Decl. ¶ 54. Many accused products can run multiple software programs. *Id.* Many accused products can download new software programs. *Id.* Many accused products can interact with computer networks and peripherals, such as printers. *Id.* Many accused products allow for high-speed connections to Ethernet, Wi-Fi, and 3G data networks. *Id.* at ¶¶ 34, 54, 55, 57, 60.

The accused Samsung UN46B8000 television, for example, contains computer components that provide regular television viewing and the control functions claimed in the '879 patent, as well as the ability to run applications that typically are associated with a "general purpose" computer. Wolfe Decl. ¶¶ 60-61. The UN46B8000 includes an Ethernet connection and an optional Wi-Fi adapter to connect to a home network or the Internet. *Id.* It can access and display digital audio, pictures, video, and can access other files over the network or from a USB drive. Ex. 46 at SAMAMD0562588-609; Wolfe Decl. ¶ 60. The UN46B8000 can automatically

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

detect software updates that are available from Samsung over the Internet, and download and install those updates without any user interaction. Wolfe Decl. ¶ 60. This is very similar to the "Automatic Update" option commonly available on "general purpose" computers that run Microsoft Windows. *Id.* The UN46B8000 uses standard computer protocols, reads standard file systems, and runs the Linux operating system, which is a standard general purpose computer operating system used by IBM, HP, and Dell. *Id.*; Ex. 46 at SAMAMD0562588-609. The UN46B8000 runs numerous internet applications traditionally associated with personal computers such as Yahoo News, Amazon, YouTube, Flickr, Twitter and weather forecasts, and allows the user to download and play games. Wolfe Decl. ¶ 61. Amazingly, the UN46B8000 performs all of these functions without any external computer or cable box. *Id.*

The accused cell phones also perform tasks traditionally associated with "general purpose computers." The accused Samsung SCH-u940 "Glyde" phone includes a web browser that allows the user to interact with the internet over a wireless network. Wolfe Decl. ¶¶ 55-56; Ex. 21 at AMD003619508-10. The Glyde includes an external typewriter-style keyboard and can download and install email applications that allow users to receive the same email they would receive on their desktop or laptop computers. Wolfe Decl. ¶¶ 55-56. The Glyde also can download and play computer games. *Id.*

The accused Samsung SCH-i910 "Omnia" phone runs a version of Microsoft Windows, can interact with the internet over a 3G wireless network or Wi-Fi, has a touchscreen and a mouse device, and can use an internal display or output video to an external television. Ex. 26 at AMD003620067-69; Wolfe Decl. ¶¶ 57-58. An Omnia user can view and create documents with versions of Microsoft Word, Excel, and PowerPoint, access web sites such as ESPN, Yahoo, and Flickr using Internet Explorer, read and send email, and play games. Wolfe Decl. ¶ 58. A reasonable jury presented with a device with a mouse, display, processor, memory, network connection, and this functionality could find that it is a "general purpose computer." *Id.*

The accused cameras and camcorders also perform tasks generally associated with general purpose computers. Some of the accused cameras and camcorders are able to install firmware updates, upload pictures and videos to the internet, and allow the user to edit picture and video

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

attributes directly on the device. Wolfe Decl. ¶¶ 62-64. In addition, the computer components in the accused S860 camera and accused SC-HMX10 camcorder can directly connect to and control a printer using a USB cable. Ex. 35 at AMD003620231-33; Ex. 39 at AMD003620350-56; Wolfe Decl. ¶¶ 62, 64. The SC-HMX10 camcorder can also edit digital movies directly on the device, something that traditionally was done on an external computer. Ex. 39 at AMD00362050-56; Wolfe Decl. ¶ 64.

Each category of products at issue in Samsung's motion contains products that exhibit a wide variety of features associated with "general purpose" computers. The evidence described above and discussed at length in the Declaration of Dr. Wolfe, ¶¶ 54-64, provides a sufficient basis for a reasonable jury to return a verdict that the accused products satisfy Samsung's proposed, unsupported "general purpose computer" limitation. Therefore, even if the Court adopts this unsupported limitation, AMD requests that Samsung's motion be denied.

**D. If the Court Restricts the Claims to a "General Purpose Computer Operating in a Windows-Based Environment," the Accused Products Satisfy the "Control Panel" Limitation Under the Doctrine of Equivalents.**

Even if the Court adopts all of Samsung's proposed limitations on the term "control panel," a genuine issue of material fact still exists regarding whether the accused products satisfy that limitation under the doctrine of equivalents.

