1  ROBERT T. HASLAM (Bar No. 71134)
   RHaslam@cov.com
2  MICHAEL K. PLIMACK (Bar No. 133869)
   MPlimack@cov.com
3  CHRISTINE SAUNDERS HASKETT (Bar No. 188053)
   CHaskett@cov.com
4  SAMUEL F. ERNST (Bar No. 223963)
   SErnst@cov.com
5  COVINGTON & BURLING LLP
   1 Front Street, 35th Floor
6  San Francisco, California 94111
7  Telephone: (415) 591-6000
   Facsimile: (415) 591-6091
8

9  ALAN H. BLANKENHEIMER (Bar No. 218713)
   ABlankenheimer@cov.com
10 LAURA E. MUSCHAMP (Bar No. 228717)
   LMuschamp@cov.com
11 JO DALE CAROTHERS (Bar No. 228703)
   JCarothers@cov.com
12 COVINGTON & BURLING LLP
   9191 Towne Centre Drive, 6th Floor
13 San Diego, California 92122
14 Telephone: (858) 678-1800
   Facsimile: (850) 678-1600
15

16 Attorneys for Defendants and Counterclaimants
   SAMSUNG ELECTRONICS CO., LTD., et al.
17

18                    UNITED STATES DISTRICT COURT

19                   NORTHERN DISTRICT OF CALIFORNIA

20 |                                           | Case No. 3:08-CV-0986-SI
   | ADVANCED MICRO DEVICES, INC., et al.,     |
21 |                                           | **REPLY MEMORANDUM IN SUPPORT**
   |      Plaintiffs and Counterdefendants,    | **OF DEFENDANTS AND**
22 |                                           | **COUNTERCLAIMANTS' MOTION**
   |                                           | **FOR SUMMARY JUDGMENT OF**
   | v.                                        | **NON-INFRINGEMENT OF U.S.**
23 |                                           | **PATENT NO. 6,784,879**
   | SAMSUNG ELECTRONICS CO., LTD., et al.,    |
24 |                                           | DATE:  May 5, 2010
   |      Defendants and Counterclaimants.     | TIME:   3:30 p.m.
25 |                                           | COURTROOM: 10, 19th Floor
   |                                           | JUDGE:  The Honorable Susan Illston
26
27                                              **PUBLIC/REDACTED VERSION**

28

**TABLE OF CONTENTS**

Page No.

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT .......................................................................................................3

        A.      Samsung Has Proposed Constructions for The Claim Terms That
                Remain in Dispute on This Motion. ........................................................3

        B.      The Accused Products Do Not Infringe The "Control Panel"
                Limitation. ...............................................................................................4

                1.      The "computer" limitation does not merely repeat the separate
                        "processing unit" and "memory" limitations...............................4

                2.      Because the accused products are not "computers," they do not
                        meet the "control panel" limitation..............................................9

                3.      The accused products do not meet the "control panel"
                        limitation under the doctrine of equivalents. .............................10

                        a.      The accused products are not equivalent to computers. ...............10
                        b.      The specific exclusion principle bars application of the DOE. ......10
                        c.      Application of the DOE would ensnare the prior art....................11

        C.      The Accused Products Do Not Infringe the "Application . . . In Focus"
                Limitation. ...............................................................................................11

        D.      The Accused Telephones and Cameras Do Not Meet the "Live Video"
                Limitation of All Asserted Claims.........................................................14

III.    CONCLUSION...................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**CASES**

4

*Affymetrix, Inc. v. Multilyte Ltd.,*
    No. C 03-03779 WHA, 2005 WL 1513147 (N.D.Cal. June 23, 2005) ..................................10

5

*Anascape v. Nintendo,*
    No. 2008-1500, 2010 WL 1441772 (Fed. Cir. Apr. 13, 2010)....................................................5

6

*Ariad Pharms. v. Eli Lilly & Co.,*
    No. 2008-1248, 2010 WL 1007369 (Fed. Cir. Mar. 22, 2010) .................................................8

7

8

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,*
    73 F.3d 1573 (Fed. Cir. 1996) ..........................................................................................10, 11

9

*CVI/Beta Ventures, Inc. v. Tura LP,*
    112 F.3d 1146 (Fed. Cir. 1997) .................................................................................................6

10

11

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.,*
    540 F.3d 1337 (Fed. Cir. 2008) ............................................................................................5, 7

12

13

*Martak Biosciences Corp. v. Nutrinova, Inc.,*
    579 F.3d 1363 (Fed. Cir. 2009) ...............................................................................................7

14

*Novartis Pharms. Corp. v. Abbott Labs.,*
    375 F.3d 1328 (Fed. Cir. 2004) ..............................................................................................10

15

16

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................5, 6

17

18

*Voice Techs. Group, Inc. v. VMC Sys., Inc.,*
    164 F.3d 605 (Fed. Cir. 1999) .................................................................................................5

