1  ROBERT T. HASLAM (Bar No. 71134)
   rhaslam@cov.com
2  MICHAEL K. PLIMACK (Bar No. 133869)
   mplimack@cov.com
3  CHRISTINE SAUNDERS HASKETT (Bar No. 188053)
   chaskett@cov.com
4  COVINGTON & BURLING LLP
   One Front Street
5  San Francisco, CA  94111
   Telephone:    (415) 591-6000
6  Facsimile:    (415) 591-6091

7  ALAN H. BLANKENHEIMER (Bar No. 218713)
   ablankenheimer@cov.com
8  LAURA E. MUSCHAMP (Bar No. 228717)
   lmuschamp@cov.com
9  JO DALE CAROTHERS (Bar No. 228703)
   jcarothers@cov.com
10 MATTHEW C. LAPPLE (Bar No. 193546)
   mlapple@cov.com
11 COVINGTON & BURLING LLP
   9191 Towne Centre Drive, 6th Floor
12 San Diego, CA  92122-1225
   Telephone:    (858) 678-1800
13 Facsimile:    (858) 678-1600

14 Attorneys for Defendants and Counterclaimants SAMSUNG ELECTRONICS CO., LTD., et.al.

15

16                       UNITED STATES DISTRICT COURT

17                     NORTHERN DISTRICT OF CALIFORNIA

18 ADVANCED MICRO DEVICES, INC., et al.,          Case No. 3:08-CV-0986-SI

19        Plaintiffs and Counterdefendants,       **DEFENDANTS AND COUNTER-
                                                  CLAIMANTS' OPPOSITION TO
20                                                PLAINTIFFS AND COUNTER-
   v.                                             DEFENDANTS' MOTION FOR
21                                                SUMMARY JUDGMENT OF NON-
   SAMSUNG ELECTRONICS CO., LTD., et al.,         INFRINGEMENT OF U.S. PATENT
22                                                NOS. 5,091,339 AND 5,173,442**
          Defendants and Counterclaimants.
23

24                                                **DATE:  June 25, 2010
25                                                TIME:  9:00 a.m.
                                                  COURTROOM:  10, 19th Floor
26                                                JUDGE:  HON. SUSAN ILLSTON**

27

28                          **PUBLIC/REDACTED VERSION**

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.   FACTUAL BACKGROUND ................................................................. 3

    A.    The Carey Patents................................................................... 3

    B.    The Infringing Process That Manufactured ATI's Accused Products.......... 7

    C.    Evidence of the Intimate Relationship between ATI and TSMC and a Reasonable Inference That ATI Had Control over the Infringing Process ...................................................... 8

    D.    Samsung's Efforts to Obtain Discovery from TSMC ................................ 10

III.  APPLICABLE LAW................................................................ 11

    A.    The Standard for Summary Judgment......................................... 11

    B.    The Applicable Sections of the Patent Act ..................................... 11

    C.    The Requirements of N.D. Cal. Infringement Contentions ..................... 12

IV.   ARGUMENT ...................................................................... 13

    A.    AMD's Primary Non-Infringement Argument for Claim 11 of the '339 Patent Is Based on a Claim Construction Contrary to Plain Language of the Claim and That Would Improperly Render the Claim Invalid........................................................ 13

    B.    Samsung Has Provided Substantial Evidence that AMD's Products are Manufactured Using an Infringing Process........................... 15

    C.    Samsung Has Satisfied the "Substantial Likelihood" Standard to Invoke a Presumption of Infringement Under 35 U.S.C. § 295................. 17

    D.    AMD Is Not an "Innocent Infringer" Protected by 35 U.S.C. § 287(b)(2). 19

V.    CONCLUSION .................................................................... 23

i

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................................... 11

*Armco, Inc. v. Cyclops Corp.*,
791 F.2d 147 (Fed. Cir. 1986) ..................................................................... 11, 17

*Atmel Corp. v. Info. Storage Devices, Inc.*,
1998 WL 775115 (N.D. Cal. Nov. 5, 1998) ................................................... 13

*Celanese Int'l Corp. v. Oxyde Chems., Inc.*,
554 F. Supp. 2d 725 (S.D. Tex. 2008) ...................................................... 22, 23

*Eli Lilly & Co. v. Zenith Labs., Inc.*,
134 F. Supp. 2d 981 (S.D. Ind. 2001) ........................................................... 23

*Infosint, S.A. v. H. Lundbeck A/S*,
612 F. Supp. 2d 402 (S.D.N.Y. 2009) ...................................................... 19, 20

*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
211 F.R.D. 360 (N.D. Cal. 2002) ................................................................... 13

*MBO Labs. v. Becton, Dickenson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) ..................................................................... 15