1. The Accused Control Panel in Each Accused Samsung Product Is Equivalent to the Claimed "Control Panel."

A finding of infringement under the doctrine of equivalents requires a showing on a limitation-by-limitation basis that the accused product performs substantially the same function in substantially the same way to achieve the same result as each claim limitation. *Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009). Identification of a claim element's function, way, and result "focuses on an examination of the claim and the explanation of it found in the written description of the patent." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

The '879 element at issue is "control panel." The function of the "control panel" in the '879 claims and specification is to allow the user to input desired adjustments to the attributes of

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

live video. ’879 at claims 1-24; 2:10-15; 3:23-25; 3:34-42; 3:46-50 (Ex. 1); Wolfe Decl. ¶¶ 68-69. The way the “control panel” performs this function is by reading and executing programming instructions stored in memory (1) to calculate color and brightness values for pixels in the graphical user interface and provide those pixels to the display, and (2) to receive inputs from the graphical user interface so that the processing unit can process those inputs and output the desired adjustment. ’879 at claims 1-24; 2:7-15; 1:58-60; 2:53-60; 3:20-25; 3:31-45; 3:46-50 (Ex. 1); Wolfe Decl. ¶ 70. As a result, the user is able to adjust the live video in a controlled manner. ’879 at claims 1-24; 2:10-15; 3:23-25; 3:34-42; 3:46-50 (Ex. 1); Wolfe Decl. ¶ 71.

All Samsung accused products have a display. Wolfe Decl. ¶ 71. The area of the display containing control functions in each Samsung accused product performs substantially the same function, in substantially the same way, to achieve the same result as the claimed “control panel.” Wolfe Decl. ¶¶ 65, 68-81. Therefore, a reasonable jury could find that the structures in the accused products are insubstantially different than the claimed “control panel,” and Samsung’s motion should be denied.

2. Samsung’s Doctrine of Equivalents Arguments Do Not Follow the Proper Legal Framework.

Samsung does not argue that the accused products perform a substantially different function as the “control panel,” or perform the same function as the “control panel” in a substantially different way. Samsung does not address the “function” or “way” of the “control panel” limitation at all. Instead, Samsung argues that substituting the accused products do not achieve the same result as the claimed “control panel.” Samsung’s arguments regarding the “result,” however, do not follow the proper equivalents analysis and must be disregarded.[3]

Samsung argues that “substituting the accused telephones, televisions, camcorders or cameras for the claimed ‘computer’” would “result in entirely different systems from those claimed in the ’879 patent.” Dkt. #435 at 13-14. This analysis violates both the requirement that

[3] AMD incorporated its equivalents analysis for the claimed “control panel” in AMD’s Final Infringement Contentions, so Samsung has had notice of AMD’s positions since December 2009. Samsung’s failure to address the “function” or “way” in its brief is a concession that it agrees that the accused products perform substantially the same function in substantially the same way.

the equivalents analysis be performed on a limitation-by-limitation basis and the principle that the function, way, and result must be determined by reference to the claims and specification.

First, Samsung improperly considers only the device as a whole, not the "control panel" limitation at issue. Dkt. #435 at 13 ("[N]o reasonable finder of fact could find that substituting the accused telephones, televisions, camcorders or cameras for the claimed 'computer' achieves the same result as the claims of the '879 patent. Rather such substitutions result in entirely different systems from those claimed in the '879 patent.") (emphasis added). The Supreme Court has rejected such an analysis. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997) ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."). The result of providing a control panel cannot be "a system that one 'works upon,'" as Samsung asserts. That result has nothing to with the invention which provides for controlling background video. The result of providing a control panel is that the user can adjust background video in a controlled manner.

Second, Samsung fails to consider the claims and specification of the '879 patent to identify the proper function, way, and result of the "control panel" limitation. *AquaTex*, 479 F.3d at 1326. Instead, Samsung relies solely upon unsupported expert opinion, which also fails to consider the claims or specification. Samsung's equivalents analysis has no basis in the proper legal framework.

3. The Specific Exclusion Principle Does Not Exclude Televisions, Phones, Cameras, and Camcorders from the Claimed "Control Panel."

Samsung incorrectly states that the Court specifically excluded televisions, phones, cameras and camcorders from the scope of the '879 claims when it construed the term "control panel" to require a computer display. Under the specific exclusion principle, equivalent subject matter cannot "embrace a structure that was specifically excluded from the claims." *Scimed Life Systems, Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001).

Samsung's argument rests on a mistaken reading of the Court's Claim Construction Order. As discussed above, AMD understands that the Court did not find that the term "control panel" specifically excludes any products, but rather that to satisfy the limitation, a product must contain

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

a "computer display." AMD understands the Court's comments regarding televisions, phones, cameras, and camcorders to mean that the claimed "control panel" does not cover those devices unless they contain a "computer display." For example, the Court explicitly contemplated that a television could satisfy "computer display" if connected to a "computer." Dkt. #255 at 32 ("[C]laim 5 discloses that a television could be used for a computer display."). The Court did not limit "computer." AMD therefore does not believe that the Court already has excluded all products named "television," "phone," "camera," or "camcorder" from the scope of the claims, which the intrinsic record would not support.