19

20

**OTHER AUTHORITIES**

21

18 *Chisum on Patents* § 18.03[2][c][iv] .........................................................................................6

22

23

24

25

26

27

28

## I.    INTRODUCTION

AMD's opposition to summary judgment seeks to relitigate the dispute that this Court already resolved in its claim construction order: whether the '879 patent is directed at an invention that has a computer display, or is instead applicable to televisions, telephones, camcorders, cameras, cash registers, voting machines, automobile engines, and any other product that uses a processor, memory, and programming instructions.  The Court rejected AMD's broad reading of its patent, holding that the "[t]he specification of the '879 patent unequivocally limits this invention to computers," (Dkt. No. 255 at 30); that "[n]one of the intrinsic evidence cited by AMD support th[e] conclusion" that "the '879 patent also encompasses user interfaces in devices such as digital cameras, camcorders, and cell phones," (*Id.* at 32); and that the "control panel" limitation of all asserted claims means "[a]n area of the computer display containing control functions."  *Id.* at 33.

Faced with the "computer display" limitation, AMD attempts to render it meaningless, arguing that because certain of the claims of the '879 patent recite a "processing unit," "memory," and "programming instructions," these terms are the only limits on the definition of the word "computer."  AMD ignores additional claim limitations, which require the computer display to show applications, control panels, and icons—features that are displayed on computers, and not on televisions and cameras.  AMD also ignores the specification, which describes a "computer display," and not a television or camera screen: "The computer further includes a computer monitor which provides visual representations of the data being manipulated.  Such visual representations are originated from, for example, a word processing algorithm, a drawing algorithm, and more recently, the displaying of video images."  '879 patent at 1:15-20.  Only a computer display shows such things as word processing and drawing algorithms—applications that the user "manipulate[s]".  And it is computer displays—and not television screens— that displayed video images only "recently."  Hence, AMD is incorrect that the "computer display" limitation means that only a processor and memory are required.  The claim limitations and the purpose of the invention as described in the specification require a "computer display," as the Court has already ruled.

It is AMD that is attempting to reconstrue the "control panel" limitation because under the

Court's correct construction, the accused products do not infringe its computer patent. Nor can AMD sweep in Samsung's products under the doctrine of equivalents because doing so would ensnare the prior art, would violate the specific exclusion principle, and because no reasonable jury could conclude that the accused products are equivalent to computer displays.

Samsung is entitled to summary judgment on the alternative grounds that AMD has failed to point to anything in the accused products that meets the "application . . . in focus" limitation of all asserted claims. AMD attempts to overcome this by arguing for a nearly boundless definition of the term "application," which would effectively apply to any feature on a display, no matter its purpose and function, including simple icons, such as battery meters and time counters. Further, it leads AMD to argue that television is both "live video" and an "application" at the same time, even though these are separate claim terms. But the intrinsic evidence makes clear that an "application" is not so broad. "Application" refers to a computer program that a user either can perform, or is performing, work upon, such as a word processing program. This is fundamental to the central purpose of the '879 patent—allowing a user to continue to "work[ ] upon" an "application" while adjusting desktop video. This is also why the claims require that the application be "in focus," which the parties agree means "actively being displayed and/or worked upon." Battery meters and timers are not capable of receiving user input  and cannot be worked upon and are therefore not "in focus" applications.

In addition, the patent clearly differentiates between icons, such as the accused battery meters, and applications. Simply put, icons are not applications; the claims use both terms. The specification refers to them in the disjunctive: "or when another icon **or** application is selected." '879 patent at 2:45-46. Dependent claims 13, 16, 20, and 24 all add as additional limitations that the control panel is removed when another "displayed element is selected," where "displayed element" is explained in the specification as "[s]uch displayed elements m[a]y [sic] be another icon **or** an open application." *Id.* at 3:26-27. Thus, AMD's infringement allegations fail for the camera, camcorders, and phones because AMD has not identified an *application* that remains in focus when the alleged "live video" is adjusted. AMD's allegation with respect to TV's is doomed by the

2

1    prosecution history, because the patentee told the PTO that live video in the foreground was the

2    "opposite" of his invention.

3         AMD proposes a construction of "live video" that is similarly broad and divorced from the

4    intrinsic patent evidence in an attempt to argue that the preview image in a camera screen is "live

5    video."  AMD's argument disregards the specification, which states that "live video" is sourced

6    from a television broadcast or a recording, and again disregards the purpose of the invention.

7    II.    ARGUMENT
          A.    **Samsung Has Proposed Constructions for The Claim Terms That Remain in
8                Dispute on This Motion.**

9         AMD's feigned uncertainty as to whether Samsung has proposed constructions for the

10   additional terms it asks the Court to construe is manifestly untrue.  AMD Br. at 6-7:[1]

11        •    Samsung asked the Court to construe the term "**application . . . in focus**," and argued
               that "[a]t the time of the '879 patent, the term 'application' referred to a computer
12             program that a user performed work upon, and was distinguished from 'utilities' and
               'operating systems.'"  Opening. Br. at 16.