*Network Caching Tech., LLC. v. Novell, Inc.*,
2003 WL 21699799 (N.D. Cal. March 21, 2003) ................................. 12, 13, 17

*Holder v. Hall*,
512 U.S. 874, 933 (1994) ............................................................................... 21

*Pfizer Inc. v. F&S Alloys and Minerals Corp.*,
856 F. Supp. 808 (S.D.N.Y. 1994) ................................................................ 18

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999) ..................................................................... 11

*Philips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... 14

*Rhine v. Casio, Inc.*,
183 F.3d 1342 (Fed. Cir. 1999) ..................................................................... 15

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442                                          CV-08-0986-SI

*SRI Int'l v. Matsushita Elec. Indus. Co..*,
    775 F.2d 1107 (Fed. Cir. 1985) ........................................................................ 11

*Topline Corp. v. Dynasty Footwear, Ltd*,
    2007 WL 27105 (W.D. Wash. Jan. 2, 2007) ...................................................... 23

**STATUTES**

35 U.S.C. § 271 ........................................................................................................ 7

35 U.S.C. § 271(g) ........................................................................................... passim

35 U.S.C. § 287(b)(1)(B) ........................................................................................ 12

35 U.S.C. § 287(b)(2) ...................................................................................... passim

35 U.S.C. § 295 .......................................................................................... 2, 12, 18

35 U.S.C. § 287(b)(5) ............................................................................................ 23

*See* 35 U.S.C. § 287(b) ..................................................................................... 12, 20

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(c) ............................................................................................... 11

iii

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

1    Defendants/Counterclaimants SAMSUNG ELECTRONICS CO., LTD., SAMSUNG

2  SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, LLC, SAMSUNG

3  ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,

4  and SAMSUNG DIGITAL IMAGING CO., LTD. (collectively, "Samsung"), hereby oppose

5  the motion of Plaintiffs/Counterdefendants ADVANCED MICRO DEVICES, INC., and

6  ATI TECHNOLOGIES, ULC ("ATI") (collectively "AMD"), for summary judgment of

7  non-infringement of U.S. Patent Nos. 5,091,339 and 5,173,442 ("the Carey Patents").

8  **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

9       The Court should deny AMD's motion for summary judgment because it: (a) is

10  based upon an improper claim construction; (b) relies upon a contrived interpretation of 35

11  U.S.C. § 287(b)(2) that removes the statute from its intended purpose of protecting innocent

12  infringers who are without knowledge that the products in their possession were

13  manufactured using an infringing process; and (c) fails to address critical evidence of

14  infringement set forth in Samsung's Final Infringement Contentions and the report of

15  Samsung's expert witness, Dr. Gosney.

16       AMD's first argument is based on a improper construction of claim 11 of the '339

17  Patent that would require the use of a channel-first rather than a via-first process. AMD's

18  motion for summary judgment requires a construction of the claims that is contrary to the

19  plain meaning of the claims and that would violate the fundamental principle that claims

20  should be interpreted to preserve their validity. Notably, AMD's local rule invalidity

21  contentions were all based on a construction of claim 11 requiring a via-first process.

22  AMD's treatment of claim 11, as well as expert testimony, evidences that a person of

23  ordinary skill in the art would understand claim 11 to cover a via-first process. Thus, this

24  Court should deny AMD's motion for summary judgment of claim 11 of the '339 patent on

25  the grounds that it is based on an improper construction.

26       AMD's second argument is based on a contrived interpretation of 35 U.S.C.

27  § 287(b)(2) that removes the statute from its intended purpose of protecting innocent

28  infringers who are without knowledge that the products in their possession were

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442
SD: 5044-1                             CV-08-0986-SI

1   manufactured using an infringing process.  In such instances, the infringer bears the burden

2   of showing that infringing products were merely in its possession or were in transit and that

3   it should not be held accountable for the infringing activity.  The statute does not apply to a

4   company like ATI that designed the infringing products and contracted to have the products

5   manufactured using the infringing process.  Accordingly, this Court should deny ATI's

6   motion for summary judgment as to all claims on the grounds that 35 U.S.C. § 287(b)(2) is

7   not applicable in the present situation where AMD designed the products and contracted to

8   have the products manufactured using an infringing process.