Samsung's reliance on *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.* therefore is misplaced. 73 F.3d 1573, 1582 (Fed. Cir. 1996). In *Athletic Alternatives*, the court declined to apply the doctrine of equivalents because the proposed equivalent was "specifically excluded from the scope of the claims" during claim construction. *Id.* Here, the Court has not issued such a broad exclusion. Instead it has limited the literal scope of the claims to devices that contain a "computer display."

Federal Circuit cases after *Athletic Alternatives* have made clear that specific exclusion applies in "binary" situations where there are only two structural options, and the patentee's claiming of one structural option implicitly and necessarily precludes the capture of the other structural option. *Scimed*, 242 F.3d at 1346 ("[B]ecause the scope of the claim was limited in a way that plainly and necessarily excluded a structural feature that was the opposite of the one recited in the claim, that different structure could not be brought within the scope of patent protection through the doctrine of equivalents."); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998) (subject matter is "specifically excluded" from coverage under the doctrine of equivalents if its inclusion is "inconsistent with the language of the claim"); *see also, e.g.*, *Moore, U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 394, 400 (Fed. Cir. 2000) (holding that a claim requiring adhesive to extend "the majority of the lengths" of a form specifically excluded adhesive extending a minority of the length of a form under the doctrine of equivalents); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1561 (Fed. Cir. 1997) (holding that a claim requiring "an inert gas atmosphere" specifically excluded

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

reactive gases under the doctrine of equivalents).

Displays in televisions, phones, cameras, and camcorders are not "opposites" of "computer displays," or even displays coupled to "general purpose computers operating in a windows-based environment," as Samsung has proposed. That is, the term "control panel" is not a "binary" term with only two structural options where specific exclusion could apply so that claiming one of the options specifically excludes the other option. Instead, Samsung asks the Court to broadly expand the specific exclusion principle to the extent that nothing could ever be equivalent to a computer display. However, the Federal Circuit has made clear that "any analysis of infringement under the doctrine of equivalents necessarily deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim." *Ethicon*, 149 F.3d at 1317 (emphasis added). If there can be no possible equivalent to the claimed computer display as Samsung argues, the specific exclusion principle has swallowed the entire doctrine of equivalents. The Court should not allow Samsung's unprecedented expansion of the specific exclusion principle.

4. The Scope of Equivalents for the Orr '879 Patent Does Not Encompass the Prior Art.

In a one-sentence footnote, Samsung argues that AMD is "barred from using the doctrine of equivalents" to "extend" the scope of the '879 claims to the Samsung accused products so as to ensnare the prior art. Dkt. #435 at 15, n. 6. Under an ensnarement analysis, the Court looks at a hypothetical claim that is broad enough in scope to literally read on the accused devices and determines whether the hypothetical claim would have been allowed by the PTO in view of the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990). "If the hypothetical claim could have been allowed, then prior art is not a bar to infringement under the doctrine of equivalents." *Id.*

Assuming that the Samsung accused products do not already literally infringe the '879 patent, a hypothetical construction of the '879 patent claims where the "control panel" limitation is read to include phone, camera, camcorder or television displays does not ensnare the prior art. AMD's expert, Dr. Andrew Wolfe, has reviewed Samsung's prior art references cited in Dr.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

Grimes's declaration and has determined that none of Samsung's prior art references invalidate the claims of the '879 patent when the "control panel" claim limitation is read to include phone, camera, camcorder and television displays. Wolfe Decl. ¶¶ 66-67. Samsung fails to provide any evidence that a hypothetical claim where "control panel" is read to include phone displays was present in the prior art. Grimes Decl. ¶ 4 (omitting phones from the list of prior art user interfaces available at the time of the '879 patent).

The proper ensnarement inquiry is whether the claims of the '879 patent as a whole were present in the prior art when "control panel" is read to include phone, computer, camera or television displays. *Wilson*, 904 F.2d at 684 (stating that the proper inquiry is "whether that hypothetical claim could have been allowed by the PTO over the prior art") (emphasis added). Samsung's expert improperly focuses on hypothetical claim limitations and not on hypothetical claims. He opines that a hypothetical "control panel" limitation that includes phones, cameras, camcorders and televisions was present in the prior art, but does not offer any opinion as to whether the hypothetical claims as a whole were present in the prior art. *See* Grimes Decl. at 4 ("[T]he particular user interfaces AMD has accused of infringing the '879 patent were available in at least televisions, cameras, and camcorders at the time of the '879 patent."). Samsung fails to provide any evidence that a hypothetical claim where "control panel" is read to include phone displays was present in the prior art. Without a comparison of the prior art to the hypothetical claims as a whole, Samsung's argument fails.