13        •    Samsung asked the Court to construe the term "**actively being displayed**," and argued
14             that "to a person of ordinary skill in the art, 'actively being displayed' is a term of art
               referring to the window in a windows-based environment that is capable of receiving
15             cursor movements, commands, and text entry."  Opening Br. at 18.

16        •    Samsung asked the Court to construe the term "**live video**," and argued that this term
               should be given the definition appearing in the specification: "video images may be
17             received from a live television broadcast, video cassette player, satellite television, cable
               television, or DVD players."  Opening Br. at 24.

18        Moreover, it is unclear why AMD believes Samsung's perceived omission would prevent

19   the Court from engaging in claim construction—that the Court must either deny Samsung's motion

20   or "adopt AMD's proposed constructions."  AMD Br. at 7.  Because claim construction is purely a

21   legal issue, the Court is not bound to accept either party's proposed construction, but need only

22   _____

23        [1] Although AMD was permitted to file an additional 15 pages in opposition and has received
     the special setting it requested—a request that itself contained extensive argument—it appears that
     this argument is merely laying the groundwork for yet another surreply in this matter.  *See* AMD
24   Br. at 7 ("Samsung should not be allowed to propose its own constructions in its reply because
     AMD will not have the opportunity to respond.  If Samsung does propose constructions, its reply
25   brief unquestionably will contain new matter not raised in its opening brief.")  The Court should
     reject any further attempt by AMD to multiply and needlessly complicate these proceedings.  *See,*
26   *e.g.*, Dkt. No. 387 (AMD's Motion for Leave to File a Surreply in Opposition to Samsung's Motion
     to Strike), Dkt. No. 226 (AMD's Motion for Leave to File a Surreply in Opposition to Samsung's
27   Motion for Summary Judgment of Invalidity of the '592 Patent).

28

                                               3
     SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
     OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1    construe the claims correctly under the law.

2    **B.    The Accused Products Do Not Infringe The "Control Panel" Limitation.**

3         **1.    The "computer" limitation does not merely repeat the separate "processing unit" and "memory" limitations.**

4    AMD is correct that "The Court Already Has Construed 'Control Panel.'"  AMD Br. at 4.

5    Nor is Samsung "request[ing] that the Court re-construe 'control panel.'"  *Id.* at 1.  Because the

6    Court construed "control panel" to mean "[a]n area of the computer display containing control

7    functions," (Dkt. No. 255 at 33), and because the Samsung accused products do not have a

8    "computer display," Samsung is entitled to summary judgment of non-infringement.

9    AMD seeks to avoid this result by stripping the term "computer display" of meaningful

10   limits, arguing that "the 'Computer' Described Requires Only a Processing Unit and Memory."

11   AMD Br. at 9.  AMD's argument cannot be reconciled with the claims or the specification.  Certain

12   of the claims require a "processing unit" and "memory" as limitations separate from the "control

13   panel" limitation; but these limitations do not set the only limits on the meaning of the term

14   "computer display."  Rather, all of the claims also require the claimed computer background video,

15   an "application . . . in focus," and a "control panel."

16   In other words, a "computer display," unlike a television and the other devices AMD has

17   accused, displays "applications" that a user manipulates: "word processing algorithms" and

18   "drawing algorithms."  '879 patent at 1:15-20.  The specification, which uses the word "computer"

19   some twenty-two times, describes something more specific than just any device with a processor

20   and memory: "The computer further includes a computer monitor which provides visual

21   representations of the data being manipulated.  Such visual representations are originated from, for

22   example, a word processing algorithm, a drawing algorithm, and, more recently, the displaying of

23   video images."  *Id.*  The "computer display" limitation has real meaning, and refers to a particular

24   device well-known in the art.

25   This is perhaps best illustrated in the patent's figures.  These depict a computer display with

26   different graphical features that a user can "manipulate[ ]": a tile bar, icons, and desktop video:

27

28

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI



AMD focuses exclusively on the part of the specification that discusses a processor and memory. AMD Br. at 9. AMD ignores the rest of the specification, which uses the term "computer" some twenty-two times to describe the background of the invention, the problem to be solved, and the *claimed invention*: "the present *invention* provides a method and apparatus for controlling background video on a *computer* display," ('879 patent at 2:3-4), not a method and apparatus for controlling background video in any system containing a processor and memory.