9        AMD's final argument attacks to the sufficiency of Samsung's evidence, yet it rests

10  largely upon Samsung's Preliminary Infringement Contentions, ("PICs") without

11  addressing the additional evidence discussed in Samsung's Final Infringement Contentions

12  ("FICs") and the report of Samsung's expert, Dr. Gosney.  In its FICs Samsung provided

13  detailed infringement charts for the accused ATI products[1] that include references to reverse

14  engineered images, ████████████████████████ from the manufacturer of the

15  accused products, deposition testimony from AMD's 30(b)(6) witness, and technical articles

16  describing the infringing process.  AMD's arguments ignore key evidence cited in these

17  FICs, including citations to the ██████████ and deposition testimony, and argue that

18  Samsung has failed to meet its burden based on only a subset of the information identified

19  in the FICs and discussed in the expert report of Dr. Milton Gosney.  Taking into account

20  all of the evidence cited by Samsung, not just the subset referred to in AMD's motion,

21  Samsung has more than met its burden.  Further, because infringement is based on 35

22  U.S.C. § 271(g), this Court should invoke the burden shifting provision of 35 U.S.C. § 295

23  to require AMD to establish that the accused process does not infringe.  This AMD cannot

24  do.  AMD's motion for summary judgment on the sufficiency of the evidence should be

25  denied.

26  ────────────────

27     [1]  Because all of the infringing activity was by ATI, prior to its acquisition by AMD,
these papers refer to ATI's infringing conduct, but to AMD's motion.

28

2

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

## II.   FACTUAL BACKGROUND

### A.   The Carey Patents

The Carey Patents disclose and claim a number of different processes for forming interconnects for a semiconductor chip, *i.e.*, the multilevel "wiring" that attaches the transistors in the chip together to form a circuit. [Declaration of Matthew Lapple, Exs. 1 and 2][hereinafter "Lapple Decl."].  In general, the Carey Patents disclose different techniques to etch vertical holes ("vias") or horizontal wiring lines ("channels") into an insulating layer, so that a conducting material such as copper can be deposited in these vias and channels.  The Carey Patents disclose many different embodiments, but the asserted claims go to the fourth embodiment which is shown in Figures 4a-g, and discussed specifically from Column 5, line 61 to Column 6, line 20 of the '339 Patent. [Lapple Decl., Ex. 1].

This fourth embodiment is what is known as a "via-first" process, because it calls for forming the vias first, then the channels.  Another distinguishing point of the fourth embodiment is that it uses two soft masks in forming the vias and channels.  First, a first soft mask is patterned on an insulating layer.  The first mask has openings for the via regions 20, but covers the channel regions 22, as shown in cross-sectional view in Fig. 4a:



Fig. 4a

As shown in Fig. 4b, a plasma etch is then applied to the wafer, eroding both the first soft mask, as well as either some or all of the via regions 20:

3

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI



Fig.4b

Next, as shown in Fig. 4d, a second soft mask is applied, to expose both the via regions 20 and the channel regions 22:



Fig.4d

Then, as shown in Fig. 4e, a plasma etch is applied to the wafer, eroding both the second soft mask, as well as the channel regions 22 and any insulating layer remaining in the via regions 20:



Fig.4e

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

This plasma etch results in the fully formed via regions and channel regions, as shown in Fig. 4f:



Fig. 4f

Then, copper or another metal is electroplated into the via regions and channel regions as shown in Fig. 9b:



Fig. 9b

Finally, the metal layer is polished flat, or planarized, in a process known as chemical-mechanical polishing ("CMP"), shown in Figs. 11a and 11b. This via first process is claimed in asserted claims 11 and 13 of the '339 Patent, and claim 3 of the '442 Patent.

Claim 11 of the '339 patent claims a method for forming an electrical interconnect using three primary steps:

(a) providing an insulating layer on a base;

(b) forming a channel in the top surface and partially through the thickness of the insulating layer; and

5

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

1   (c) forming a via in the top surface and completely through the thickness of the
2   insulating layer.

3   Claim 11 subsequently sets forth the ordering of steps (b) and (c). Specifically,
4   claim 11 states "wherein the channel and via in steps (b) and (c) comprises:" and then
5   details the sequencing of the steps used to form the channel and the via. Claim 11 specifies
6   the use of a "first soft mask having an opening to expose the via" and the application of a
7   "first etch to remove the material from the insulating layer where the via is exposed."
8   Claim 11 then specifies the use of "a second soft mask having an opening to expose the
9   channel and via" and the application of "a second etch to remove material from the
10  insulating layer where the channel is exposed and material from the insulating layer
11  remaining where the via is exposed."

12  Claim 3 of the '442 patent also recites the use of "a first soft mask having an opening
13  to expose the via" and the application of a "first etch to at least partially remove the
14  insulating layer where the via is exposed." Claim 3 then specifies using "a second soft
15  mask having an opening to expose the channel and the via" and the application of a "second
16  etch to remove the insulating layer where the channel is exposed and to remove any of the
17  insulating layer remaining where the via is exposed."