## IV. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Products Display the Claimed "Application . . . In Focus."

Samsung apparently wants to limit the claim term "application" to something that can be "worked upon" in order to support its noninfringement argument that a user cannot "work upon" picture-in-picture windows, battery meters, and time codes. That proposed construction conflicts with the parties' agreed construction of "in focus," which comes verbatim from the inventor's lexicography in the specification. Samsung therefore asks the Court not only to construe "application," but also to re-construe the term "in focus" to narrow it from what the inventor explicitly told the public. AMD requests that the Court refuse Samsung's attempt to read

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

additional limitations into the claims from extrinsic evidence.

Samsung has not proposed a construction for "application," and therefore has not properly addressed the scope of the term. Instead, Samsung has asked that the Court incorporate many different limitations on the term in order to exclude the accused products. Therefore, Samsung has denied AMD and the Court the ability to assess whether a genuine issue of material fact exists regarding whether the accused products fall within the scope of Samsung's absent construction. AMD requests that the Court deny the portion of Samsung's motion relating to the term "application" on that basis and adopt AMD's proposed construction discussed below. The discussion below proposes a proper construction for "application" and addresses why the many varied limitations Samsung attempts to place on the term are improper and not supported by the intrinsic record.

**A. In 1997, One of Ordinary Skill Would Understand "Application" to Mean "Software that Enables a Computer to Accomplish a Task."**

AMD proposes that the Court construe the term "application" to mean "software that enables a computer to accomplish a task." This is the ordinary meaning of the term in the context of the '879 patent to one of skill in the art in 1997. Wolfe Decl. ¶¶ 83-90. Contemporaneous dictionaries support this construction. For example, one dictionary defines "application" as:

> 1. The system or problem to which a microcomputer can be devoted. Applications range from the computational type (in which arithmetic operations predominate) to the processing type (in which data-handling operations are the major function).
>
> 2. A set of computer programs and/or subroutines used to solve problems and perform specific tasks in a particular application.

*McGraw-Hill Illustrated Dictionary of Personal Computers* (4th ed. 1995) at 20 (Ex. 48). This indicates that an "application" allows a computer to "solve problems" or "perform specific tasks." AMD's proposed construction "accomplish a task" encompasses these concepts.

The claimed "application" is always recited as being "in focus," which the parties agreed means "actively being displayed and/or being worked upon." Dkt. #92 at 2. AMD agreed to this definition of "in focus" because it is expressed as lexicography in the specification— "applications that were in focus (i.e., actively being displayed and/or being worked upon)." '879

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

at 1:42-45 (emphasis added) (Ex. 1). An "application" therefore must be capable of being "actively displayed" or being "worked upon." AMD's proposed construction, "software that enables a computer to accomplish a task," is consistent with the inventor's definition of "in focus." Samsung's proposed limitations, however, are not.

1. The Specification Does Not Limit "Application" to Something that Is Capable of Being "Worked Upon."

That the patent consistently describes and claims "applications" as being "in focus (i.e., actively being displayed and/or being worked upon)" demonstrates that an "application" must be capable of either "actively being displayed" or "being worked upon" or both. The patentee's chosen language expressly uses "and/or" instead of only "and." Samsung's request that the Court restrict "application" to something a user can work upon[4] therefore asks the Court to ignore the patentee's chosen words. *See* Dkt. #435 at 16 ("[T]he term 'application' referred to a computer program that a user performed work upon . . . ."). The specification cannot implicitly define "application" in some other way when the inventor's clear intent is demonstrated by the express definition of "in focus." *Phillips*, 415 F.3d at 1316.

The specification also does not contain any clear and unequivocal disclaimer of any type of "application," and Samsung does not argue that one exists. Samsung's focus on what it identifies as the purpose of the invention, therefore, carries no weight. *Martek Biosciences*, 579 F.3d at 1383 ("[A]bsent a clear disclaimer of particular subject matter, the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context." (quotation omitted)). The claims and specification demonstrate that an "application" must be capable of being "in focus," and that "in focus" means either "actively being displayed" or "being worked upon." Therefore, an "application" cannot be limited to something that can be "worked upon."

2. "Actively" Being Displayed in the Agreed Construction of "In Focus" Cannot Mean "Capable of Being Worked Upon."