That the invention is applicable to a "computer display"  ███████████████████████████████████████████████████████████████████████ ████████████████████████████ *See* Opening Br. at 6 (citing Haskett Decl., Ex. 2 at 29:12-30:7)); *see also* '879 patent at 1:29-30 ("Alternatively, the live video may be presented in a *window* of the computer screen . . . .") (emphasis added).[2]

That the claimed inventions are limited to a computer display is also confirmed by the purpose of the claimed inventions as described in the specification—allowing for control of desktop

---

[2] AMD is incorrect that the Court must disregard the inventor's testimony altogether in considering claim construction. "This court in *Markman* did not hold that the inventor cannot explain the technology and what was invented and claimed; the Federal Circuit held only that the inventor cannot by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted." *Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999). AMD's own case, *Howmedica*, acknowledges this, stating that "[t]he testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." 540 F.3d at 1347 n. 5 (citing *Phillips*, 415 F.3d at 1318) Just recently, the Federal Circuit, in determining whether a parent application provided support for subsequently filed claims, cited testimony of the inventor concerning what the earlier filed application disclosed. *Anascape v. Nintendo*, No. 2008-1500, 2010 WL 1441772, *3 (Fed. Cir. Apr. 13, 2010). Because Mr. Orr's testimony is wholly consistent with the scope of the patented inventions as disclosed in the intrinsic evidence, the Court may consider it in confirming that the '879 patent is limited to the computer context.

1    video without interrupting work upon an application in focus. '879 patent at 3:47-53. This purpose

2    only makes sense in the context of a computer, because it is only in such a system that a user works

3    in one area of the display while playing live video in another area. *See* Opening Br. at 9.[3]

4         AMD argues that the Court must disregard the purpose of the invention as stated in the

5    intrinsic evidence, but this is not the law. Rather,

6         "Applying the principles that a claim is to be read in the light of the specification but
         that limitations are not to be read into a claim, court decisions take the specification
         discussion of problem and solution and of objectives into account in construing
7         patent claim language but do not strictly limit a patent claim to the embodiments that
         fully achieve that objective." 18 *Chisum on Patents* § 18.03[2][c][iv] at 18-485
8         (citing *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997)).

9         In *CVI*, the court determined that the term "elasticity" in a patent directed at eyeglass frames

10   "refers to the ability of an eyeglass frame component to return completely and spontaneously to its

11   original shape . . . ." *Id.* at 1158. The court reasoned that "our interpretation of the claims is

12   consistent with and furthers the purpose of the invention." *Id.* at 1160. This purpose was to allow

13   the frame to return to its original shape, and "it is reasonable to conclude that the references to 3%

14   and 4% 'elasticity' in the claims was intended to describe an eyeglass frame that would have that

15   desirable and important property." *Id.* The court held that "[i]n construing claims, the problem the

16   inventor was attempting to solve, as discerned from the specification and the prosecution history, is

17   a relevant consideration." *Id.* Consistent with this principle, the Federal Circuit has often

18   construed claims consistently with the purpose of the invention. In *Phillips v. AWH Corp.*, 415

19   F.3d 1303 (Fed. Cir. 2005) (en banc), the Federal Circuit considered that "[t]he specification

20   discusses several other purposes served by baffles" in construing that term. *Id.* at 1325.

21        That there are particular limitations on this principle does not mean that the purpose of the

22   invention should be discounted, as AMD contends. Nor do the cases AMD cites stand for this

23   _____

24        [3] None of the accused Samsung products allows for this type of multitasking, allowing for a
     user to work on multiple applications in multiple windows, as the patent describes. AMD and
25   AMD's expert make the bland assertion that "[m]any accused products can run multiple software
     programs," (AMD Br. at 17, citing Wolfe Decl. ¶ 54), but this is not true, and AMD fails to offer
     any evidence to support this assertion or even to identify a particular type of accused product where
26   this is possible. Moreover, AMD carefully omits to assert that any accused product can run
     multiple software programs at the same time, which in fact only occurs on a "computer display," if
27   it is operating in a windows-type environment, as the claimed inventions require.

28

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1   proposition. In *Martak Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009) the

2   court held that the claim terms "raising" and "feeding" in a food-product patent did not limit the

3   claims to animal feed and exclude applications for humans because the patent specification "plainly

4   contemplates that the invention is applicable to humans." *Id.* at 1381. *Howmedica Osteonics Corp.*

5   *v. Wright Medical Technology, Inc.*, 540 F.3d 1337 (Fed. Cir. 2008) stands for the unremarkable

6   proposition that where the intrinsic evidence states multiple purposes or advantages of an invention,

7   every claim need not be construed to meet all of these purposes. *Id.* at 1345.

8          Here, unlike in *Martak*, the intrinsic evidence nowhere mentions that the inventions claimed

9   in the '879 patent are applicable to camcorders, cameras, telephones, or to televisions if they are not

10   being used as a computer display. And unlike in *Howmedica*, Samsung is not attempting to limit

11   each of the claims such that they meet multiple purposes or advantages of the '879 patent as

12   described in the intrinsic evidence. The '879 patent recites a single purpose—allowing a user to

13   adjust desktop video without interrupting work on an "application." The result is that "the overall

14   operation of a computer system is improved." '879 patent at 3:52-53. The patent should be

15   interpreted in light of this purpose of the invention, which applies only in the context of computers.