18  Pursuant to 35 U.S.C. § 271(g), Samsung asserts that certain chips imported, sold,
19  and offered for sale in the U.S. by AMD's subsidiary, ATI, infringe claims 11 and 13 of the
20  '339 patent and claim 3 of the '442 patent.[2] All accused ATI chips were designed by ATI
21  and then caused to be manufactured in Taiwan by Taiwan Semiconductor Manufacturing
22  Company ("TSMC") at ATI's behest.

---

[2] In its Motion, AMD argues that there is no infringement under other provisions of
35 U.S.C. § 271. Samsung does not allege infringement under these provisions, rendering
this portion of AMD's motion moot.

6

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

**B.**    **The Infringing Process That Manufactured ATI's Accused Products**

ATI's accused products were designed by ATI, and then manufactured in Taiwan by TSMC.  During the relevant time period,

7

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

Thus, the accused TSMC processes are very similar to the fourth embodiment of the Carey Patents and in the opinion of Dr. Gosney, these processes read on the asserted claims of the Carey Patents.  [Gosney Infr. Decl., Charts].

**C.    Evidence of the Intimate Relationship between ATI and TSMC and a Reasonable Inference That ATI Had Control over the Infringing Process**

Unlike an arms-length purchaser, a mere importer, or a transporter, ATI had an intimate relationship with TSMC and worked closely with TSMC to produce the accused devices.

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

[BLACK REDACTED BLOCK]

### D.   Samsung's Efforts to Obtain Discovery from TSMC

Samsung's efforts to obtain discovery from TSMC about the process used to manufacture the accused ATI chips have been extensive.  Recognizing that TSMC -- a Taiwanese company -- was not subject to U.S. discovery requests, (nor in fact is Taiwan even a signatory to the Hague Convention) on June 11, 2009, Samsung first served TSMC's North American subsidiary with a third-party subpoena for documents and deposition testimony.  [Lapple Decl., Ex. 8].  On July 15, 2009, TSMC North America objected and generally refused to produce any documents or witnesses.  [Lapple Decl. Ex. 9].  On August 10, 2009, Samsung served a revised subpoena for documents and testimony.  [Lapple Decl. Ex. 10].  On August 24, 2009, TSMC North America again objected and generally refused to produce documents or witnesses.  [Lapple Decl. Ex. 11].  After an extensive meet and confer process, Samsung negotiated a modification to the Court's protective order to encourage TSMC to substantively respond to Samsung's subpoena.  [Lapple Decl., Exs. 12 and 13].  Samsung also sent AMD a draft motion to compel to produce TSMC's documents in its possession.  [Lapple Decl., Ex. 14].  Then, instead of TSMC producing documents, on November 25 and December 23, 2009, AMD produced [REDACTED]

[REDACTED] Despite continued meet and confer efforts, and service of a third

10

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

subpoena, [Lapple Decl., Ex. 17] Samsung was unable to schedule a deposition of TSMC, or obtain any further documents about TSMC's accused processes.

## III.    APPLICABLE LAW

### A.    The Standard for Summary Judgment

The presence or absence of infringement is a question of fact. *SRI Int'l v. Matsushita Elec. Indus. Co..*, 775 F.2d 1107, 1125 (Fed. Cir. 1985) (en banc). Accordingly, "summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue [of fact]." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citing FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Thus, the non-movant need only identify a single material factual dispute as to infringement that prevents summary judgment. *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed. Cir. 1986).

### B.    The Applicable Sections of the Patent Act

The present motion implicates three sections of the Patent Act. Samsung accuses ATI of infringement of the Carey Patents under 35 U.S.C. § 271(g), which provides in part that "[w]hoever without authority imports into the United States or offers to sell, sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale or use of the product occurs during the term of such process patent." 35 U.S.C. § 271(g).

Because ATI infringes the Carey Patents under section 271(g), a unique burden-shifting provision in the Patent Act, namely 35 U.S.C. § 295, applies here. It states:

> In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds –
>
> (1)  that a substantial likelihood exists that the product was made by the patented process, and
>
> (2)  that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

11

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

*the product shall be presumed to have been so made, and the*
*burden of establishing that the product was not made by the*
*process shall be on the party asserting that it was not so made.*

35 U.S.C. § 295 (emphasis added).

Finally, AMD argues that its damages should be limited based upon the notice provision of 35 U.S.C. § 287(b)(2). This provision is focused upon persons who are merely in possession of accused products, or carry them in transit, as shown by the fact that this provision specifically calls for the accused infringer to prove their "possession or transit" of the accused products. Section 287(b)(1) also provides a major exception to the notice provision of section 287(b)(2). Specifically, the notice provision of section 287(b)(2) does not provide a safe harbor to any entity that "owns or controls, or is owned or controlled by, the person who practiced the patented process." 35 U.S.C. § 287(b)(1)(B).