In order to avoid the conflict between Samsung's proposed limitation on "application" and

[4] In this section relating to "application," AMD has addressed what it understands are Samsung's proposed limitations. Samsung has not articulated what limitations it asks the Court to adopt.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

the inventor's clear teaching in the specification, Samsung proposes that the Court modify the agreed construction of "in focus." Samsung now asks the Court to re-construe this term to exclude the first part of the construction—"actively being displayed." This proposal is a second attempt to restrict an "application" to something that can be "worked upon."

Specifically, Samsung proposes that "the Court should construe 'actively being displayed' to refer to the window in a windows-based environment capable of receiving cursor movements, commands, and text entry." Dkt. #435 at 19. In other words, Samsung asks the Court to construe "actively being displayed" to mean capable of being worked upon.

The support for Samsung's proposed limitation of the inventor's words comes again from its perceived purpose of the invention and extrinsic evidence. Again, the purpose of the invention cannot limit the claims absent a clear disclaimer of claim scope. *Howmedica*, 540 F.3d at 1345. Samsung's extrinsic evidence consists of self-serving dictionary definitions and expert testimony that apply only to a windows-based computer. Because the purpose cannot limit the claims, extrinsic evidence limited to that purpose also cannot limit the claims. *Id.*

In any event, Samsung's extrinsic evidence explains that even in a dictionary written by Microsoft, the creator of Microsoft Windows, "active" can mean "[a]n adjective describing the program, document, device, or portion of the screen that is currently operational." Haskett Decl. Ex. 3 at 9. This statement does not limit "active" to something that can be "worked upon" or is "capable of receiving cursor movements, commands, and text entry." Instead it uses the broad term "operational." Even Samsung's extrinsic evidence provides no support for rewriting the inventor's definition of "in focus."

Finally, the claimed requirement that the "application" be "in focus" does not require that the "application" be capable of going out of focus. The claims do not address whether the "application" can go out of focus. Under Samsung's proposal, no device would ever infringe, because by virtue of an "application" always remaining "in focus," which satisfies the claims, the patentee could not demonstrate that the accused "application" could go out of focus. Going out of focus is not claimed and cannot limit the term "in focus."

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

3. The Claim Term "Application" Does Not Exclude an "Icon."

a. The Specification Demonstrates that the Claimed "Application" Can Be an Icon.

The '879 specification illustrates that the claimed "application . . . in focus" covers icons. The specification provides one figure, Figure 1, to illustrate the interaction of the claimed control panel, background video, and applications in focus. '879 at Fig. 1 (Ex. 1). In Figure 1, "icons 18-26" are identified as "in focus, i.e., overlaying the live background video." *Id.* at 2:18-25. The specification states that "the live video remains in the background" once the control panel is presented. *Id.* at 2:30-31. Therefore the icons (18-26) remain "in focus," as claimed. Figure 1 does not illustrate a "window" in the foreground, a word processing document, or any of the other things to which Samsung contends the term "application" must be restricted. The claims should not be read to exclude the Figure 1 embodiment (the only illustrated embodiment) that shows that icons remain "in focus" when the control panel is provided. "Application" should not exclude an icon so long as the icon satisfies the definition of "in focus," which is "actively being displayed and/or being worked upon."

The use of the different terms "icon" and "application" in the claims does not demonstrate that the patentee intended them to have mutually exclusive meanings. The claims simply recite the "video control icon" as an element separate from the "application." The claims also recite parts of the control panel, such as the "volume adjust icon" and "mute icon," as elements separate from the "application." These recitations show only that an infringing device must contain an "application" in addition to the various claimed "icons." The claims do not suggest in any way that another, unclaimed "icon" never can satisfy the "application" element. The presumption that different claim terms have <u>different</u> meanings does not logically extend to Samsung's conclusion that different claim terms must have <u>mutually exclusive</u> meanings.

b. The Patentee Did Not Disclaim a Battery Meter or Other "Icon" from the Scope of "Application" During Prosecution.

Prosecution disclaimer can arise through the applicant's arguments to the patent examiner only if the arguments "constitute clear and unmistakable surrenders of subject matter." *Cordis*

*Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). The applicant's discussion during prosecution of a reference that described a "battery meter" does not rise to a clear and unmistakable surrender of an "icon" from the term "application" because the file history argument at issue did not relate to the claim term "application"—it related to the claim term "video control icon."