16          AMD argues that limiting the patent beyond any device that contains a processor and

17   memory "would exclude many devices that one of ordinary skill would have considered to be

18   'computers' in 1997." AMD Br. at 15. As evidence for this proposition, AMD cites to the

19   declaration of its expert, Dr. Wolfe, who in turn cites to patents purportedly showing that

20   components within a cash register, an ATM machine, a voting machine, an automobile engine, and

21   a camera are all "computers." Wolfe Decl. ¶ 50. None of this extrinsic evidence is relevant to the

22   meaning of the term "computer display" as used to define "control panel" in the '879 patent. This

23   is because none of these patents discuss displays that show live video as the desktop of a display

24   while applications remain "in focus"—all concepts that are unique to "computer displays."[4]

25   _____

26   [4] AMD does not explain why it believes the claims must be construed to encompass the
"original IBM PC" (AMD Br. at 15), particularly in light of the specification's statement that
computers provide visual representations of data being manipulated, such as word processing and
27   drawing algorithms "and, **more recently, the displaying of video images.**" '879 patent at 1:15-20
(emphasis added). Thus, the "original IBM PC" did not present the problem addressed by the '879

28                                                                    *(Footnote continued)*

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1    Moreover, these patents distinguish between the recited "computer" and the wide array of

2    end-user products to which AMD would like to extend that term, just as the '879 distinguishes

3    computer displays from a TV. '879 patent at 1:20-22. U.S. Patent No. 5,832,139 ("'139 patent") is

4    directed at a "Method and Apparatus for Determining Degrees of Freedom of a Camera." Wolfe

5    Decl., Ex. W7. Although the claims of the patent recite "a digital computer," it is a *separate device*

6    from the claimed camera in a multi-device system. Claim 27 claims a system that has three

7    elements, "a camera having an optical image forming apparatus for forming an image on an image

8    sensor . . ."; "an optical image converting apparatus for converting said formed image . . . to an

9    electrical video signal"; and, as a separate element, "a digital computer responsive to said electrical

10   video signal . . . ." *Id.*, Ex. W7 at cl. 27. Similarly, U.S. Patent No. 5,878,399 is directed at a

11   computerized voting system that includes, as separate devices, a "digital camera" and a "computer."

12   *Id.* Ex. W5 at 3:52-53. The patent recognizes that a "digital camera" is not a computer (despite

13   being "digital" and presumably therefore containing a processor and memory). Rather, "[a] digital

14   camera **52** captures a digital image of the voter and inputs the information into computer **48**." *Id.*,

15   Ex. W5 at 52-53 and Fig. 2. In other words, the camera is the source of input for a computer, not

16   the computer or computer display itself. Accordingly, Dr. Wolfe's extrinsic evidence only serves to

17   confirm that such things as cameras, voting machines, cash registers, and car engines are distinct

18   from "computers," which are recited as separate elements from any "computer" in these patents.[5]

19   AMD argues that stretching the claims of the '879 patent to encompass any device with a

20   processor and memory nonetheless imposes meaningful limits on the claims because it would still

21   exclude "analog televisions, non-digital telephones, film cameras, and analog camcorders." AMD

22

23   patent of controlling desktop video while working on an application in focus because it did not have
     a desktop, and was not capable of displaying desktop video at the same time an application was in
24   focus. *See, e.g.*, Wolfe Decl ¶ 51 (stating that "the original IBM PC . . . was generally not capable
     of operating in a windows-based environment or running multiple applications at once.")

25       [5] Moreover, if Dr. Wolfe is implying that the claims of the '879 patent are broad enough to
     encompass this wide-array of products, the patent lacks a written description to support such broad
26   claims, because the specification only discusses computers that display desktop video, in-focus
     applications, control panels, and icons. *See generally, Ariad Pharms. v. Eli Lilly & Co.*, No. 2008-
27   1248, 2010 WL 1007369 (Fed. Cir. Mar. 22, 2010) (en banc).

28

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1    Br. at 17.  This is incorrect.  Analog televisions might not use a processor and memory to display

2    video images, but they do use these structures to display on-screen graphics menus such as AMD

3    accuses of infringing the "control panel" limitation.  For example, the prior art Sony television that

4    would anticipate the '879 patent under AMD's broad reading of the claims used analog signals to

5    display the main video image and picture-in-picture window, but it used a processor, memory, and

6    programming instructions to display on-screen menus, which is all that the claims of the '879 patent

7    require.  Grimes Decl., Ex. 2 at 1-2.  Accordingly, AMD's broad construction of its patent would

8    encompass analog televisions and many other devices known for decades in the prior art.

9         **2.**     **Because the accused products are not "computers," they do not meet the "control panel" limitation.**

10         AMD argues that even under the Court's construction, the accused televisions, telephones,

11   cameras, and camcorders meet the "control panel" limitation because they are, as it turns out,

12   "computers," and "perform many tasks traditionally associated with 'general purpose' computers."