## C.    The Requirements of N.D. Cal. Infringement Contentions

AMD implies that Samsung's claim for infringement of the Carey Patents should be judged entirely, and exclusively, upon the evidence cited in its Patent Local Rule infringement contentions. AMD is simply wrong. Patent Local Rule infringement contentions "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." *Network Caching Tech., LLC. v. Novell, Inc.*, 2003 WL 21699799, *5 (N.D. Cal. March 21, 2003). Infringement contentions are meant to "crystallize [the parties'] theories of the case early in the litigation," and require that a party set forth "particular theories of infringement with sufficient specificity to provide notice of infringement beyond that which is provided by the mere language of the claims themselves." *Id.* (citing *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) and *Atmel Corp. v. Info. Storage Devices, Inc.*, 1998 WL 775115 at *2 (N.D. Cal. Nov. 5, 1998). Importantly, however, the Patent Local Rules do not require infringement contentions to set forth a party's "evidence of infringement." *Network*

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

*Caching,* 2003 WL 21699799 at \*4.  Thus, they are not a proper vehicle by which to assess whether to grant a judgment of noninfringement.

## IV.   ARGUMENT

### A.   AMD's Primary Non-Infringement Argument for Claim 11 of the '339 Patent Is Based on a Claim Construction Contrary to Plain Language of the Claim and That Would Improperly Render the Claim Invalid.

Claim 11 of the '339 Patent and claim 3 of the '442 Patent contain the same sequencing of steps to form a via and a channel.  These claims both unambiguously recite that a first mask is used together with a first etch in the formation of a via.  The claims then recite that a second mask is used together with a second etch to form the channel and to remove any remaining "material from the insulating layer where the via is exposed."  The plain language of the claims require that first mask and etch form the via and the second mask and etch form the channel. ███████████████████████████████████

███████████████████████████████████

Despite the plain language, AMD argues that the structure of claim 11 of the '339 Patent should be construed to require a channel first process.  The structure of claim 11 is such that in its preamble it first sets forth that the interconnect is formed by providing an insulating layer, forming a channel and forming a via.  These same three general steps are recited in both the via-first claims and the channel-first claims (*e.g.* claim 15).  The method used to form the via and the channel is then specified in steps (1) through (4) of the claims.  In asserted claim 11, steps (1) through (4) require a first mask and first etch to form a via followed by a second mask and a second etch to form a channel.  The sequencing specified in steps (1) through (4) is called a via-first process.  In contrast, unasserted claim 15 includes steps (1) and (4) but changes the order so that the first mask and first etch form a channel and a second mask and second etch form the via.  The sequencing of steps (1) through (4) in claim 15 is called a channel-first process.

Ignoring the differences in the claims, and the clear delineation of steps requiring a via-first process in claim 11 and a channel -first process in claim 15, AMD argues that

13

claim 11 should be interpreted to require a channel-first process because the patent recites steps "in the sequence set forth."  AMD argues that "in the sequence set forth" refers to the general steps (a) through (c) which are found in both the via-first and channel-first claims. Properly read, however, the "in the sequence set forth" language refers to steps (1) through (4) which details which mask and etch steps are used first and which mask and etch steps are performed second.  Steps (1) through (4) specify the sequencing of events and differentiate the claims from one another.  This Court should construe the "in the sequence set forth" language, as it would be understood by a person of skill in the art based on the teaching of the specification, to modify steps (1) through (4). *See, e.g., Philips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (noting "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *see also* "Rebuttal Expert Report and Declaration of Dr. William Milton Gosney Regarding the Validity of U.S. Patent Nos. 5,091,339 and 5,173,442" (hereinafter "Gosney Validity Decl.")(addressing understanding of a person of ordinary skill in the art).

AMD's construction is also improper because it would render claim 11 invalid. AMD claims that the "in the sequence set forth" language modifies steps (a) through (c) and requires a channel first process.  Steps (1) through (4), however, specify that the first mask and etch must form the via and the second mask and etch much form the channel, a via first process.  Claim 11 would be invalid for lack of enablement under AMD's construction because it would require two mutually exclusive methods: via-first and channel-first processing.  AMD concedes in its expert report on invalidity that its construction would render claim 11 invalid. [Lapple Decl. Ex. 18, at 47-49].  It is a fundamental principle of claim construction that claims should be construed to preserve their validity, *MBO Labs. v. Becton, Dickenson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007) citing *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) "claims should be so construed, if possible, as to sustain their validity."), and this Court should reject AMD's invalidating construction.