The examiner found that U.S. Patent No. 5,668,571 (Pai) contained the "video control icon" limitation claimed in the '879 application. The applicant responded that "Applicant respectfully submits that Pai fails to disclose, among other things, the video control icon relating to the live video that is being presented as a background on a display." Haskett Decl. Ex. 6 at AMDFH000000201. In addition, "[m]ore specifically, Pai directly discloses the hardware icon being a general icon relating to any type of icon found on a normal computer display, such as a trash can or a battery symbol." *Id.*

The applicant's statements do not relate to the term "application" and do not discuss whether an "icon" can satisfy the claim term "application." The statements do not contradict the specification's teaching that an icon can be the "application . . . in focus." The statements explain only that the "video control icon" the examiner identified did not "relate to live video." That the applicant referred to the battery symbol as an "icon" and not an "application" is not surprising because the claim term at issue was "video control icon." The applicant's statement, which is irrelevant to the term "application," cannot be converted to a "clear and unmistakable surrender" through Samsung's misreading of the claims and specification, which do not distinguish "icons" from "applications." The file history does not limit the term "application."

4. <u>The Patentee Did Not Disclaim a Video Window from the Scope of "Application" During Prosecution.</u>

The applicant also did not disclaim a video window, such as picture-in-picture, from the scope of "application" during prosecution. The applicant's comments cited by Samsung explain that U.S. Patent No. 5,754,170 (Ranganathan) does not disclose that "live video remains in the background and an application that was in focus remains in focus." Haskett Decl. Ex. 6 at AMDFH000000172-73. The applicant distinguished the Ranganathan reference on the basis that

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

it did not disclose video in the background, not on the basis that a video window could not be an "application."

The applicant explained that Ranganathan teaches that "[i]n one embodiment, multiple video windows may be used." This does not constitute a "clear and unmistakable surrender" of a video window from "application" because the two video windows taught in Ranganathan are placed in separate areas of the screen, so one does not overlay the other. Haskett Decl. Ex. 7 at 13:14-16 ("Two or more movie windows may be separately overlaid onto the graphics data . . . ."); Wolfe Decl. ¶ 90. That is, neither is in the foreground or the background compared to the other. *Id.* Ranganathan therefore does not teach, as the applicant explained, "having an application in a foreground position with the live video being in the background," because Ranganathan does not teach any video in the background. Haskett Decl. Ex. 6 at AMDFH000000173. The applicant did not distinguish Ranganathan on the basis that a video window is not an "application," so the file history does not limit "application" to exclude a video window.

5. <u>Samsung Cannot Now Exclude Products that It Claims Do Not Meet the "Application . . . In Focus" Limitation Because AMD Relied on Samsung's Proposed Exemplar Groupings.</u>

Samsung should be precluded from asking the Court to find that 29 phones do not infringe because they do not display a battery meter in camera mode. Samsung grouped these 29 phones for infringement purposes with phones that do display a battery meter in camera mode. Samsung even had the chance to reorganize its proposed exemplar groupings after AMD served its FICs, if Samsung thought that the product AMD charted did not adequately represent its group for infringement purposes. Samsung did not do so, and AMD has relied on Samsung's proposed groupings, so AMD requests that the Court deny Samsung's belated attempt to separate products from the agreed groupings when it should have done so in January.

Samsung proposed the groupings that led to the parties' Stipulation Regarding Exemplar Products for the Purposes of Proving Infringement / Non-infringement (Dkt. #264), which the Court entered as an Order (Dkt. #278). For the '879 patent, the parties agreed to groupings in that

stipulation, but did not reach agreement to exemplar products. In the time leading to AMD's FICs, Samsung ignored AMD's request for an explanation regarding why AMD's proposed exemplars were insufficient. AMD expected that any product in each of Samsung's proposed groups would adequately represent the group based on Samsung's assertion that it "selected exemplar groupings based on a visual analysis of the accused user interfaces." Fahrenkrog Decl. Ex. 49 (Letter from S. Ernst to A. Fahrenkrog, Nov. 13, 2009).

Having been ignored by Samsung, AMD charted in its FICs the exemplar product that AMD had proposed for each group. Samsung then had three weeks, under the Court's Order, to review AMD's FICs and propose modifications to the agreed exemplar groupings if the charted exemplars did not adequately represent the group. Dkt. #278 at § XIV.[5] The January 14, 2009, deadline passed without Samsung proposing any amendment to the exemplar groupings for the '879 patent.

The Court ordered that Samsung could amend the agreed exemplar groupings following AMD's FICs, but also ordered that Samsung had a hard deadline of January 14. Samsung missed that deadline and never sought to amend the groupings. AMD requests, therefore, that the Court deny Samsung's request for partial summary judgment that 29 phones do not display a battery meter in camera mode. AMD's FICs for phones clearly accused the camera mode battery meter as the claimed "application." *See, e.g.*, Haskett Decl. Ex. 1 at Ex. GG p. 9, Ex. HH p. 10, Ex. II p. 11. Samsung should have taken its opportunity to re-group the phones at issue in its motion according to the deadlines in the Court's Order. For the parties' exemplar Stipulation and the Court's Order to have meaning, Samsung's motion must be denied.