13   AMD Br. at 17.  To support this contention, AMD argues that a Samsung television "includes an

14   Ethernet connection and an optional Wi-Fi adapter."  AMD Br. at 17.  AMD argues that several of

15   the accused telephones connect to the internet and run email programs, and that some accused

16   cameras and camcorders can connect to a printer and to the internet.  *Id.* at 18-19.

17         These assertions are wholly irrelevant to infringement of the '879 patent.  None of the

18   features identified by AMD are mentioned in the '879 patent.  A "computer" in the context of the

19   '879 patent is not defined as any device that can connect to the internet or a printer, any more than

20   it is defined as any device that has a processor and memory.  Rather, a "computer" is defined in the

21   '879 patent as a device that can display desktop video, "applications . . . in focus," icons, and a

22   control panel—it is a computer operating in a windows based environment as that product was

23   known at the time of the patent.  AMD's evidence that certain Samsung products can connect to the

24   internet or send email is not evidence that these products infringe a single limitation of the '879

25   patent because these features are nowhere mentioned or claimed in that patent.  The irrelevance of

26   these "facts" is underscored by the fact that AMD cited to none of these features of Samsung

27   products as evidence of infringement in its infringement contentions.  *See* Haskett Decl., Ex. 1.

28

SAMSUNG'S  REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

3.   **The accused products do not meet the "control panel" limitation under the doctrine of equivalents.**

a.   **The accused products are not equivalent to computers.**

AMD is incorrect that in analyzing the doctrine of equivalents, Samsung improperly focuses on the "invention as a whole," rather than applying its analysis on a limitation-by-limitation basis. Samsung's argument focuses on a particular limitation—the "control panel" limitation—which is "[a]n area of the computer display containing control functions" that control the live video on the desktop. Samsung is entitled to summary judgment that the accused products do not infringe under the doctrine of equivalents because no reasonable jury would conclude that substituting a telephone, camcorder, camera, or television for the claimed "computer display" would achieve the same result as the "control panel" limitation—allowing a user to work on an "application . . . in focus" while adjusting desktop video on a computer display. *See* Opening Br. at 13-14.

b.   **The specific exclusion principle bars application of the DOE.**

AMD's attempt to recapture by equivalents what the claim construction order specifically excludes would also violate the specific exclusion principle. AMD is incorrect that this principle applies only "in 'binary' situations where there are only two structural options, and the patentee's claiming of one structural option implicitly and necessarily precludes the capture of the other structural option." AMD Br. at 22. The principle applies where the parties ask the Court to resolve a dispute during claim construction as to whether the claims cover particular subject matter and the claim construction specifically excludes that subject matter. *See, e.g., Affymetrix, Inc. v. Multilyte Ltd.*, No. C 03-03779 WHA, 2005 WL 1513147, *3 (N.D.Cal. June 23, 2005).

For example, in *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1339 (Fed. Cir. 2004), the court held that the claim term "lipophilic component" as properly construed specifically excluded surfactants, even though these two terms are not binary opposites. And in *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582-83 (Fed. Cir. 1996), the court held that the claim term "varies between" specifically excluded two different splay-creating offset distances between the strings of a tennis racket, even though this is not a "binary situation."

Just as in these cases, the Court here has resolved the primary dispute between the parties as a matter of claim construction: whether the '879 patent applies to computers or whether it applies

10

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

broadly to cameras, phones, camcorders, and televisions. The Court resolved that question in favor of Samsung, specifically excluding cameras, phones, and camcorders from the scope of the claims, and specifically excluding televisions where they are not merely being used as a computer display (an indirect theory of infringement that AMD has not alleged in its infringement contentions). The Court held as follows: "AMD argues that [the] invention taught in the '879 patent also encompasses user interfaces in devices such as digital cameras, camcorders, and cell phones. None of the intrinsic evidence cited by AMD supports this conclusion." Dkt. 255 at 32. The Court further held that "[c]ontary to AMD's contention, the reference to channel control in some claims does not establish that the control panel can be displayed on a television without a computer." *Id.* And the Court held that "[t]he specification of the '879 patent unequivocally limits this invention to computers." *Id.* at 30. These statements of specific exclusion resolved the question of infringement between the parties, and bar AMD from using the doctrine of equivalents to reopen that issue.

     c.   **Application of the DOE would ensnare the prior art.**

   Finally, AMD is barred from applying its invention to the accused products because doing so would ensnare the prior art. Opening Br. at 14-15 & n.6; Grimes Decl. at ¶¶ 18-20 & Exs. 3-5. AMD faults Samsung for making this argument briefly and succinctly. However, Samsung's argument and evidence are complete. Dr. Grimes has attached claim charts and documents describing prior art televisions, which demonstrate on a limitation-by-limitation basis that a hypothetical claim substituting AMD's broad interpretations for the proper limitations of the '879 patent would be anticipated by prior art televisions, which provided menus for controlling the main image on a television screen while a picture-in-picture window remained visible on the screen. *Id.*

  **C.**   **The Accused Products Do Not Infringe the "Application . . . In Focus" Limitation.**

   AMD proposes that the Court construe "application" to mean any and all "software that enables a computer to accomplish a task." AMD cites to no intrinsic evidence to support this construction, and it should be rejected as failing to impose any meaningful limits on the claim term, applying potentially to any feature on the user interface, including video windows, which the patentee disclaimed as "applications" during prosecution. *See* Opening Br. at 17-18, 23.