14

Finally, throughout this litigation, AMD has interpreted claim 11 as describing a via-first process. Specifically, AMD treated claim 11 as a via-first process in all four of its supplemental responses to Samsung's interrogatories regarding AMD's non-infringement defenses and in its Final Invalidity Contentions, served only a few months ago. This, along with the plain language of claim 11 and the fundamental principle that claims should be interpreted to maintain their validity require construing claim 11 to cover a via-first process in which the first mask and first etch are used in the formation of the via and the second mask and second etch are used in the formation of the channel.

## B. Samsung Has Provided Substantial Evidence that AMD's Products are Manufactured Using an Infringing Process.

AMD's argument that Samsung has not provided evidence of infringement erroneously relies on Samsung's Preliminary Infringement Contentions ("PICs") [Lapple Decl., Ex. 19.] The infringing ATI products are manufactured by TSMC in Taiwan, and the detailed process technology used to manufacture the ATI products is confidential TSMC information. Samsung's PICs, therefore, relied on reverse engineered images of the ATI products that showed a structure manufactured with a process consistent with claims 11 and 13 of the '339 patent and claim 3 of the '442 patent. Samsung also cited to TSMC articles which disclosed that TSMC used a via-first process. [Lapple Decl., Ex. 19 at Exhibit C and D].

Samsung conducted further discovery to obtain additional information regarding TSMC's process technology used in the manufacture of the ATI products. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

. AMD's motion for summary judgment makes no mention of this evidence.

AMD's motion also misapprehends the purpose of the Patent Local Rule infringement contentions, which "are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." *Network Caching,*, WL 21699799, *5. The Patent Local Rules do not require infringement

16

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

1  contentions to set forth a party's "evidence of infringement." *Network Caching,* 2003 WL

2  21699799 at *4. Thus, they are not a proper vehicle by which to assess whether to grant a

3  judgment of noninfringement. [AMD Brief at 15]. Even if this Court imposed a heightened

4  standard for the infringement contentions served in this case, Samsung's FICs cite to not

5  only the reverse engineer report and public articles included in its PICs, but also include

6  citations to ████████████████████████████████████ sufficient to

7  establish AMD's infringement  [Lapple Decl., Ex. 20]

8      At a minimum, the substantial evidence cited by Samsung establishes a question of

9  fact regarding whether the AMD products were manufactured using the methods set forth in

10  claims 11 and 13 of the '339 patent and claim 3 of the '442 patent. AMD's motion for

11  summary judgment should be denied. *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 151

12  (Fed. Cir. 1986) ("Where, as here, there are genuinely disputed issues of material fact,

13  summary judgment simply cannot be utilized as the tool for deciding those issues.")

14      **C.   Samsung Has Satisfied the "Substantial Likelihood" Standard to Invoke
       a Presumption of Infringement Under 35 U.S.C. § 295**

15

16      AMD's summary judgment motion should also be denied because AMD has failed to

17  meet its burden to prove that it has not infringed. For claims of infringement made under

18  section 271(g), the Patent Act includes a burden shifting provision under 35 U.S.C. § 295.

19  Section 295 provides that when a patentee shows (1) a substantial likelihood of

20  infringement and (2) that it has made reasonable efforts to obtain discovery of the accused

21  process that would allow conclusive proof of infringement, but that it has not been able to

22  do so, a rebuttable presumption of infringement attaches.

23      As the legislative history explains, this provision addresses "the great difficulties a

24  patentee may have in proving that the patented process was used in the manufacture of the

25  product in question where the manufacturer is not subject to the service of process in the

26  United States." S.REP. 100-83; 1987 WL 967478 at 31. The same legislative history notes

27  that

28

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442                                           CV-08-0986-SI

> [w]hile the defendant may not necessarily have in its possession the means necessary to rebut the presumption, it is likely to be in a far better position than the patentee to obtain them. Importers, for example, because of their relationships with foreign manufacturers, may be able to exert pressure on such manufacturers to produce the necessary information.

S.REP. 100-83; 1987 WL 967478 at 31.

Once a plaintiff has met its burden, the presumption of infringement attaches and if the defendant fails to present evidence sufficient to rebut the presumption, a finding of infringement is warranted. *Pfizer Inc. v. F&S Alloys and Minerals Corp.*, 856 F. Supp. 808 (S.D.N.Y. 1994).