**B. The Accused Products Display an "Application . . . In Focus."**

The accused exemplar phones, cameras, and camcorders display a battery meter "application" in focus when the background video is adjusted. Exs. 25, 29, 34, 38, 41, 45; Wolfe Decl. ¶¶ 91-93. This battery meter satisfies the "application . . . in focus" limitation when "application" is properly construed as "software that enables a computer to accomplish a task."

[5] Samsung conditioned its agreement to the exemplar Stipulation on this provision; AMD did not reserve the right to amend the exemplar groupings it proposed for its own products.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW MINNEAPOLIS

In each accused exemplar product, the battery meter is provided by a software routine running on the product's processing unit.  Wolfe Decl. ¶ 92.  That software enables the computer components (processing unit and memory) within each accused exemplar product to provide a battery meter on the display that is updated as the battery level of the device increases or decreases.  *Id.*  The battery meter software therefore "enables a computer to perform a task" of providing a feature that informs the user of the device's remaining battery life.  *Id.*  Therefore, the battery meter in each product is an "application," as the term is properly construed.

The battery meter in each accused product also remains "in focus" when the control panel is displayed on the screen.  Exs. 25, 29, 34, 38, 41, 45; Wolfe Decl. ¶ 93.  The battery meter is "actively being displayed" because it is being displayed on the screen without being obscured and is actively being updated based on the remaining battery level of the device.  *Id.*  Therefore, the battery meter in each product is "in focus."

Based on the evidence presented by AMD describing the battery meters in the accused phones, cameras, and camcorders, a reasonable jury could find that those battery meters satisfy the limitation "application . . . in focus" under the proper construction of the term.  Therefore, a genuine issue of material fact exists regarding the presence of this limitation in the accused phones, cameras, and camcorders.

The accused televisions display a picture-in-picture "application . . . in focus" when adjusting background video.  The picture-in-picture window satisfies the proper construction of "application," "software that enables a computer to accomplish a task."  Wolfe Decl. ¶¶ 94-95.  The creation, size, and placement of the picture-in-picture window is accomplished using software in the accused televisions.  Wolfe Decl. ¶ 94.  That software enables the computer components within each accused television to accomplish the task of displaying a second video window for the viewer.  *Id.*

The picture in picture window also is presented "in focus," or "actively being displayed," in the accused televisions.  Exs. 8, 15; Wolfe Decl. ¶ 95.  The picture in picture is continuously updated with a video signal, and therefore is "actively" being displayed on the screen.  *Id.*

Based on the evidence presented by AMD describing the picture-in-picture windows in

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

the accused televisions, a reasonable jury could find that those picture-in-picture windows satisfy the limitation "application . . . in focus" under the proper construction of the term. Therefore, a genuine issue of material fact exists regarding the presence of this limitation in the accused televisions.

**V. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Products Display "Live Video."**

As with the other terms at issue in Samsung's motion, Samsung proposes no construction to allow AMD or the Court to determine the scope of "live video." Instead, Samsung asks the Court to construe the term "solely to exclude the accused device[s]," phones and cameras, which is error. *Cohesive Techs.*, 543 F.3d at 1367-68. Without a proposed scope of the claim term, neither AMD nor the Court can evaluate whether the accused products satisfy the limitation. That is, it cannot be determined whether or not facts regarding the accused products are "material." AMD therefore requests that the Court deny Samsung's motion for failure to meet its burden of production sufficient to support a motion for summary judgment.

Below, AMD has proposed a construction for "live video" based on the ordinary meaning to one of skill in the art and has explained why the intrinsic record supports that construction and does not support Samsung's proposed limitations. If the Court does not deny Samsung's motion for failure to meet its burden, AMD requests that the Court adopt AMD's construction and deny Samsung's motion for summary judgment on that basis.

**A. In the Context of the '879 Patent, "Live Video" Means "Video that Is Currently Being Displayed."**

One of ordinary skill in the art in 1997, reading the '879 intrinsic record, would understand "live video" to mean "video that is currently being displayed." Wolfe Decl. ¶¶ 96-103. The specification does not place any type of restriction on "live video," and the claims demonstrate that it has broad meaning and encompasses video received by the processing unit from many different sources.

1. The Specification Does not Define "Live Video" or Disclaim Any Video Source from the Scope of "Live Video."

The '879 claims and specification give several examples of "live video" but do not define the term or disclaim any particular types of video sources. Instead, the '879 claims and specification demonstrate that "live video" refers to any type of video that is being processed by the processing unit and displayed. Independent claims 1 and 6 recite several sources for "live video," including video received from "a DVD player, live television broadcast, a recording device, a satellite television broadcast and a cable television broadcast." '879 at 3:61-64, 4:20-23 (Ex. 1). The other independent claims 11, 14, 17, and 21 do not recite these specific types of "live video." This distinction shows that "live video," when used alone, includes video received from sources broader than the sources enumerated in claims 1 and 6. Wolfe Decl. ¶ 98.