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1    Samsung's proposed construction—a computer program that a user performs work upon—is

2    based on the intrinsic evidence, which explains that the purpose of the invention is to allow the user

3    to adjust desktop video without interrupting work upon the "application . . . in focus."  Moreover,

4    the patentee clearly and unmistakably disclaimed video windows as the claimed application (such

5    as AMD accuses in Samsung televisions), arguing that the '879 application was patentable over

6    Ranganathan because "Ranganathan teaches a technique for video overlay, i.e., a video window in a

7    foreground position with respect to graphics data.  In contrast, the present invention has the live

8    video in the background, with an application in a foreground position.  As such, Ranganathan

9    teaches the opposite of an aspect of what the present invention is claiming."  Haskett Decl., Ex. 6 at

10   AMDFH000000173.  Because the picture-in-picture video windows in Samsung televisions are not

11   "applications," Samsung televisions do not infringe the '879 patent as a matter of law.

12       The intrinsic record also evidences a distinction between "icons" and "applications," which

13   precludes AMD from arguing that battery meters and time codes in Samsung accused products,

14   which are mere icons, are also applications.  "Application" and "icon" are two separate claim terms,

15   and must therefore have different meanings.  The '879 inventor stated during prosecution that "a

16   trash can and a battery symbol" are "general icon[s]."  *Id.*, Ex. 6 at AMDFH000000201.  He also

17   distinguished these types of icons as providing alerts to the user, rather than accepting inputs from

18   or permitting users to work upon them.  *Id.*  They cannot, therefore, constitute the claimed

19   "application," which is a separate claim limitation.

20       AMD's argument that Figure 1 requires "icons" to count as "applications" because only

21   icons are depicted must be rejected.  The specification discussion of Figure 1 makes clear that the

22   claimed "application" is simply not depicted; only a "live video background," a "tile bar," the

23   "control panel," and the various "icons" are depicted.  '879 patent at 2:19-30.  The reason for this is

24   quite simple.  The drawings were submitted with the initial application, and none of the claims, at

25   that time, contained any limitation related to an application.  Haskett Decl., Ex. 6 at

26   AMDFH000000024-25.  The "application" limitation was added only later by amendment, and the

27   applicant never submitted new drawings that depicted the claimed "application."  *Id.*, Ex. 6 at

28

12

AMDFH000000105. Because the battery meters and time codes that AMD accuses in Samsung telephones, camcorders, and cameras are "icons," not "applications," these products do not infringe.

The accused products do not infringe on the separate and independent basis that they do not meet the "in focus" aspect of the "application . . . in focus" limitation. The parties agree that "in focus" means "actively being displayed and/or worked upon." It is undisputed that one does not work on a battery meter, a time code or a picture-in-picture window. The only question is what is the definition of "actively being displayed"? It is not sufficient that "actively being displayed" merely refers to something visible on the display, because this renders superfluous the "actively" part of the limitation. The specification and relevant dictionary definitions make clear that "actively being displayed" refers to "the window in a window-based operating environment that is capable of receiving cursor movements, commands, and text editing." Samsung Opening Br. at 18-19. AMD is incorrect that this construction renders the "and/or worked upon" portion of the limitation redundant. AMD Br. at 26. For example, when one window partially overlays another window, the foremost window is being worked upon and is also actively displayed, because it can receive user input. The second window is not being worked upon; however, it is actively being displayed because it can receive user input. If a user clicks on it, it becomes the foremost window. Accordingly, an application can be "actively displayed" when it is not being worked upon, and the terms are not redundant. However, because battery meters and time codes can neither receive commands nor can be worked upon, it is undisputed that they are not "applications . . . in focus."