Samsung has established both a substantial likelihood of infringement and has made reasonable efforts to obtain information on the infringing process. Samsung's efforts to obtain information about the accused process, both from AMD and from TSMC included service of three subpoenas and extensive meet and confer efforts with TSMC's North American subsidiary to secure a deposition of TSMC, a Taiwanese company. [Lapple Decl. Exs. 17,19, 21]. Samsung was not able to obtain a deposition of TSMC but was able to obtain TSMC documents that provide a strong basis on which to find infringement. Samsung's expert reviewed the TSMC documents and was able to conclude that AMD's products were manufactured with an infringing process. AMD attempts to cast doubt on these conclusions based on alleged deficiencies in the TSMC documents, but the documents provide sufficient information to establish a "substantial likelihood" that the TSMC processes practice the asserted claims of the Carey Patents. The substantial likelihood of infringement and Samsung's extensive efforts to obtain design documentation on the infringing process creates a presumption of infringement that AMD has the burden to rebut. AMD has repeatedly and consistently taken the position that it does not know what process TSMC uses to manufacture its accused products. By its own admission, AMD cannot rebut the presumption because it claims not to have detailed information about the manufacturing process. [AMD Brief at 7 ("ATI does not determine the particular fabrication steps to be

18

1   used, and is not advised of the full details of TMSC's fabrication steps")];[Lapple Decl., Ex.

2   7 (Park Dep. Tr. 254:13-17; 256:20-257:3; 257:19-258:3; 286:16-287:23)].  AMD's motion

3   should, therefore, be denied.

4       **D.     AMD Is Not an "Innocent Infringer" Protected by 35 U.S.C. § 287(b)(2).**

5       AMD's motion also relies upon a contrived interpretation of 35 U.S.C. § 287(b)(2).

6   AMD argues that section 287(b)(2) of the Patent Act provides a safe harbor to every

7   importer who self-servingly claims not to know how their imported products were

8   manufactured overseas.

9       The burden provision of section 287(b)(2), however, makes clear that the safe harbor

10  provided is limited to parties who are mere possessors or transporters of the infringing

11  devices. Section 287(b)(2) places the burden on the alleged infringer in possession of a

12  device manufactured using an infringing process to show that it was a possessor or

13  transporter: "The person subject to liability shall bear the burden of proving any such

14  possession or transit."  This burden provision is inconsistent with an interpretation that

15  allows any party to claim the benefit of section 287(b)(2).  The limited scope of claim

16  287(b)(2) is also supported by Section 287(b)(1) which explicitly excludes importers who

17  owns or control the foreign manufacturer (or vice versa).  *See* 35 U.S.C. § 287(b)(1).

18      The case law AMD itself relies upon confirms that parties like AMD, who have the

19  ability to control whether a product is manufactured using an infringing process, fall outside

20  the scope of section 287(b)(2).  In *Infosint, S.A. v. H. Lundbeck A/S*, 612 F. Supp. 2d 402,

21  404 (S.D.N.Y. 2009), the court rejected an argument by the seller of products manufactured

22  using an infringing process that section 287(b)(2) protected it from infringement.  The Court

23  found that sellers with the ability to exercise vigilance about their suppliers – and their

24  supplying processes – cannot dodge liability by feigning arms'-length distance and

25  ignorance:

26              Additionally, the Committee Report explained that the rationale
            behind the safe harbor provision was "to shelter only purchasers
27          who are remote from the manufacturer and not in the position to
            protect themselves in contracts with the party who is actually

28

                                            19

using the [patented] process." The provision was not intended to protect retailers with the "resources to send agents to other countries to seek suppliers," and who "should be able and willing to exercise more vigilance" in avoiding infringement.

The *Infosint* defendant was not a "remote seller with little bargaining power." *Id.* at 404. To the contrary, the *Infosint* defendant had a multiyear supply agreement and license with its overseas supplier and was a "strategic partner" with the supplier. *Id.*

ATI, like the defendant in *Infosint*, is not an innocent party with little bargaining power. ATI designed the infringing products. ██████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ This Court, like the court in *Infosint*, should reject AMD's attempt to escape infringement based on it's the wholly unsupportable position that it was an innocent possessor or transporter of the infringing devices.

Resort to the legislative history of section 287(b) is also helpful. As the legislative history of 35 U.S.C. § 287(b)(2) explains, U.S. buyers – and defendants – who have the ability to investigate the processes employed by their overseas suppliers but who chose not to do so cannot escape liability:

> The bill is not intended to reward infringers who close their eyes to facts that reasonable person would see. Similarly, it is not intended that a party should be permitted to qualify for reduction of or immunity from liability by intentionally avoiding the acquisition of knowledge.

S.REP. 100-83, 1987 WL 967478 at 27-28. Indeed, attempts to elude liability behind an after-the-fact declaration of lack of notice, like AMD attempts here, were explicitly considered and denounced by Congress:

> The Committee does not intend that "notice" be a device through which infringers can escape liability by deliberately avoiding knowledge or failing to appreciate the significance of information available to them.