The types of "live video" listed in claims 1 and 6 also conflict with how Samsung contends the "term is defined in the '879 patent." Dkt. #435 at 24. Samsung points to the specification's statement that "video images may be received from a live television broadcast, video cassette player, satellite television, cable television, or DVD players." '879 at 1:20-22 (Ex. 1). This list cannot restrict the sources for "live video" because it does not express an intent to define the term and also does not contain a "recording device" as recited in claims 1 and 6.

In addition, the specification uses the permissive word "may," not the restrictive word "must," when describing possible sources for "live video." This is consistent with the specification's other open-ended descriptions of potential sources for and attributes of "live video." *See* '879 at 3:10-12, 3:36-42 (Ex. 1). For example, the specification states "[a]ttributes of the live video include changing the channel, volume adjust, muting, selecting a previous channel, etc." '879 at 1:37-39 (emphasis added) (Ex. 1). These open-ended explanations cannot restrict the claims. Wolfe Decl. ¶¶ 100-101.

"Live video" also cannot be limited to video sources that can be "paused, muted, fast-forwarded or rewound," as Samsung seems to propose. Dkt. #435 at 24. Each of these specific adjustments to "live video" are recited in claim 22, among other claims. Claim 22 adds the recited adjustments to independent claim 21, which demonstrates that attributes of "live video"

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

should not be restricted to those explicitly recited in the dependent claims. Wolfe Decl. ¶ 99. In addition, claim 22 also recites a "volume" adjustment, demonstrating that "live video" cannot be as limited as Samsung proposes. That is, reading pause, mute, fast-forward, and rewind adjustment limitations into "live video" would make dependent claim 22, which recites a volume adjustment in addition to these three, broader than independent claim 21. This construction cannot be correct.

Samsung's proposed limitation on "live video"—which gives no meaning to the term but solely excludes the accused devices—excludes video in its most "live" sense, video received directly from a camera sensor. Wolfe Decl. ¶ 103. The claims and specification demonstrate that "live video," in the context of the '879 patent, means "video that is currently being displayed." Wolfe Decl. ¶¶ 97-103.

2. <u>Inventor Testimony Cannot Limit the Scope of "Live Video."</u>

As explained above with respect to the term "control panel," "inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction." *Howmedica*, 540 F.3d at 1347. This applies equally to the testimony of Mr. Orr cited by Samsung in support of its proposed limitations on "live video."

**B. A Genuine Issue of Material Fact Exists Regarding Whether the Accused Phones and Cameras Display "Live Video."**

Under the proper construction of "live video," "video that is currently being displayed," the accused phones and cameras satisfy this limitation. Wolfe Decl. ¶¶ 104-106. In camera mode, the computer components within the accused products, including a camera sensor, process incoming video and display it on the screen. Wolfe Decl. ¶ 105. The camera image that appears on the screen in the accused phones and cameras is video and is "currently being displayed," so it satisfies the proper construction of "live video." Wolfe Decl. ¶ 106. Based on the evidence presented by AMD, a reasonable jury could find that the accused phones and cameras satisfy this limitation. Therefore, AMD requests that the Court deny Samsung's motion for these accused products.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

**CONCLUSION**

Samsung has not met its burden of production for its motion because it has not proposed constructions for any of the claim terms at issue. Without knowing the scope of the claims, the Court cannot determine whether a fact about the accused products is material.

The term "control panel" already has been construed and needs no additional construction. Samsung's additional limiting arguments are not supported by the intrinsic record and cannot be adopted.

The term "application" in the context of the '879 patent means "software that enables a computer to accomplish a task." Samsung's limiting arguments contradict the intrinsic record.

The term "live video" in the context of the '879 patent means "video that is currently being displayed."

Under the proper construction of the claims, genuine issues of material fact exist regarding whether the accused televisions, phones, cameras, and camcorders literally infringe. Even under Samsung's limiting arguments, genuine issues of material fact exist regarding whether the accused products infringe under the doctrine of equivalents.

For all of these reasons, AMD respectfully requests that the Court deny Samsung's motion for summary judgment of noninfringement of the '879 patent.

DATED: April 16, 2010

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: [signature]

William H. Manning
Aaron R. Fahrenkrog

**ATTORNEYS FOR PLAINTIFFS ADVANCED MICRO DEVICES, INC. AND ATI TECHNOLOGIES ULC**