Finally, even if the Court were to agree with AMD that a battery meter can be an "application . . . in focus," AMD has presented no evidence to show that many of the battery meters in the accused phones remain "in focus" as the claims require; in fact, the "battery meters" in these phones disappear when the camera is in preview mode. Opening Br. at 21-22. AMD has no evidence to rebut this showing or support infringement by these products. AMD only responds with a procedural argument that because Samsung agreed to exemplar product groupings, Samsung cannot now argue that particular products within those groupings lack the accused battery meter. However, the parties never agreed to the exemplar products to represent each product

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1    grouping.  AMD unilaterally demanded that Samsung change the exemplars, but Samsung never

2    agreed.  Fahrenkrog Decl., Ex. 49 at 2 ("Regarding your request that we change the exemplar

3    products for two of the phone groupings, we would prefer to keep the exemplars we have

4    selected.")  Samsung's exemplar for Telephone Group B was the SGH-T739 phone, and the

5    exemplar for Telephone Group C was the SPH-M800 phone.  Dkt. No. 264-9, Ex. G.  Both of these

6    phones do not infringe the '879 patent, even under AMD's constructions, because they do not

7    display a battery meter during preview mode.  Opening Br. at 21-22.  Samsung never agreed to

8    change these exemplars and nothing in the exemplar stipulation effected that change merely by

9    virtue of AMD's insistence.  Accordingly, if AMD insists that the exemplar stipulation should

10   govern, despite the fact that the parties never arrived at a final agreement with respect to the '879

11   exemplars, then Samsung is entitled to summary judgment that all telephones within exemplar

12   groups B and C, as set forth in Exhibit G to the exemplar stipulation, do not infringe the '879

13   patent.  Rather than pursuing this course, Samsung has requested the more reasonable relief of

14   summary judgment on this basis as to the telephones listed in its opening brief, for which AMD has

15   no evidence that a battery meter is displayed during camera preview mode.[6]

16           **D.**     **The Accused Telephones and Cameras Do Not Meet the "Live Video"**
                      **Limitation of All Asserted Claims.**

17         AMD's construction of "live video" as "video that is currently being displayed," begs the

18   question: What is "video" and what makes it "live"?  The flaw in AMD's non-definition of video is

19   exemplified by its infringement contentions against cameras and telephones with cameras.

20   Cameras traditionally, and the accused products still do, provide the ability to see an image of the

21   person to be photographed.  But no one called the people in the image, as seen before the still

22   picture was snapped or the action recorded, a picture or "video."  The picture or video only existed

23   once the image was recorded in some fashion, either on film, on a videotape, in a memory, or in

24

25         [6] As for the remainder of the accused battery meters and time codes, AMD has not shown
that these features are ever capable of going out of focus, as Samsung explained in its opening brief.

26   AMD is incorrect that this is not required by the claims of the '879 patent.  The claims require the
application to "remain in focus" while desktop video is being adjusted, which implicitly requires

27   that the application be capable of not remaining in focus in other situations.

28

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

some other medium making the picture or video suitable for display or transmission.  When somone asks to see the "video" of your birthday party, they are not asking you to show them your viewfinder.  Yet AMD is forced to argue that the image seen in a viewfinder or LCD screen before it is recorded, and only before it is recorded, is "live video."  AMD points to nothing in the intrinsic record to support that argument or definition of "live video."  The only discussion of "live video" in the specification supports Samsung proffered construction, which states that "video images may be received from a live television broadcast, video cassette player, satellite television, cable television, or DVD player."  *Id.* at 1:20-22.

AMD argues that the list of sources of "live video" given in the specification is not exhaustive.  Even if it were correct in this assertion, any additional sources should share the same characteristics as these examples from the specification—*i.e.*, video that is received by the computer display from another source, either broadcast or from a recording.  But no reasonable factfinder could conclude that "live video" encompasses the images one sees in a camera viewfinder prior to snapping a picture.  Such a broad reading makes no sense in the context of this patent, which is directed at facilitating the user's control of video playing in the background without interrupting work on an application.  The image in a camera preview screen is not playing in the background; it is in the cross-hairs of the camera's viewfinder.  Moreover, the notion that "video" could be the real-world input to a camera, rather than the video image that the camera generates is contradicted by one of the patents Dr. Wolfe himself relies upon.  The '139 patent describes the object in a camera viewfinder as the "optically modulated target"; it is only after the photograph or video is taken that the camera produces a video signal that is then sent to the separately recited computer for processing.  Wolfe Decl., Ex. W7 at 3:17-25.  Because no reasonable finder of fact could conclude that the image in a camera viewfinder is "live video," the accused Samsung telephones and cameras do not infringe the '879 patent as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, Samsung requests that the Court grant its motion for summary judgment, or grant it in part as requested in Samsung's opening papers.

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI

1    DATED:  April 23, 2010                    Respectfully submitted,

2                                              COVINGTON & BURLING LLP

3

4                                              /s/Robert T. Haslam
                                               ROBERT T. HASLAM
5                                              Attorneys for Defendants and Counterclaimants
                                               SAMSUNG ELECTRONICS CO., LTD.,
6                                              SAMSUNG SEMICONDUCTOR, INC.,
                                               SAMSUNG AUSTIN SEMICONDUCTOR, LLC,
7                                              SAMSUNG ELECTRONICS AMERICA, INC.,
                                               SAMSUNG TELECOMMUNICATIONS
8                                              AMERICA, LLC, and SAMSUNG DIGITAL
                                               IMAGING CO., LTD.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S  REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,784,879; CASE NO. 3:08-CV-0986-SI