20

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 5,091,339 and 5,173,442

CV-08-0986-SI

1  S.REP. 100-83, 1987 WL 967478 at 29.  The legislative history leaves little doubt that

2  AMD cannot claim the benefit of section 287(b)(2).

3       Apparently recognizing that the legislative history is fatal to its attempt to invoke

4  section 287(b)(2), AMD argues that the legislative history should not be consulted unless

5  the text of the statute is "inescapably ambiguous." [AMD Brief at 13, fn. 2] AMD's support

6  for this cannon of construction, *Holder v. Hall*, 512 U.S. 874, 933 n.28 (1994), mentions

7  this cannon in a footnote, of a concurring opinion, as part of a plurality decision, and notes

8  that the cannon comes from an even earlier concurring opinion.  As such, it is not

9  controlling.  In contrast, the Supreme Court has recognized that cannons of statutory

10  construction "are not mandatory rules," but instead are "guides that need not be

11  conclusive," and that can be used to "help judges determine the Legislature's intent as

12  embodied in the particular statutory language." *Chickasaw Nation v. U.S.,* 534 U.S. 84, 94

13  (2001).  Even if AMD were correct that the legislative history should only be considered

14  where a statute is ambiguous, AMD's interpretation of Section 287(b)(2) rests on the notion

15  that the statute is ambiguous as to whom it applies and that the *Infosint* court improperly

16  resolved the ambiguity.  Resort to legislative history is, therefore, appropriate.

17       Interpreting section 287(b)(2) in light of its burden provision, the legislative history

18  of the statute and pertinent case law, ATI can only claim the benefit of this provision if it

19  was an innocent possessor who did not exercise control over the process used to

20  manufacture the infringing devices.  The undisputed facts show that ATI falls far outside

21  the scope of section 287(b)(2).

22  ███████████████████████████████████████████

23  ████████████████████████████████████

24  █████████████████████████████████████████████

25  █████████████████████████████████████████████

26  █████████████████████████████████████████████

27  ██████████████████████████████████████████████

28  ████████████████████████████████████████████



Such access and power belie ATI's self-serving claim, after the fact, that it did not obtain sufficiently-detailed information to enable ATI to determine if TSMC practiced the Carey Patents. Such an empowered buyer and "partner" is not the innocent retailers that section 287(b)(2) was meant to – or should – protect.

ATI's relative power in its relationship with TSMC renders *Celanese Int'l Corp. v. Oxyde Chems., Inc.*, 554 F. Supp. 2d 725, 728 (S.D. Tex. 2008) – cited by AMD – inapposite. *Celanese* involved a one-time purchase of a commodity product -- a cargo ship full of acetic acid -- by a buyer dealing at arms' length with a foreign seller. *Id.* at 725-26.

preclude the drawing of substantial parallels between this case and *Celanese*.

The other cases AMD cites are equally inapposite. In *Topline Corp. v. Dynasty Footwear, Ltd*, 2007 WL 27105 (W.D. Wash. Jan. 2, 2007), the district court denied a motion to dismiss based on section 287(b)(2), on the grounds that the complaint adequately pleaded the defendant's actual knowledge and written notice. Likewise, in *Sorenson v. Dorman Products, Inc.*, the district court denied a motion to dismiss based on section 287(b)(2) both because the plaintiff adequately pleaded notice and because the allegations

of infringement were not limited to section 271(g).  Finally, in *Eli Lilly & Co. v. Zenith Labs., Inc.*, 134 F. Supp. 2d 981 (S.D. Ind. 2001), the district court denied a motion for summary judgment based on section 287(b)(2) because the defendant was deemed to have notice of infringement under 35 U.S.C. § 287(b)(5)(C) as a result of its negotiations with the patent holder.  Thus, the only case cited by AMD in which a summary judgment was actually granted on the basis of section 287(b)(2) -- *Celanese* -- is not applicable.  Accordingly, AMD's motion should be denied.

# V.    CONCLUSION

For all of the foregoing reasons, the Court should overrule AMD's motion for summary judgment in its entirety.

DATED:  June 4, 2010                                     COVINGTON & BURLING LLP


                                                                     By    s/ Matthew C. Lapple
                                                                         Matthew C. Lapple
                                                                    Attorneys for Defendants and Counterclaimants
                                                                    SAMSUNG ELECTRONICS CO., LTD., SAMSUNG
                                                                    SEMICONDUCTOR, INC., SAMSUNG AUSTIN
                                                                    SEMICONDUCTOR, LLC, SAMSUNG
                                                                    ELECTRONICS AMERICA, INC., SAMSUNG
                                                                    TELECOMMUNICATIONS AMERICA, LLC, and
                                                                    SAMSUNG DIGITAL IMAGING CO., LTD.

Samsung's Opposition to AMD's Motion for Summary Judgment of Non-Infringement of
U.S. Patent Nos. 5,091,339 and 5,173,442

                                                                                            CV-08-0986-SI